IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PAUL J. RISSETTO and RACHEL M. RISSETTO,

Plaintiffs,

-against-

Docket No.:
8:15-cv-720 (GTS/CFH)

THE COUNTY OF CLINTON, THE LEGISLATURE OF
THE COUNTY OF CLINTON, THE SHERIFF'S
DEPARTMENT OF THE COUNTY OF CLINTON,
SHERIFF DAVID FAVRO INDIVIDUALLY AND AS
SHERIFF OF THE COUNTY OF CLINTON, MAJOR
ROBERT CRAIG INDIVIDUALLY AND AS CHIEF DEPUTY
OF THE SHERIFF'S DEPARTMENT OF THE COUNTY OF
CLINTON, LIEUTENANT MICHAEL REID INDIVIDUALLY
AND AS LIEUTENANT OF THE SHERIFF'S DEPARTMENT
OF THE COUNTY OF CLINTON, WILLIAM FAVREAU,
ESQ., DEPUTY JOEY UPTON INDIVIDUALLY AND AS
DEPUTY OF THE SHERIFF'S DEPARTMENT OF THE
COUNTY OF CLINTON, CLINTON ESSEX WARREN
WASHINGTON BOARD OF COOPERATIVE EDUCATIONAL
SERVICES, TERESA CALABRESE GRAY INDIVIDUALLY
AND AS ASSISTANT SUPERINTENDENT OF CLINTON
ESSEX WARREN WASHINGTON BOARD OF COOPERATIVE
EDUCATIONAL SERVICES, RONALD CLAMSER
INDIVIDUALLY AND AS BUSINESS EXECUTIVE OF
CLINTON ESSEX WARREN WASHINGTON BOARD OF
COOPERATIVE EDUCATIONAL SERVICES, and
MARK DAVEY INDIVIDUALLY AND AS DISTRICT
SUPERINTENDENT OF CLINTON ESSEX WARREN
WASHINGTON BOARD OF COOPERATIVE
EDUCATIONAL SERVICES,

Defendants.

MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

DATED:     October 19, 2015         **THE STEELE LAW FIRM, P.C.**
           Oswego, New York.        *Attorneys for Plaintiffs*
                                     Kimberly A. Steele, Esq. (KS 511152)
                                     949 County Route 53, Oswego, New York 13126
                                     Telephone:    (315) 216-4721
                                     Facsimile:    (315) 216-6065
                                     Email: ksteele@thesteelelawfirm.com

TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ..................................................................................... iii

**PRELIMINARY STATEMENT** .............................................................................. 1

**FACTUAL BACKGROUND** ................................................................................... 1

**THE MOTION TO DISMISS** ................................................................................. 2

**LEGAL ARGUMENT** ............................................................................................. 3

**POINT I**
**DISMISSAL PURSUANT TO FED. R. CIV. P. 8 IS UNWARRANTED** ............... 3

**POINT II**
**THE DAVEY AFFIDAVIT AND LETTER FROM DEFENDANT FAVRO**
**CANNOT BE CONSIDERED ON A MOTION TO DISMISS** .............................. 5

**POINT III**
**DISMISSAL OF THE PLAINTIFFS' FEDERAL CLAIMS PURSUANT TO**
**FED. R. CIV. P. 12(b) IS UNWARRANTED** ......................................................... 7

   **A. Plaintiff Rachel Rissetto Has Stated a Section 1983 Claim** ........................... 7

     *1. Fourth Amendment Claim (Search and Seizure)* ....................................... 7

     *2. First Amendment Claim (Association)* ...................................................... 13

   **B. Plaintiff Paul Rissetto Has Stated a Section 1983 Claim** ............................. 16

   **C. The Plaintiffs' State Law Claims May Only Be Dismissed Without**
     **Prejudice if the Court Dismisses the Plaintiffs' Federal Claims and**
     **Declines to Exercise Supplemental Jurisdiction** ........................................ 17

i

**POINT IV**
**DISMISSAL OF THE PLAINTIFFS' STATE LAW CLAIMS IS**
**UNWARRANTED** ...................................................................................18

    **A. Plaintiff Paul Rissetto Has Stated a Claim for Defamation** ...........................18

    **B. Plaintiff Rachel Rissetto Has Stated a Claim for Defamation** .......................23

    **C. Plaintiff Rachel Rissetto Has Stated Claims for Tortious Interference**
       **With Her Employment Contract**..............................................................26

    **D. The Plaintiffs Have Stated a Claim for Negligence**...................................29

    **E. The Plaintiffs Have Stated Claims for Intentional Infliction of**
       **Emotional Distress** ............................................................................32

    **F. The Plaintiffs Have Stated Claims for Loss of Consortium** ...........................34

**POINT V**
**THE PLAINTIFFS WILL BE ENTITLED TO REASONABLE ATTORNEYS'**
**FEES AND COSTS WHEN THEY PREVAIL IN THIS ACTION**.........................36

**POINT VI**
**THE PLAINTIFFS SHOULD BE AFFORDED AN OPPORTUNITY TO**
**CONDUCT DISCOVERY BEFORE ANY CLAIMS ARE DISMISSED**...........................36

**CONCLUSION** .............................................................................................36

TABLE OF AUTHORITIES

**Cases**

*Albert v. Loksen*, 239 F.3d 256 (2d Cir. 2001) ................................................................25, 27, 28

*Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255 (S.D.N.Y. 2006) ....................................14

*Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 995 N.E.2d 131 (N.Y. 2014) ......................29, 30

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ........................................................................ 17-18

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)................................................................................4, 7

*Banigo v. Board of Education of Roosevelt Union Free School District,*
    39 Misc. 3d 1048, 962 N.Y.S.2d 896 (Sup. Ct. Nassau Co. 2013) ...........................................30

*Berry v. Vill. of Millbrook,*
    No. 09-CV-4234 KMK, 2010 WL 3932289 (S.D.N.Y. Sept. 29, 2010) ..................................19

*Blakely v. Wells*, 209 F. App'x 18 (2d Cir. 2006) .............................................................5

*Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cnty., N.Y.,*
    820 F.2d 41 (2d Cir. 1987) ..................................................................................17

*Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441 (D. Conn. 2009).............................................9, 11

*Chenkin v. Bellevue Hospital Center*, 479 F. Supp. 207 (S.D.N.Y. 1979).......................................9

*Chiavarelli v. Williams*, 256 A.D.2d 111, 681 N.Y.S.2d 276 (N.Y.A.D. 1st Dep't 1998) 20, 21, 24

*City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010)...............................................................9, 10

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004) ...............................................................13

*Cohen v. Davis*, 926 F. Supp. 399 (S.D.N.Y. 1996).............................................................27, 28

*Connick v. Myers*, 461 U.S. 138 (1983)..............................................................................13

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ...........................................6

*Delaney v. City of Albany,*
    No. 1:12-CV-1575 LEK/RFT, 2014 WL 701637 (N.D.N.Y. Feb. 24, 2014)...........................32

*DeLeonibus v. Scognamillo*, 183 A.D.2d 697, 583 N.Y.S.2d 285 (N.Y.A.D. 2nd Dep't 1992).....31

*DeMaine v. Samuels*, No. 3:99CV34 (JBA), 2000 WL 1658586 (D. Conn. Sept. 25, 2000)......8, 9

*Dockery v. United States*, 663 F. Supp. 2d 111 (N.D.N.Y. 2009)......................................35

*Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623 (2d Cir. 1996) ........................17

*Finley v. Giacobbe*, 79 F.3d 1285 (2d Cir. 1996) ..............................................................27

*Firth v. State*, 98 N.Y.2d 365, 775 N.E.2d 463 (N.Y. 2002) .........................................18, 19

*Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486 (E.D.N.Y. 2011)...........................15, 16

*Gani v. State*, 44 Misc. 3d 740, 988 N.Y.S.2d 411 (Ct. Cl. 2014) ...........................................29, 30

*Geddes v. Princess Properties Int'l, Ltd.,*
    88 A.D.2d 835, 451 N.Y.S.2d 150 (N.Y.A.D. 1st Dep't 1982)..................................................23

*Gimenez v. Great Atl. & Pac. Tea Co.*, 264 N.Y. 390, 191 N.E. 27 (N.Y. 1934) ........................35

*Gordon v. Green*, 602 F.2d 743 (5th Cir. 1979) ..............................................................5

*Gregoire v. G. P. Putnam's Sons*, 298 N.Y. 119, 81 N.E.2d 45 (N.Y. 1948).........................18, 20

*Hassanein v. Avianca Airlines*, 872 F. Supp. 1183 (E.D.N.Y. 1995)...................................35

*Haynes v. Office of Atty. Gen. Phill Kline*, 298 F. Supp. 2d 1154 (D. Kan. 2003).............9, 10, 11

*Herlihy v. Metro. Museum of Art,*
    214 A.D.2d 250, 633 N.Y.S.2d 106 (N.Y.A.D. 1st Dep't 1995)..................................20, 21, 24

*Hoesten v. Best*, 34 A.D.3d 143, 821 N.Y.S.2d 40 (N.Y.A.D. 1st Dep't 2006).......................19, 20

*Hoffman v. Landers*, 146 A.D.2d 744, 537 N.Y.S.2d 228 (N.Y.A.D. 2d Dep't 1989) ...........22, 25

*Hudson v. City of Riviera Beach*, 982 F. Supp. 2d 1318 (S.D. Fla. 2013) ...............................12, 13

*In re Asia Global Crossing, Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y. 2005) ................................9, 12

*In re Branch Motor Exp. Co.*, 51 B.R. 146 (Bankr. S.D.N.Y. 1985) ...............................................6

*Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011) ..............................................................................14

*Kelly v. Shapiro*, 716 F.3d 10 (2d Cir. 2013)..................................................................................13

*Kosson v. Algaze*, 203 A.D.2d 112, 610 N.Y.S.2d 227 (N.Y.A.D. 1st Dep't 1994) .....................27

*Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 612 N.E.2d 289 (N.Y. 1993)......................................35

*Kurschus v. PaineWebber, Inc.*, 16 F. Supp. 2d 386 (S.D.N.Y. 1998)....................................32, 34

*Lampman v. Cairo Cent. Sch. Dist.*,
    47 A.D.2d 794, 366 N.Y.S.2d 237 (N.Y.A.D. 3d Dep't 1975) ...........................................31, 35

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996) .......................................................................................7

*Leventhal v. Knapek*, 266 F.3d 64 (2d Cir. 2001).......................................................................8, 11

*Levine v. Gurney*, 149 A.D.2d 473, 539 N.Y.S.2d 967 (N.Y.A.D. 2d Dep't 1989)................32, 33

*Liberman v. Gelstein*, 80 N.Y.2d 429, 605 N.E.2d 344 (N.Y. 1992) ....................20, 21, 22, 24, 25

*Lieber v. Vill. of Spring Valley*, 40 F. Supp. 2d 525 (S.D.N.Y. 1999) ....................................31, 34

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106 (S.D.N.Y. 2010) .......6

*McKay v. Foster*, 179 A.D. 303, 166 N.Y.S. 331 (N.Y.A.D. 4th Dep't 1917) ..............................18

*Meloff v. New York Life Ins. Co.*, 240 F.3d 138 (2d Cir. 2001)..............................................25, 26

*Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York*, 336 F.3d 185 (2d Cir. 2003)..13, 14

*Meredithe C. v. Carmel Cent. Sch. Dist.*,
    192 A.D.2d 952, 597 N.Y.S.2d 199 (N.Y.A.D. 3d Dep't 1993) ...............................................32

*Miller v. State*, 62 N.Y.2d 506, 467 N.E.2d 493 (N.Y. 1984) ......................................................29

*Munafo v. Metro. Transp. Auth.,*
 No. 00-CV-0134 (ERK), 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003) ...............................14

*Murphy v. Cadillac Rubber & Plastics, Inc.,* 946 F. Supp. 1108 (W.D.N.Y. 1996)...................26

*O'Connor v. Ortego,* 480 U.S. 709 (1987) ........................................................................8, 12

*Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.,*
 51 F. Supp. 3d 319 (S.D.N.Y. 2014) .....................................................................................4, 5

*Parris v. New York State Dep't Corr. Servs.,* 947 F. Supp. 2d 354 (S.D.N.Y. 2013).....................6

*Pecue v. W.,* 233 N.Y. 316, 135 N.E. 515 (N.Y. 1922) .................................................................25

*Pelaez v. Seide,* 2 N.Y.2d 186, 810 N.E.2d 393 (N.Y. 2004) ........................................................30

*Perrin v. Hilton Int'l, Inc.,* 797 F. Supp. 296 (S.D.N.Y. 1992) ....................................................35

*Perry v. Manocherian,* 675 F. Supp. 1417 (S.D.N.Y. 1987) ...................................................32, 33

*Phillips v. Bowen,* 278 F.3d 103 (2d Cir. 2002) ............................................................................15

*Pickering v. Bd. of Education,* 391 U.S. 563 (1968) ......................................................................14

*Pravda v. Cnty. of Saratoga,* 224 A.D.2d 764, 637 N.Y.S.2d 508 (N.Y.A.D. 3d Dep't 1996) ....19

*Pritzker v. City of Hudson,* 26 F. Supp. 2d 433 (N.D.N.Y. 1998) .................................................35

*Rand v. New York Times Co.,* 75 A.D.2d 417, 430 N.Y.S.2d 271 (N.Y.A.D. 1st Dep't 1980) .....18

*Routh v. Univ. of Rochester,* 981 F. Supp. 2d 184 (W.D.N.Y. 2013).......................................22, 23

*Salahuddin v. Cuomo,* 861 F.2d 40 (2d Cir. 1988) .....................................................................4, 5

*Seymore v. Reader's Digest Ass'n, Inc.,* 493 F. Supp. 257 (S.D.N.Y. 1980) ................................28

*Thorsen v. Sons of Norway,* 996 F. Supp. 2d 143 (E.D.N.Y. 2014) .............................................21

*TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.,* 453 F. App'x 105 (2d Cir. 2011) ................18

*United States v. Erie County, NY,* 724 F. Supp. 2d 357 (W.D.N.Y. 2010) ...................................4, 7

*United States v. McGee,* 564 F.3d 136 (2d Cir. 2009)..................................................................8

*United States v. Yudong Zhu,* 23 F. Supp. 3d 234 (S.D.N.Y.)................................................7, 8, 10

*Vasarhelyi v. New Sch. for Soc. Research,*
    230 A.D.2d 658, 646 N.Y.S.2d 795 (N.Y.A.D. 1st Dep't 1996)....................................32, 33, 34

*Wilcox v. Newark Valley Cent. Sch. Dist.,*
    74 A.D.3d 1558, 904 N.Y.S.2d 523 (N.Y.A.D. 3d Dep't 2010) .............................................17

*Wiley v. Dep't of Justice,* 328 F.3d 1346 (Fed. Cir. 2003)...........................................................11

*Wisconsin v. Constantineau,* 400 U.S. 433 (1971) ...............................................................16, 17

*Wynder v. McMahon,* 360 F.3d 73 (2d Cir. 2004)..................................................................4, 5

**Statutes**

42 U.S.C.A. § 1983....................................................................................................................7

42 U.S.C.A. § 1988(b)..............................................................................................................36

N.Y. C.P.L.R. § 215(3).............................................................................................................18

N.Y. Gen. Mun. Law § 50-e.....................................................................................................31

N.Y. Penal Law § 230.04..........................................................................................................21

**Secondary Sources**

Prosser & Keeton, Torts § 12 (5th ed) ....................................................................................32

## PRELIMINARY STATEMENT

Plaintiffs Paul J. Rissetto ("Plaintiff Paul Rissetto") and Rachel M. Rissetto ("Plaintiff Rachel Rissetto") (collectively, the "Plaintiffs") submit this Memorandum of Law in opposition to the motion to dismiss filed by Defendants Clinton Essex Warren Washington Board of Cooperative Educational Services ("Defendant BOCES"), Teresa Calabrese Gray Individually and as Assistant Superintendent of Clinton Essex Warren Washington Board of Cooperative Educational Services ("Defendant Gray"), Ronald Clamser Individually and as Business Executive of Clinton Essex Warren Washington Board of Cooperative Educational Services ("Defendant Clamser"), and Mark Davey Individually and as District Superintendent of Clinton Essex Warren Washington Board of Cooperative Educational Services ("Defendant Davey"). (The Defendants named above are referred to collectively as the "BOCES Defendants".)

## FACTUAL BACKGROUND

For a full recital of the facts, the Court is respectfully referred to the Verified Civil Complaint with Jury Demand with Exhibits (the "Complaint" or "Compl."). The following is intended as a summary only, with citations to the relevant specific allegations appearing where appropriate in the discussion of the respective legal arguments.

Although the extensive, detailed factual background necessitated a lengthy Complaint, the Plaintiffs' claims can be reduced to a simple premise: Plaintiff Paul Rissetto observed certain questionable conduct, including the unsatisfactory and unsafe performance of a fellow sheriff's deputy, the submission of possibly fraudulent claims for overtime pay, and the use of excessive force by a New York State trooper, and brought them to the attention of Defendant Sheriff Favro Individually and as Sheriff of the County of Clinton ("Defendant Favro")[1] (Compl. at paras. 46-50,

---

[1] Defendants The County of Clinton, The Legislature of the County of Clinton, Major Robert Craig Individually and as Chief Deputy of the Sheriff's Department of the County of Clinton, Lieutenant Michael Reid Individually and as Lieutenant of the Sheriff's Department of the County of Clinton,

51-59, 63-68, 70-74). Afterward, Plaintiff Paul Rissetto was subjected to a campaign of harassment and intimidation which included, as relevant to this Motion, false allegations that Plaintiff Paul Rissetto had accessed pornography and attempted to solicit a prostitute on work hours using his work-issued computer (Compl. paras. 152, 156), and a series of seizures and searches, including the seizure and search of Plaintiff Rachel Rissetto's work-issued computers, which Defendant Davey, Defendant Gray, and Defendant Clamser provided to the County Defendants at Defendant Favro's urging (Compl. para 186 e.g.).[2] During this time, Defendant Favro disseminated his allegations concerning Plaintiff Paul Rissetto to Defendant Davey (Compl. para. 524), and Defendant Davey, Defendant Gray, and Defendant Clamser repeated these allegations as well as other allegations concerning both Plaintiffs to not only employees and Board of Education members of Defendant BOCES but to members of the community (Compl. paras. 536, 561-62). After these events, and as a result of them, the terms and conditions of Plaintiff Rachel Rissetto's employment were altered by, among other things, her being excluded from meetings which she had normally attended as part of her duties and required to submit timesheets, the latter despite other employees not being required to do the same (Compl. paras. 213-15).

## THE MOTION TO DISMISS

The Memorandum of Law in Support of Moving Defendants' Motion to Dismiss (the "BOCES Memo.") mischaracterizes certain facts which must be clarified, and as follows:

1. Plaintiff Rachel Rissetto's claim that her work-issued computer devices were used only by her and were not accessed by Defendant BOCES's other employees and agents or by the public (Compl. para. 193) is not "contradicted" by her allowing Plaintiff Paul Rissetto to use

---

and Deputy Joey Upton Individually and as Deputy of the Sheriff's Department of the County of Clinton are referred to collectively as the "County Defendants". The term "County Defendants" also includes Defendant Favro where appropriate.

[2] Notably, although Plaintiff Paul Rissetto has used Plaintiff Rachel Rissetto's work-issued laptop to backup files pertinent to the false allegations against him (Compl. para. 165), the search was not restricted to Plaintiff Rachel Rissetto's work-issued laptop, but also included her work-issued desktop computer and iPad (Compl para. 199).

it (Coml. para. 118). Plaintiff Rachel Rissetto was alleging her privacy expectations vis-à-vis herself and the BOCES Defendants and the public; and

2.  The Laptop and Electronic Devices/AUP Acceptance Form (the "Acceptance Form") provided by the BOCES Defendants governs the period of September 22, 2011 to June 30, 2012 (Affidavit of Mark Davey ["Davey Aff."] Exhibit "B" at p. 1), but the AUP submitted by the BOCES Defendants was adopted on June 12, 2013 (Davey Aff. Exhibit "A" at p. 1). There is no indication on the record of the terms of the AUP as provided to Plaintiff Rachel Rissetto at that time, nor is there proof, such as by an updated Acceptance Form, that Plaintiff Rachel Rissetto has been provided with or had knowledge of the specific terms of the edition of the AUP which has been submitted.

Moreover, certain terms of the AUP which were ignored by the BOCES Defendants bear upon Plaintiff Rachel Rissetto's expectation of privacy, and specifically the following:

1.  Defendant BOCES's staff are expected to sign an Acceptance Form (referred to as a "CVES Acceptable Use Policy [AUP] and Media Release Form) "upon employment **or revision of the policy**" (Davey Aff Exhibit "A" at p. 3 [numbered p. 1 in AUP]; emphasis added);

2.  The District Superintendent, among others, has the authority "to determine what constitutes appropriate use and the resulting decision will be final" (Davey Aff. Exhibit "A" at p. 11 [numbered p. 9 in AUP]);

3.  Exceptions to the AUP are at the discretion of, among others, the District Superintendent (Davey Aff. Exhibit "A" at p. 13 [numbered p. 11 in AUP]); and

4.  In the event the technology department needs to access or monitor the system, "CVES technology department members **_will respect the privacy of personal communications encountered on the systems_**" (Davey Aff. Exhibit "A" at p. 15 [numbered p. 13 in AUP]; emphasis added).

## LEGAL ARGUMENT

### POINT I
### DISMISSAL PURSUANT TO FED. R. CIV. P. 8 IS UNWARRANTED

The Complaint should not be dismissed pursuant to Fed. R. Civ. P. 8 because the Complaint gives the BOCES Defendants fair notice of the allegations against them. The BOCES Defendants misapprehend the substance of the Court's inquiry when dismissal is sought based upon this rule. Rule 8 concerns "whether adequate notice is given ... which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that

it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (citations omitted; finding pleading requirements met although complaint was "a model of neither clarity nor brevity"). Even a wordy complaint is adequate so long as it "does not overwhelm the defendants' ability to understand or mount a defense." *Id.* at 80. "Instead of focusing on whether a complaint's allegations are 'short and plain' or 'simple, concise, and direct,' the Court asks whether the complaint gives 'fair notice' to the defendants." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.,* 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014) (citations omitted). "[C]ourts will not dismiss a complaint that is arguably prolix or unintelligible unless the complaint's form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Id.* If a complaint is long but not "vague" or "incomprehensible", containing "at least some claims that cannot be termed frivolous on their face", dismissal is improper. *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988).

The BOCES Defendants argue that the length of the Complaint alone mandates its dismissal, but they have not alleged that they were unable to comprehend the claims against them.[3] The Complaint's factual allegations communicate the Plaintiffs' claims against the BOCES Defendants: (1) Defendant Davey, Defendant Gray, and Defendant Clamser seized and participated in the search of Plaintiff Rachel Rissetto's work-issued devices at the urging of Defendant Favro (Compl. paras. 262-84 e.g.); (2) Defendant Davey, Defendant Gray, and Defendant Clamser repeated false statements concerning the Plaintiffs as originated by Defendant Favro (Compl. paras. 474-76, 498-501, 520-23, 535-47 e.g.); and (3) Defendant Davey, Defendant Gray, and Defendant Clamser took actions against Plaintiff Rachel Rissetto which interfered with her employment with Defendant

---

[3] The BOCES Defendants analyze their request for dismissal under Rule 8 by the improper standard. *United States v. Erie County, NY,* 724 F. Supp. 2d 357 (W.D.N.Y. 2010), analyzed a motion to dismiss under Rule 12(b), not Rule 8. While *Ashcroft v. Iqbal,* 556 U.S. 662, 677-79 (2009) refers to Rule 8, the Supreme Court was analyzing a motion to dismiss for failure to state a claim, and even *Erie County* cites its decision as stating the Rule 12(b) standard.

BOCES (Compl. paras. 632-56). These allegations, set out in detail and with specific dates, are more than adequate to provide the BOCES Defendants a "fair understanding" of the wrongdoing of which they are accused. *Ong*, 51 F. Supp. 3d at 345. The Plaintiffs' allegations are "sufficiently clear and specific to give the [BOCES D]efendants notice of ways in which they are claimed to have violated [the Plaintiffs'] rights", *Salahuddin*, 861 F.2d at 43, where the role of each of the BOCES Defendants is identified and their actions are set forth in factual detail. Moreover, not only have the BOCES Defendants failed to argue that they lack fair notice of the substance of the Plaintiffs' claims, but they have been able to thoroughly address them in the form of a thirty eight (38) page Memorandum of Law. Because the length of the Complaint alone is not dispositive if fair notice is given, *Wynder*, 360 F.3d at 80, dismissal of the Complaint is improper.

Moreover, even if the Court dismisses the Complaint, any dismissal should be accompanied by leave for the Plaintiffs to amend the Complaint. "When the court chooses to dismiss [pursuant to Rule 8], it normally grants leave to file an amended pleading that conforms to the requirements of Rule 8." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also, Gordon v. Green*, 602 F.2d 743, 744-45 (5th Cir. 1979) (dismissing with leave to amend despite pleadings in five consolidated suits totaling more than 4,000 pages and containing scandalous material). So long as the court does not find the claims "entirely frivolous on their face", it is an abuse of discretion to dismiss an action without granting leave to amend. *Blakely v. Wells*, 209 F. App'x 18, 21 (2d Cir. 2006). Because the Plaintiffs' claims are not frivolous, as indicated by the discussion of those claims on the merits *infra*, any dismissal under Rule 8 should not be with prejudice in any event.

## POINT II
## THE DAVEY AFFIDAVIT AND LETTER FROM DEFENDANT FAVRO CANNOT BE CONSIDERED ON A MOTION TO DISMISS

At the outset, we note that the BOCES Defendants attempt to introduce documents which are not properly considered on a motion to dismiss for failure to state a claim. Although the Court

may consider certain documents other than the complaint, *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991), the only such documents which may be considered are those which are: "(1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 123 (S.D.N.Y. 2010). For a document to be "integral to a complaint, the plaintiff must have: (1) actual notice of the extraneous information and (2) relied upon th[e] documents in framing the complaint." *Id.* (alteration in original; internal quotations and citation omitted). A defendant's affidavit is not properly considered and should be excluded unless the court treats the motion as one for summary judgment, in which case the parties are entitled to conduct discovery and submit additional relevant evidence. *Parris v. New York State Dep't Corr. Servs.,* 947 F. Supp. 2d 354, 362 (S.D.N.Y. 2013); *In re Branch Motor Exp. Co.,* 51 B.R. 146, 148 (Bankr. S.D.N.Y. 1985) (motion reviewed under Fed. R. Civ. P. 12(b) due to procedural failures, and defendant's affidavit could not be considered).[4]

While the AUP is referenced in the Complaint, the same cannot be said for the Davey Affidavit or the May 15, 2014 letter from Defendant Favro to Defendant Davey which is attached to the Davey Affidavit as Exhibit "C". The Davey Affidavit is in no event properly considered on a motion to dismiss. *Parris,* 947 F. Supp. 2d at 362. The May 15, 2014 letter, meanwhile, is not referenced at all in the Complaint and, moreover, is a communication between Defendant Favro and Defendant Davey (Davey Aff. Exhibit "C"). The Plaintiffs were not copied on the May 15, 2014 letter, and there is no reason to believe that they ever received a copy or knew of it. *Cf, Cortec,* 949 F.2d at 48 (defendants could rely upon stock purchase agreement, offering memorandum, and warrant because plaintiffs had notice of them). As such, the Court should decline to consider the

---

[4]Converting a motion to dismiss into one for summary judgment is disfavored where, as here, discovery has not taken place. *Madu,* 265 F.R.D. at 124.

Davey Affidavit and the May 15, 2014 letter from Defendant Favro to Defendant Davey which is attached to the Davey Affidavit as Exhibit "C".

## POINT III
### DISMISSAL OF THE PLAINTIFFS' FEDERAL CLAIMS PURSUANT TO FED. R. CIV. P. 12(b) IS UNWARRANTED

On a motion to dismiss pursuant to Fed. Civ. P. 12(b), the Court must accept well-plead factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). After legal conclusions are omitted, the remaining factual allegations must "state a claim for relief that is plausible on its face", allowing a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). It is not necessary that the factual allegations be probable. *Id.* When the courts require allegations to "plausibly give rise to an entitlement of relief", they mean that the allegations must "permit the court to infer more than the mere possibility of misconduct." *United States v. Erie Cnty., NY*, 724 F. Supp. 2d 357, 368 (W.D.N.Y. 2010). Indeed, factual allegations are entitled to the presumption of truth regardless of whether they seem unrealistic or nonsensical. *Ashcroft,* 556 U.S. at 682.

**A.     Plaintiff Rachel Rissetto Has Stated a Section 1983 Claim**

42 U.S.C.A. § 1983 (West) gives a party a cause of action against those who deprives her of her civil rights under color of state law. The BOCES Defendants' have violated Plaintiff Rachel Rissetto's Fourth Amendment and First Amendment rights, as discussed below.

*1.  Fourth Amendment Claim (Search and Seizure)*

The BOCES Defendants' opposition to Plaintiff Rachel Rissetto's claim relating to the seizure and search of her work-issued electronic devices errs because it looks to the factual situation from the incorrect viewpoint. *United States v. Yudong Zhu*, 23 F. Supp. 3d 234 (S.D.N.Y.) *reconsideration denied,* 41 F. Supp. 3d 341 (S.D.N.Y. 2014), was a criminal case where the

defendant sought to suppress evidence against him which had been obtained through a search of his work-issued computer, which had been provided to law enforcement by his employer. The court was concerned with the admissibility of the evidence and analyzed the matter in terms of the validity of the employer's consent to the search, *id.* at 237, and it did not discuss the possibility of the employer's civil liability for the search. An employer's consent to a search by law enforcement may, however, be completely unauthorized as between the employer and employee but still satisfy the requirements of third party consent. *See, United States v. McGee*, 564 F.3d 136, 139 (2d Cir. 2009) (holding that "[e]ven if the person giving consent in fact lacked authority to do so, the consent may nonetheless validate the search if the person reasonably appeared to the police to possess authority to consent to the search."). Because it is the appearance of authority to the police, *id.*, rather than the validity of the authority itself that bears upon third-party consent, *Zhu* is not dispositive on this issue. The correct inquiry is whether Plaintiff Rachel Rissetto had a reasonable expectation of privacy and, if so, whether the search was reasonable at its inception and in its scope. *O'Connor v. Ortega*, 480 U.S. 709, 719, 725-26 (1987); *Leventhal v. Knapek*, 266 F.3d 64, 73 (2d Cir. 2001); *see also, Zhu*, 23 F. Supp. 2d 234 (noting that *O'Connor* applies to workplace searches by government employer).

The BOCES Defendants argue that the AUP and the Acceptance Form, by virtue of their mere existence and terms, preclude an expectation of privacy, but courts view the statements in an employer's policies within the factual context of actual office practices. Even if legitimate regulations may deprive an employee of an expectation of privacy, *O'Connor*, 480 U.S. at 718, 719, the existence of an acceptable use policy alone is not dispositive. *DeMaine v. Samuels*, No. 3:99CV34 (JBA), 2000 WL 1658586, at *6-7 (D. Conn. Sept. 25, 2000) *aff'd*, 29 F. App'x 671 (2d Cir. 2002). If that were so, "the government and quasi-public institutions would gain broad power to

Page 8

refashion the contours of the Fourth Amendment merely by proclamation." *Id.* at \*7 (citing *Chenkin v. Bellevue Hospital Center,* 479 F. Supp. 207, 213 [S.D.N.Y. 1979] ).

Even in the face of an employer policy regarding workplace privacy, statements from supervisory personnel which contradict those in the policy may reinstate an expectation of privacy. *See, City of Ontario, Cal. v. Quon,* 560 U.S. 746, 758 (2010) (dicta to effect that statements of supervisor might constitute change in policy so that expectation of privacy was reasonable); *see also, Haynes v. Office of Atty. Gen. Phill Kline,* 298 F. Supp. 2d 1154, 1162 (D. Kan. 2003). Statements that employees shall have no expectation of privacy must also be interpreted in the context of the employer's policy and its actual practices. *See, Haynes,* 298 F. Supp. 2d at 1161-62. Thus, a disclaimer of privacy may be contradicted by, for example, evidence that the government employer did not actually monitor computer use. *See, Brown-Criscuolo v. Wolfe,* 601 F. Supp. 2d 441, 449-50. (D. Conn. 2009) (finding reasonable expectation of privacy where, among other things, employer reserved right to monitor usage but had not done so). Factors to determine whether an employee has an expectation of privacy in computer files include:

> (1) does the corporation maintain a policy banning personal or other objectionable use[;]
> (2) does the company monitor the use of the employee's computer or e-mail[;]
> (3) do third parties have a right of access to the computer or e-mails[;] and
> (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

*In re Asia Global Crossing, Ltd.,* 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005).

The fourth *Asia Global* factor is noteworthy because nothing on the record indicates that Plaintiff Rachel Rissetto had been notified of, or was otherwise aware of, the particular version of the AUP on which the BOCES Defendants rely. The Acceptance Form governs the period of September 22, 2011 to June 30, 2012 (Davey Aff. Exhibit "B" at p. 1), but the AUP as submitted by the BOCES Defendants was adopted June 12, 2015 (Davey Aff. Exhibit "A" at p. 1). Thus, the BOCES Defendants cannot establish from the allegations in the Complaint that Plaintiff Rachel

Rissetto was aware of the particular terms on which they rely. Indeed, where the AUP requires an Acceptance Form to be executed by staff upon employment "*or revision of the policy*" (Davey Aff. Exhibit "A" at p. 3 [numbered p. 1 in AUP]; emphasis added), it is troubling that the BOCES Defendants changed their AUP in 2013 but can provide no Acceptance Form from 2013 evidencing that Plaintiff Rachel Rissetto was aware of the revisions. Inasmuch as the presence of a form militates against an objective expectation of privacy, *Zhu*, 23 F. Supp. 3d at 241 (S.D.N.Y. 2014), its absence militates toward finding such an expectation.

The actual practices at Defendant BOCES also militate toward finding that Plaintiff Rachel Rissetto retained a reasonable expectation of privacy. First, Plaintiff Rachel Rissetto had been expressly permitted by former District Superintendent Craig King to allow her family, including Plaintiff Paul Rissetto, to use her work-issued computers and to possess items of a personal nature on her work-issued computers (Compl. para. 116), and Defendant Davey—another District Superintendent—was aware of this practice and allowed it to continue (Compl. para. 117). Where the AUP expressly grants the District Superintendent the authority to determine what constitutes appropriate use (Davey Aff. Exhibit "A" at p. 11 [number p. 9 in AUP]) and to grant exceptions to the AUP (Davey Aff. Exhibit "A" a p. 13 [numbered p. 11 in AUP]), it was objectively reasonable for Plaintiff Rachel Rissetto to believe that she was entitled to privacy in her work-issued computers. *Quon*, 560 U.S. at 758 (observing that whether supervisor has authority to change policy by statements to employees would "bear on the legitimacy of the employee's privacy expectation"); *Haynes*, 298 F. Supp. 2d at 1162. Here, former District Superintendent Craig King's, and Defendant Davey's, authority to interpret and make exceptions to the AUP are expressly stated.

Moreover, Plaintiff Rachel Rissetto's work-issued computers were password-protected (Compl. para. 113 e.g.), and Defendant BOCES did not routinely search or monitor workplace computers (Compl. para. 115). Courts have repeatedly rejected the notion that a mere statement to

the effect that employees shall not have an expectation of privacy can overcome the actual practices of the office. *Haynes,* 298 F. Supp. 2d at 1162. Indeed, the court in *Haynes* faced a remarkably similar situation: where the employee had been verbally told that he was permitted to store personal items on his work-issued computer and had been given a password to restrict access, and where the employer had not actually monitored or searched workplace computers, a mere statement that users would have "no expectation of privacy" could not strip the employee of his expectation of privacy. *Id; see also, Leventhal,* 266 F.3d at 74 (absence of previous searches militated toward expectation of privacy); *Brown-Criscuolo,* 601 F. Supp. 2d at 450 (limited access to computer and absence of previous searches militated toward expectation of privacy). In fact, the AUP expressly states that "technology department members [of Defendant BOCES] *will respect the privacy of personal communications encountered on the systems*" even in the event of a search (Davey Aff. Exhibit "A" at p. 15 [numbered p. 13 in AUP]; emphasis added). Thus, the practices, and, indeed, the policy itself, are such that employees of Defendant BOCES cannot help but expect privacy in their work-issued computers.

Defendant BOCES relies on the wording of its AUP only, when the facts indicated that Defendant BOCES did not at any time act upon the statements in the AUP and had in fact allowed personal use of work-issued computers.[5] The cases cited *supra* have rejected this approach. Rather, where Plaintiff Rachel Rissetto cannot be shown to have notice of the AUP in effect at the time of these events, where Defendant BOCES permitted personal use of computers and had not monitored work-issued computers, and where other employees of Defendant BOCES could not access Plaintiff

---

[5] It is equally unavailing that the BOCES Defendants cite the AUP's exception for, in theory, "assisting law enforcement in any investigation". First, the mere involvement of law enforcement officers in a search does not constitute a criminal investigation, and such an investigation would require probable cause in any event. *Wiley v. Dep't of Justice,* 328 F.3d 1346, 1351-52 (Fed. Cir. 2003). The proposition that Defendant BOCES could by its policy alter the Fourth Amendment as to criminal matters is untenable. Second, Defendant Favro, even if his representations had been true, purported to be conducting a workplace investigation of Plaintiff Paul Rissetto which hardly constitutes a "law enforcement … investigation".

Rachel Rissetto's work-issued computers, the balance of factors weighs in favor of Plaintiff Rachel Rissetto having a reasonable expectation of privacy in her work-issued computers. *Asia Global,* 322 B.R. at 257.

Once a reasonable expectation of privacy has been established, a workplace search can be made only for non-investigatory, work-related purposes or investigation of work-related misconduct, and it must be justified at its inception *and* reasonable in scope under the circumstances. *O'Connor v. Ortega,* 480 U.S. 709, 725-26 (1987). A search is justified at its inception where there are reasonable grounds for believing it will discover evidence of work-related misconduct, and it is reasonable in scope "when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the nature of the misconduct". *Id.* at 726 (internal citations, quotations, and ellipses omitted). A search made with an ulterior motive is not justified at its inception. *See, Hudson v. City of Riviera Beach,* 982 F. Supp. 2d 1318, 1341-42 (S.D. Fla. 2013).

The BOCES Defendants' search was not justified at its inception because there was no reason to believe that it would disclose evidence of work-related misconduct.[6] First, and as we discussed in Point II *supra,* the BOCES Defendants cannot rely on either Defendant Davey's affidavit or the letter dated May 15, 2014 to overcome the Plaintiffs' allegations; as such, they cannot argue that they had reason to believe the search of Plaintiff Rachel Rissetto's laptop would disclose evidence of work-related conduct. Second, where Plaintiff Rachel Rissetto had been permitted by former District Superintendent Craig King and by Defendant Davey to use her work-issued laptop for personal purposes (and to allow Plaintiff Paul Rissetto to use it) (Compl. paras. 116-17), the alleged use would not have been work-related misconduct in any event. Moreover, even if Plaintiff Rachel Rissetto's work-issued laptop computer had been identified as having been

---

[6] The BOCES Defendants do not allege a non-investigatory, work-related purpose, so we need not discuss that possibility.

improperly accessed, searches of Plaintiff Rachel Rissetto's work-issued iPad and desktop computer (Compl. paras. 183, 186, 190-94) would have been unnecessary and would therefore have lacked justification at their inception (or, alternatively, this search of devices which were not suspected to be involved would have been too broad in scope).

It is also notable that the searches of Plaintiff Rachel Rissetto's work-issued computers were instigated by Defendant Favro's request to Defendant Davey (Compl. para. 176 et seq.). Defendant Favro's motivation for the searches was not to investigate any genuine misconduct but to regain documents and information which evidenced misconduct within the Defendant Department so as to conceal said misconduct (Compl. para. 313). Defendant Favro's "purely private and spiteful motivation" fails Fourth Amendment muster. *Hudson*, 982 F. Supp. 2d at 1342 (S.D. Fla. 2013) (searching as means to prosecute personal grudge against plaintiff, rather than based on genuine suspicion, made search unreasonable at inception).

### 2. *First Amendment Claim (Association)*

The BOCES Defendants argue that Plaintiff Rachel Rissetto does not state a cause of action for First Amendment retaliation, but they err because the First Amendment right for which she was subject to retaliation was not speech but association.[7] It is well-settled that government employers cannot punish their employees for association with those whom they find subversive, where that association touches upon a matter of public concern, *Cobb v. Pozzi*, 363 F.3d 89, 104 (2d Cir. 2004) (citing *Connick v. Myers*, 461 U.S. 138 [1983]), and First Amendment retaliation claims relating to freedom of association rather than speech are analyzed under the same standards as freedom of speech claims. *See, Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York*, 336 F.3d 185, 195 (2d Cir. 2003).

---

[7]The BOCES Defendants have also cited the incorrect legal standard for this claim. *Kelly v. Shapiro*, 716 F.3d 10, 14 (2d Cir. 2014) involved retaliation for opposing an unlawful employment practice pursuant to 42 U.S.C. § 2000e (3), rather than for the exercise of First Amendment rights.

In analyzing First Amendment retaliation claims, the court inquires whether the associational activity touched upon a matter of public concern and then balances the freedom of association concerns against the employer's interest in efficient functioning. *Id.* at 193 (applying *Pickering v. Bd. of Education,* 391 U.S. 563 [1968] test for First Amendment speech claims to First Amendment association claim). Misuse of government funds and police use of excessive force are both matters of public concern. *See, Munafo v. Metro. Transp. Auth.,* No. 00-CV-0134 (ERK), 2003 WL 21799913, at *9 (E.D.N.Y. Jan. 22, 2003); *Jackler v. Byrne,* 658 F.3d 225, 237 (2d Cir. 2011). If the activity touches upon a matter of public concern, the government employer then has the burden of showing that the activity "so threatens the government's effective operation that discipline of the employee is justified", *Melzer,* 336 F.3d at 193, or that the employer would have taken the adverse action regardless of the protected activity. *Anemone v. Metro. Transp. Auth.,* 410 F. Supp. 2d 255, 267 (S.D.N.Y. 2006).

The issue here is whether the associational activity between Plaintiff Rachel Rissetto and Plaintiff Paul Rissetto (Compl. para. 285 e.g.) touched upon a matter of public concern, not whether Plaintiff Rachel Rissetto spoke regarding a matter of public concern. Because Plaintiff Paul Rissetto spoke about, among other things, the payment of suspected fraudulent overtime and an incident of police brutality on the part of a New York State trooper (Compl. para. 321 e.g.), the association touched on matters of public concern. *Munafo,* 2003 WL 21799913, at *9; *Jackler,* 658 F.3d at 237. The BOCES Defendants cannot, on a motion to dismiss, meet their burden of showing that discipline was necessary for the effective operation of Defendant BOCES or that they would have taken the adverse actions anyway. *Melzer,* 336 F.3d at 193; *Anemone,* 410 F. Supp. 2d at 267 (S.D.N.Y. 2006).

Plaintiff Rachel Rissetto engaged in protected associational activity, and the BOCES Defendants oversimplify the adverse employment action analysis by incorrectly assuming that only

an outright termination can satisfy that element. The inquiry is not limited to whether an employee was subjected to one of a specific set of possible actions but whether the action "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Frisenda v. Inc. Vill. of Malverne,* 775 F. Supp. 2d 486, 510 (E.D.N.Y. 2011). This includes "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand", but "lesser actions may also be considered adverse employment actions." *Id.* "[A] combination of seemingly minor incidents [may] form the basis of a constitutional retaliation claim once they reach a critical mass." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002).

Defendant Davey subjected Plaintiff Rachel Rissetto to conduct which "would deter a similarly situated individual of ordinary firmness from exercising ... her constitutional rights." *Frisenda,* 775 F. Supp. 2d at 510. He initiated a complaint and pursued a series of investigations against Plaintiff Rachel Rissetto which threatened disciplinary action (Compl. paras. 216-17). *Frisenda,* 775 F. Supp. 2d at 500, 510 (village initiated investigation of employee and indicated they could bring a series of disciplinary charges against employee if he did not plead guilty to single disciplinary charge). He also excluded Plaintiff Rachel Rissetto from executive session and numerous meetings which she normally attended (Compl. paras. 213-14), required her to submit weekly timesheets when other employees were not required to do so (Compl. para. 215), and repeatedly accused her of being insubordinate, disrespectful, and/or combative toward coworkers and Board of Education members, although this was untrue (Compl. paras. 212, 218). Similarly, an employee had sufficiently alleged adverse employment action where she was cut off from interaction with her peers, denied overtime pay because she had not obtained prior approval (although this had never been required of her before), and referred to as insubordinate by her supervisor. *Phillips,* 278 F.3d at 107-08. Where, as here, a supervisor has

singled out an employee for differential treatment in multiple ways, he has taken adverse employment action, even if he has not terminated her employment outright.

Finally, a causal connection between the protected activity and the adverse employment action can be shown "indirectly by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Frisenda*, 775 F. Supp. 2d 486, 511. This inference is usually raised when the adverse employment actions occurs within two months of the protected activity. *Id.* at 512. In this case, Defendant Davey began to alter the terms and conditions of Plaintiff Rachel Rissetto's employment after the searches of her work-issued computers in May of 2014 (Compl. para. 211), and specifically he did so immediately after the searches and immediately after Plaintiff Rachel Rissetto advised him that the Defendant Department was retaliating against Plaintiff Paul Rissetto for his questioning of misconduct within the Defendant Department (Compl. para. 295). These allegations adequately plead causation with respect to Plaintiff Rachel Rissetto's First Amendment association claim.

**B.     Plaintiff Paul Rissetto Has Stated a Section 1983 Claim**

The BOCES Defendants mistake the thrust of Plaintiff Paul Rissetto's Section 1983 claim. That claim does not relate to the search of Plaintiff Rachel Rissetto's work-issued computer devices, which is the subject of Plaintiff Rachel Rissetto's Section 1983 claim; rather, the BOCES Defendants are concerned in this claim because Defendant Davey stigmatized Plaintiff Paul Rissetto's reputation by repeating false statements concerning Plaintiff Paul Rissetto which had originated with Defendant Favro and the County Defendants (Compl. paras. 333-410).

An individual cannot be stripped of his "good name, reputation, honor, or integrity" by state actors without due process. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) (holding statute authorizing officials to post individuals to be excessive drinkers without notice or hearing unconstitutional). Government employers are prohibited from publicizing charges that an employee

is guilty of dishonesty or immorality without providing notice and an opportunity to be heard. *Brandt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cnty., N.Y.*, 820 F.2d 41, 43 (2d Cir. 1987); *see also, Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) (holding that "a defamatory statement about an employee implicates a liberty interest when it is made during the course of that employee's termination from employment"). Disclosure to even a limited number of individuals satisfies the publication requirement. *See, Wilcox v. Newark Valley Cent. Sch. Dist.*, 74 A.D.3d 1558, 1563, 904 N.Y.S.2d 523, 528 (N.Y.A.D. 3d Dep't 2010).

Defendant Favro and the County Defendants alleged that Plaintiff Paul Rissetto accessed pornography and sought a prostitute on working time and using his work-issued computer (Compl. para. 333), and Defendant Davey repeated these statements to employees and Board of Education members of Defendant BOCES (Compl. para. 335). This occurred during the March and April 2014 time period in which Plaintiff Paul Rissetto was placed on administrative leave and investigated (Compl. paras. 119, 127), but before the May 29, 2014 service of the initial disciplinary charges are any hearing on those charges (Compl. para. 233). By publicizing these statements prior to a hearing having been held to determine whether they were true, Defendant Davey deprived Plaintiff Paul Rissetto of his good name in an unconstitutional manner. If, in *Wisconsin*, 400 U.S. at 437, a government actor cannot mark someone as a drunkard without affording some process, then Defendant Davey, acting in concert with Defendant Favro and the County Defendants, cannot state to all and sundry that Plaintiff Paul Rissetto uses work time and materials to access pornography and seek prostitutes prior to a hearing as to whether those allegations are true.

**C.    The Plaintiffs' State Law Claims May Only Be Dismissed Without Prejudice if the Court Dismisses the Plaintiffs' Federal Claims and Declines to Exercise Supplemental Jurisdiction**

In the event the Plaintiffs' federal claims are dismissed, the Court may exercise its discretionary supplemental jurisdiction over the Plaintiff's state law claims, *Arbaugh v. Y&H Corp.,*

546 U.S. 500, 514 (2006), but if it chooses not to do so then it is respectfully requested that any dismissal of the Plaintiffs' state claims be without prejudice so that they can be brought in a state forum. *See, TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.,* 453 F. App'x 105, 107-08 (2d Cir. 2011).

## POINT IV
## DISMISSAL OF THE PLAINTIFFS' STATE LAW CLAIMS IS UNWARRANTED

The Plaintiffs have stated federal claims against the BOCES Defendants as discussed *supra,* so the Court may review the Plaintiffs' state law claims.

**A.      Plaintiff Paul Rissetto Has Stated a Claim for Defamation**

The BOCES Defendants' arguments in favor of dismissing Plaintiff Paul Rissetto's claim for defamation on statute of limitations grounds must fail because they mistakenly rely upon the "single publication" rule which does not apply to verbal slander. While the statute of limitations for a cause of action or defamation may be one year, N.Y. C.P.L.R. § 215(3), "every repetition of a defamatory utterance gives rise to a separate cause of action." *Rand v. New York Times Co.,* 75 A.D.2d 417, 424, 430 N.Y.S.2d 271, 275 (N.Y.A.D. 1st Dep't 1980); *accord, McKay v. Foster,* 179 A.D. 303, 304, 166 N.Y.S. 331, 332 (N.Y.A.D. 4th Dep't 1917). New York's so-called "single publication" rule, measuring the accrual of a cause of action for defamation from the date of first publication, applies to "the publication of a defamatory statement ***in a single issue of a newspaper, or a single issue of a magazine***" and has been extended to publication on the Internet. *Firth v. State,* 98 N.Y.2d 365, 369, 775 N.E.2d 463, 464-65 (N.Y. 2002). The single publication rule evolved in response to concerns that publishers of newspapers, magazines, and books would be liable for republishing defamatory statements at any time an existing but unsold copy of those respective works was sold to a new buyer, which would in effect prevent the statute of limitations from ever expiring. *Gregoire v. G. P. Putnam's Sons,* 298 N.Y. 119, 125, 81 N.E.2d 45, 49 (N.Y. 1948).

Because the false statements at issue in this instance include verbal ones, the statute of limitations is properly measured from the last repetition of the statements. Defendant Favro disseminated statements to the effect that Plaintiff Paul Rissetto has accessed pornography and sought a prostitute using his work-issued computer (Compl. paras. 473-76). Defendant Favro made these statements on or about "the end of March 2014 *__up to and including the present__*" (Compl. para. 473; emphasis added). Defendant Davey, Defendant Gray, and Defendant Clamser repeated those statements "on or about May 14, 2014 *__and thereafter__*" (Compl. paras. 489-90; emphasis added).[8] Nothing within the four concerns of the Complaint indicates that the repetition of the defamatory statements by Defendant Davey, Defendant Gray, and Defendant Clamser had been completed prior to June 11, 2014 when the Complaint was filed.

Most of the BOCES Defendants' cases recite the principle that a statute of limitations for a cause of action sounding in defamation is one year, *see, e.g., Pravda v. Cnty. of Saratoga*, 224 A.D.2d 764, 766, 637 N.Y.S.2d 508, 510 (N.Y.A.D. 3d Dep't 1996), and are not relevant to the disputed point, which is the accrual of the causes of action for defamation. The cases which the BOCES Defendants put forth for the proposition that the Plaintiffs' causes of action accrued at the first utterance of the defamatory statements actually related to publication by internet (*Firth*, 98 N.Y.2d at 369, 775 N.E.2d at 464-65) and newspaper (*Berry v. Vill. of Millbrook*, No. 09-CV-4234 KMK, 2010 WL 3932289, at *6 [S.D.N.Y. Sept. 29, 2010]) and the repetition of statements which had originally be made in a letter (*Hoesten v. Best*, 34 A.D.3d 143, 151, 821 N.Y.S.2d 40, 46-47 [N.Y.A.D. 1st Dep't 2006]). The defamatory statements here as alleged in the Complaint are purely

---

[8] The same allegations are made with respect to Plaintiff Rachel Rissetto's claim for defamation based on the dissemination of these statements (Compl. paras. 519-22, 535-36). Defendant Favro, Defendant Davey, Defendant Gray, and Defendant Clamser also stated that Plaintiff Rachel Rissetto has been conducting secret criminal background checks with the assistance of Plaintiff Paul Rissetto, and that this had been the reason for the searches of Plaintiff Rachel Rissetto's work-issued computers (Compl. para. 560-61). This occurred in the "spring of 2014" (Compl. para. 560). As such, this analysis holds true for both of the Plaintiffs' claims.

verbal and there is no reason to extend the single publication rule to such verbal statements. Unlike in *Hoesten*, 34 A.D.3d at 151, 821 N.Y.S.2d at 47, the repetition of statements which had already been published in a letter, and which were already familiar to the audience, did not constitute republication, there was no such initial written publication here. Moreover, the policy consideration discussed in *Gregoire*, 298 N.Y. at 125, 81 N.E.2d at 49, does not implicate the verbal repetition of statements, which are under the direct control of those making them. A party seeking to avoid liability for verbal slander is able to prevent repeated accrual of a new statute of limitation without resort to the single publication rule by refraining from repeating defamatory statements.

Additionally, the BOCES Defendants' position that Plaintiff Paul Rissetto failed to plead special damages fails because the statements at issue herein threaten Plaintiff Paul Rissetto in his profession as a police officer and are defamatory per se. New York recognizes exceptions to the necessity of pleading special damages with respect to defamatory statements "(i) charging plaintiff with a serious crime; (ii) *__that tend to injure another in his or her trade, business or profession__*; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 605 N.E.2d 344, 347 (N.Y. 1992) (emphasis added). "When statements fall within one of these categories, the law presumes that damages will result, and they need not be alleged or proven." *Id.* at 435, 605 N.E.2d at 347-48. Statements tend to injure a party in his or her business or profession when they "suggest improper performance of [the plaintiff's] duties or unprofessional conduct" or "unfitness for [the plaintiff's] professional role." *Chiavarelli v. Williams*, 256 A.D.2d 111, 113, 681 N.Y.S.2d 276, 277 (N.Y.A.D. 1st Dep't 1998); *see also*, *Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 261, 633 N.Y.S.2d 106, 113 (N.Y.A.D. 1st Dep't 1995).

The BOCES Defendants repeated statements originated by Defendant Favro that Plaintiff Paul Rissetto accessed pornography and sought a prostitute using his work-issued computer, and on

working time (Compl. paras. 473-76, 489-90). The former suggests that Plaintiff Paul Rissetto is both misusing government property, an act which would be incompatible with serving in a government job, and that he is ignoring his duties in favor of a personal fixation. The latter is even more damning, suggesting that he is attempting to solicit a crime. *See, e.g.,* N.Y. Penal Law § 230.04 (patronizing a prostitute a crime). Engaging in or, alternatively, encouraging criminal conduct "would certainly be incompatible with the proper conduct of [Plaintiff Paul Rissetto's] duties", to wit preventing crime. *Herlihy,* 214 A.D.2d at 261, 633 N.Y.S.2d at 113; *cf, Liberman,* 80 N.Y.2d at 436, 605 N.E.2d at 348 (accusations that landlord committed bribery and threatened to assault plaintiff were not related enough to proper conduct of his business to support claim of defamation per se). The allegations to the effect that Plaintiff Paul Rissetto assisted in unauthorized secret background checks of prospective hires of Defendant BOCES injures him in his profession as well, in this instance by suggesting that he abuses his authority as a police officer. *Chiavarelli,* 256 A.D.2d at 113, 681 N.Y.S.2d at 277 (statements tended to injure doctor in business where they suggested he misused power over subordinates to coerce sexual favors). This is markedly different from *Thorsen v. Sons of Norway,* 996 F. Supp. 2d 143, 165 (E.D.N.Y. 2014), *reconsideration denied* (May 14, 2014),[9] where special damages had not been plead and a claim for defamation per se could not be made out because the statements at issue did not allege conduct which constituted a crime.

Finally, the BOCES Defendants are not entitled to qualified privilege because the BOCES Defendants and the employees and Board of Education members of Defendant BOCES did not share an interest in the allegations against Plaintiff Paul Rissetto. The so-called "common interest" privilege protects a "communication made by one person to another upon a subject in which both have an interest." *Liberman v. Gelstein,* 80 N.Y.2d 429, 437, 605 N.E.2d 344, 349 (N.Y. 1992). A

---

[9] It is believed that the cited case is the "*Thorsen,* at 164-5" which is referenced in the BOCES Memo. at 20, although the full citation was omitted.

threshold inquiry for whether the privilege arises is whether the defendant and those to whom he or she repeats the defamatory statements had such a correspondence interest or duty. *Hoffman v. Landers*, 146 A.D.2d 744, 747, 537 N.Y.S.2d 228, 231 (N.Y.A.D. 2d Dep't 1989). The common interest privilege is an affirmative defense which cannot be established on a motion to dismiss if it requires resort to facts which are not part of the complaint. *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 213 (W.D.N.Y. 2013), *appeal withdrawn* (Jan. 9, 2014).

Insomuch as the BOCES Defendants are concerned, Plaintiff Paul Rissetto alleges that Defendant Davey, Defendant Gray, and Defendant Clamser repeated statements to employees and Board of Education members of Defendant BOCES, to wit that Plaintiff Paul Rissetto had accessed pornography and sought out a prostitute using his work-issued computer, and on work time (Compl. paras. 474-76, 489-90, 492). It is inconceivable that the BOCES Defendants had any interest in whether or not Plaintiff Paul Rissetto had done these things or any duty to speak on them, much less any interest which coincided with one on the part of employees and Board of Education members of Defendant BOCES. *See, Hoffman,* 146 A.D.2d at 745, 537 N.Y.S.2d at 229-30 (no common interest between attorney and newspaper reporter to whom he communicated information regarding plaintiff). In *Liberman*, the privilege arose between tenants as to statements that their landlord was bribing the police so as to deprive them of parking, 80 N.Y.2d at 437, 605 N.E.2d at 349, but here neither the BOCES Defendants nor employees and Board of Education members of Defendant BOCES are directly affected by the allegations against Plaintiff Paul Rissetto. *Hoffman* strongly suggests that mere general interest, in that case interest in a criminal proceeding, 146 A.D.2d at 745, 537 N.Y.S.2d at 229-30, and in this one general interest in the conduct of a police officer, is inadequate to invoke the privilege.

Although the BOCES Defendants characterize these communications as a discussion of "what to do in response to the Sheriff's Department request and investigation" (BOCES Memo. at

22), they distort the facts. The search of Plaintiff Rachel Rissetto's work-issued computers—the only subject which could even arguably have given the BOCES Defendants an interest or duty with respect to any allegations as against Plaintiff Paul Rissetto—related to an alleged violation of the AUP (Compl. para. 176), presumably based upon Plaintiff Paul Rissetto's use of Plaintiff Rachel Rissetto's work-issued laptop computer on March 12, 2014 (Compl. para. 118). The statements regarding Plaintiff Paul Rissetto concerned alleged use of a work-issued iPad to access pornography in December of 2013 (Compl. para. 475) and alleged use of Plaintiff Paul Rissetto's work-issued computer to seek a prostitute in February of 2014 (Compl. paras. 156, 476). In no event did the BOCES Defendants need to discuss Plaintiff Paul Rissetto's usage of his own work-issued computer devices at times preceding the events which resulted in the County Defendants seeking Plaintiff Rachel Rissetto's work-issued computers. Inasmuch as the BOCES Defendants seek to rely on facts other than those repeated above to support this defense, that position is unavailing on a motion to dismiss. *Routh,* 981 F. Supp. 2d at 213.

**B.      Plaintiff Rachel Rissetto Has Stated a Claim for Defamation**

The BOCES Defendants' arguments in opposition to Plaintiff Rachel Rissetto's claim for defamation based on the statute of limitations fail for the reasons discussed in Point IV(A) *supra* with respect to Plaintiff Paul Rissetto's claim, but their remaining arguments fail as well. Initially, the BOCES Defendants have provided no authority for the proposition that Plaintiff Rachel Rissetto cannot recover for *reputational* damage to herself which was caused by the BOCES Defendants republication of defamatory statements about Plaintiff Paul Rissetto. In *Geddes v. Princess Properties Int'l, Ltd.,* 88 A.D.2d 835, 451 N.Y.S.2d 150, 151 (N.Y.A.D. 1st Dep't 1982), the court found that the plaintiff husband had not stated a claim for defamation, and dismissed the plaintiff wife's derivative claims (presumably for loss of consortium) which included mental anguish and suffering and loss of services. It did not address a situation where defamation of a husband impairs

the reputation of the wife. Plaintiff Rachel Rissetto's reputation is a separate one from that of Plaintiff Paul Rissetto, and she should be afforded relief inasmuch as she has been degraded in the eyes of her colleagues and the community by repetition of false statements.

Moreover, as was also discussed in Point IV(B) *supra,* the BOCES Defendants arguments concerning the necessity of pleading special damages fail because a defamation plaintiff need not allege special damages where the defamatory statements tend to injure her in her profession. *Chiavarelli v. Williams,* 256 A.D.2d 111, 113, 681 N.Y.S.2d 276, 277 (N.Y.A.D. 1st Dep't 1998); *see also, Herlihy v. Metro. Museum of Art,* 214 A.D.2d 250, 261, 633 N.Y.S.2d 106, 113 (N.Y.A.D. 1st Dep't 1995). Where Defendant Davey, Defendant Gray, and Defendant Clamser stated that Plaintiff Rachel Rissetto had been performing secret and unauthorized criminal background checks of prospective hires of Defendant BOCES and abused the privacy of applicants to Defendant BOCES (Compl. paras. 561, 565), their statements tend to injure her in her profession by suggesting that she abuses her power for personal reasons, *Chiavarelli,* 256 A.D.2d at 113, 681 N.Y.S.2d at 277 (statements that doctor misused power over residents to coerce sexual favors defamatory per se), and that she behaves improperly in one of her core functions as Human Resource Director, to wit that of screening applicants. *Herlihy,* 214 A.D.2d at 261, 633 N.Y.S.2d at 113 (statements that supervisor was anti-Semitic concerned her essential duty of interacting with museum patrons and were defamatory per se). Because the law presumes injury in such a circumstance, *Liberman,* 80 N.Y.2d at 435, 605 N.E.2d at 347-48, the BOCES Defendants' complaint that Plaintiff Rachel Rissetto has not stated how the statements adversely impacted her trade of profession is without merit.[10]

---

[10] Moreover, Plaintiff Rachel Rissetto alleges that she suffered injuries, including psychological distress, trauma, nervousness, anxiety, embarrassment, humiliation, lost earnings, loss of employment opportunity, out of pocket medical expenses, and damage to reputation (Compl. para. 573 e.g.), which can be described with more particularity during discovery.

Finally, the BOCES Defendants cannot raise qualified privilege. With respect to the allegations which concerned Plaintiff Paul Rissetto but which have also damaged Plaintiff Rachel Rissetto's reputation, the Court is respectfully referred to the discussion in Point IV(B) *supra*. The same lack of a common interest precludes the privilege with respect to the statements that Plaintiff Rachel Rissetto's abused her position to conduct unauthorized background checks. *Hoffman v. Landers*, 146 A.D.2d 744, 747, 537 N.Y.S.2d 228, 231 (N.Y.A.D. 2d Dep't 1989) (no privilege due to lack of common interest between attorney and newspaper reporter). Defendant Davey, Defendant Gray, and Defendant Clamser repeated these statements to members of the community (Compl. paras. 561-62), but it is inconceivable that the public had a sufficient interest in the internal workings of Defendant BOCES's human resource department to implicate this privilege.

The common interest privilege is also defeated in this instance because it does not protect those who abuse it. *See, Liberman*, 80 N.Y.2d at 437, 605 N.E.2d at 349. The privilege is abused where the defamatory statement is made with "a high degree of awareness of [the statement's] probable falsity" or "serious doubts as to [its] truth." *Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir. 2001); *accord, Albert v. Loksen*, 239 F.3d 256, 273 (2d Cir. 2001). Indeed, if the defendant knows from its inception that the statement is false, the privilege does not arise. *Pecue v. W.*, 233 N.Y. 316, 322-23, 135 N.E. 515, 517 (N.Y. 1922).

Defendant Davey, Defendant Gray, and Defendant Clamser knew or must have known from the time they stated that Plaintiff Rachel Rissetto had been conducting unauthorized background searches of prospective hires of Defendant BOCES that the statements were false. The search of Plaintiff Rachel Rissetto's work-issued computers was instigated by a claim of a violation of the AUP (Compl. para. 176), presumably relating to Plaintiff Paul Rissetto's use of Plaintiff Rachel Rissetto's work-issued laptop computer (Compl. para. 118). There was no allegation at any point that Plaintiff Rachel Rissetto had conducted any unauthorized background checks, at least until the

Plaintiffs were advised that employees and Board of Education members of Defendant BOCES, as well as members of the community, had been told such statements (Compl. paras. 561-63). If Plaintiff Rachel Rissetto had never, prior to the dissemination of these statements, been accused of them by anyone, the BOCES Defendants cannot help but know that they were false. Indeed, Defendant Davey admitted that the searches of Plaintiff Rachel Rissetto's work-issued computes had not indicated a violation of the AUP (Compl. para. 204), so there was no reason to believe that Plaintiff Rachel Rissetto had committed any work-related misconduct. *Meloff*, 240 F.3d at 146-47 (issue of fact raised regarding malice where supervisor stated that employee's credit card charges were "no problem" but then later made allegations of fraudulent charges).

Finally, the BOCES Defendants' reliance on *Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108 (W.D.N.Y. 1996), is misplaced because this situation is factually dissimilar. First, the statements concerning Plaintiff Rachel Rissetto were disseminated not just within her workplace but to members of the community (Compl. para. 562). Second, *Murphy* involved allegations that the plaintiff "did not know her job and did not know what she was doing", which the court characterized as "nonactionable expressions of opinion." 946 F. Supp. at 1123. The statements that Plaintiff Rachel Rissetto was conducting unauthorized background searches (Compl. para. 561) are not mere expressions of her general competence but are factual assertions which are capable of being proven true or false. As such, they do not fall within the rule enunciated in *Murphy*.

C.   **Plaintiff Rachel Rissetto Has Stated Claims for Tortious Interference With Her Employment Contract**

The BOCES Defendants' arguments in opposition to the claim for tortious interference with Plaintiff Rachel Rissetto's employment contract fail, initially, because Defendant Davey, Defendant Gray, and Defendant Clamser exceeded their authority when they permitted and participated in the

search of Plaintiff Rachel Rissetto's work-issued computers.[11] A claim for tortious interference lies against a coworker or supervisor where "the defendant-employee has exceeded the bounds of his or her authority." *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir. 1996); *accord, Albert v. Loksen*, 239 F.3d 256, 276 (2d Cir. 2001). This is based upon the principle that an agent acting within the scope of its authority is not liable for interfering with a contract. *Kosson v. Algaze*, 203 A.D.2d 112, 113, 610 N.Y.S.2d 227, 228 (N.Y.A.D. 1st Dep't 1994) *aff'd*, 84 N.Y.2d 1019, 646 N.E.2d 1101 (N.Y. 1995). The commission of an "independent tortious act against the plaintiff" may support such a claim as to a coworker. *Albert*, 239 F.3d at 275. Additionally, "[a] supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest." *Cohen v. Davis*, 926 F. Supp. 399, 404 (S.D.N.Y. 1996).

It is implicit that the scope of an agent's authority does not extend to acts which have been expressly forbidden by its principal. As such, Defendant Davey, Defendant Gray, and Defendant Clamser were acting outside the scope of their authority when they seized Plaintiff Rachel Rissetto's work-issued computers and turned them over to the County Defendants (Compl. paras. 176-94), because it is believed that the Board of Education of Defendant BOCES instructed Defendant Davey, Defendant Gray, and Defendant Clamser *not* to provide Plaintiff Rachel Rissetto's work-issued computers to the County Defendants (Compl. para. 649).

Additionally, Defendant Davey, Defendant Gray, and Defendant Clamser committed independent predatory acts in the course of their interference with the employment contract, including repeating defamatory statements concerning Plaintiff Rachel Rissetto (*see*, Points IV[A]

---

[11]This claim relates to the employment contract between Plaintiff Rachel Rissetto and Defendant BOCES (Compl. para. 632-33), and is directed at Defendant Davey, Defendant Gray, and Defendant Clamser (among several County Defendants). It is unclear how the BOCES Defendants believe no valid contract with a third party has been alleged, unless they argue that Defendant Davey, Defendant Gray, and Defendant Clamser are not "third parties" to that contract by virtue of also being employees of Defendant BOCES. We address that issue herein.

Case 8:15-cv-00720-CFH   Document 37   Filed 10/19/15   Page 36 of 45

and [B] *supra*) and participating in the County Defendants' witch-hunt as against the Plaintiffs (*see,* Point III[A] *supra*). Defendant Davey—Plaintiff Rachel Rissetto's supervisor—falsely accused Plaintiff Rachel Rissetto of insubordination (Compl. para. 212) and repeatedly accused Plaintiff Rachel Rissetto of being disrespectful and/or combative toward other employees and Board of Education members of Defendant BOCES, although she had not been (Compl. para. 218). *See, Albert,* 239 F.3d at 276 (supervisor who made false allegations against employee to prevent employee from reporting safety violations acted as "third party" to contract); *Cohen,* 926 F. Supp. at 405 (to similar effect).

Meanwhile, the BOCES Defendants' mistakenly maintain that only an outright termination of Plaintiff Rachel Rissetto would constitute a breach of the contract. Nevertheless, a breach of an employment contract may arise from "wrongful discharge, a material change in an employee's duties and conditions of employment from what was promised, or a significant reduction in an employee's rank." *Seymore v. Reader's Digest Ass'n, Inc.,* 493 F. Supp. 257, 264-65 (S.D.N.Y. 1980). Defendant BOCES altered Plaintiff Rachel Rissetto's duties to exclude attending executive sessions and other meetings which had previously been part of her regular duties (Compl. paras. 213-14). Plaintiff Rachel Rissetto was also required to submit timesheets which other, similarly-situated employees were not (Compl. para. 215). These materially changed the terms of her employment contract so as to constitute a breach.

Finally, note that the Complaint alleges that the acts of Defendant Davey, Defendant Gray, and Defendant Clamser (as well as the County Defendants) caused the alterations to the terms and conditions of Plaintiff Rachel Rissetto's employment (Compl. para.653). Indeed, these only occurred *after* the search of Plaintiff Rachel Rissetto's work-issued computers (Compl. para. 211), raising the inference that the events are connected. As a result, Plaintiff Rachel Rissetto suffered injuries including psychological distress, trauma, nervousness, anxiety, embarrassment, humiliation,

lost earnings, loss of employment opportunity, out of pocket medical expenses, and damage to reputation (Compl. para. 655). It is unclear how specific the BOCES Defendants believe that Plaintiff Rachel Rissetto should have been in describing her loss, given the liberal pleading standards in federal court; the types of losses have been named, and the specific details as to amounts can of course be developed during discovery.

## D.     The Plaintiffs Have Stated a Claim for Negligence

The BOCES Defendants challenge the Plaintiffs' cause of action for negligence only on the ground of governmental immunity, but they cannot raise this defense because the actions of the BOCES Defendants in searching workplace computers and repeating statements made by Defendant Favro and his related Defendants are not governmental functions entitled to such a defense. The inquiry as to whether a government entity had a special duty toward a plaintiff only arises when the entity is performing a governmental function. *Applewhite v. Accuhealth, Inc.,* 21 N.Y.3d 420, 426, 995 N.E.2d 131, 135 (N.Y. 2014). The initial question is whether "***the municipality's actions fall in the proprietary realm,***", in which case "***it is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties.***" *Id.* at 425, 995 N.E.2d at 134 (emphasis added). Proprietary functions are those which "essentially substitute for or supplement traditionally private enterprises", while governmental functions are those which "are undertaken for the protection and safety of the public pursuant to the general police powers." *Id.* (citations omitted); *see also, Gani v. State,* 44 Misc. 3d 740, 754, 988 N.Y.S.2d 411, 422 (Ct. Cl. 2014). It is "the specific act or omission … and the capacity in which that act or failure to act occurred which governs liability." *Miller v. State,* 62 N.Y.2d 506, 513, 467 N.E.2d 493, 497 (N.Y. 1984).

The BOCES Defendants maintain that, in searching Plaintiff Rachel Rissetto's work-issued computers, they were acting pursuant to the AUP and assisting Defendant Favro in an investigation (BOCES Memo. at 14). Private entities, too, establish policies governing what acceptable use of

computer devices, just as private entities are asked by law enforcement to procure information or material (if the BOCES Defendants' position is believed) or to assist another organization in conducting a purported workplace investigation. *Gani,* 4 Misc. 3d at 754, 988 N.Y.S.2d at 422 (state university acting in proprietary capacity when assigning foreign student with immigration forms where same function is performed at private schools). These activities had nothing to do with the public purpose of Defendant BOCES, to wit providing educational services, and, indeed, even the provision of educational services is proprietary because it is duplicated in the private section. *Id.* It is equally impossible to conceive of how "the protection and safety of the public" could be served by repeating false statements relayed to the BOCES Defendants by Defendant Favro and his related Defendants. *Applewhite,* 21 N.Y.3d at 425, 995 N.E.2d at 134. These are proprietary actions identical to those of private businesses.

The BOCES Defendants' cases are unpersuasive. *Pelaez v. Seide,* 2 N.Y.2d 186, 198, 810 N.E.2d 393, 396 (N.Y. 2004), involved allegedly negligent conduct occurring in connection with lead testing of the plaintiff's apartment, but this function relates to enforcing health and safety regulations. Meanwhile, *Banigo v. Board of Education of Roosevelt Union Free School District* applied governmental immunity to the district superintendent rather than the school itself, 39 Misc. 3d 1048, 1051-52, 962 N.Y.S.2d 896, 899 (Sup. Ct. Nassau Co. 2013), dismissing against the school on a notice of claim defect. *Id.* at 1054, 962 N.Y.S.2d at 900-01. The Plaintiffs' cause of action sounding in negligence concerns Defendant BOCES only. Moreover, the discretion exercised in *Banigo*—eliminating a public employment position—implicated a governmental function rather than a proprietary one because the manner in which governmental bodies eliminate positions differs markedly from that of private entities.

Finally, the Notices of Claim against the BOCES Defendants are adequate to sustain a claim for negligence. The statute requires a notice to contain, in relevant part,

(1) the name and post-office address of each claimant, and of his attorney, if any; (2) the nature of the claim; (3) the time when, the place where and the manner in which the claim arose; and (4) the items of damage or injuries claimed to have been sustained[.]

N.Y. Gen. Mun. Law § 50-e (McKinney). This does not mean that the claim must plead specific causes of action and legal theories. *DeLeonibus v. Scognamillo*, 183 A.D.2d 697, 698, 583 N.Y.S.2d 285, 286 (N.Y.A.D. 2nd Dep't 1992). A cause of action not specified in a notice of claim can survive where "[t]he two causes of action are closely related in both the pleading and proof of material facts … [so that t]he notice of claim is sufficient to alert the defendant as to the nature of its alleged liability". *Lampman v. Cairo Cent. Sch. Dist.*, 47 A.D.2d 794, 795, 366 N.Y.S.2d 237, 238 (N.Y.A.D. 3d Dep't 1975). Notably, a *pro se* party's notice of claim is construed liberally. *Lieber v. Vill. of Spring Valley*, 40 F. Supp. 2d 525, 531 (S.D.N.Y. 1999).

The Plaintiffs' Notices of Claim as against the BOCES Defendants described the seizure of Plaintiff Rachel Rissetto's work-issued computers and their subsequently being turned over to Defendant Favro and the County Defendants, as well as the BOCES Defendants' repetitions of statements concerning the Plaintiffs as initially made by Defendant Favro and the County Defendants (Compl. Exhibit "B", Exhibit "D"). Whether these are stated as a Section 1983 claim for deprivation of Fourth Amendment rights and a defamation claim, respectively, or are plead as conduct which Defendant BOCES was negligent in allowing, the facts which the Plaintiffs must prove are identical. *Lampman,* 47 A.D.2d at 795, 366 N.Y.S.2d at 238 (notice of claim which described facts and attributed them to "negligence" of defendants also adequate for breach of warranty claim because material facts similar). Indeed, if alleging negligence in a notice of claim supports an alternative cause of action based on the same facts, then the reverse must be true. Also, the Plaintiffs submitted their Notices of Claim individually, rather than through an attorney (Compl. Exhibit "B", Exhibit "D"), and should therefore be viewed even more leniently. *Lieber*, Because the BOCES Defendants have not argued that the Notices of Claim were untimely but that they allegedly

failed to provide the requisite information, their cases on this point do not alter this position (*see, Delaney v. City of Albany,* No. 1:12-CV-1575 LEK/RFT, 2014 WL 701637, at *5 [N.D.N.Y. Feb. 24, 2014]; *Meredithe C. v. Carmel Cent. Sch. Dist.,* 192 A.D.2d 952, 952, 597 N.Y.S.2d 199, 200 [N.Y.A.D. 3d Dep't 1993] ).

**E.    The Plaintiffs Have Stated Claims for Intentional Infliction of Emotional Distress**

Although the BOCES Defendants argue that their conduct is not extreme and outrageous enough to sustain a claim for intentional infliction of emotional distress, they ignore the way their actions fit into the larger campaign of harassment and intimidation on the part of Defendant Favro and his related Defendants.[12]

It is difficult to plead extreme and outrageous conduct, but not impossible. *Kurschus v. PaineWebber, Inc.,* 16 F. Supp. 2d 386, 395 (S.D.N.Y. 1998). A "deliberate and malicious campaign of harassment or intimidation" may constitute extreme and outrageous conduct, and "the extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests." *Vasarhelyi v. New Sch. for Soc. Research,* 230 A.D.2d 658, 661, 646 N.Y.S.2d 795, 797 (N.Y.A.D. 1st Dep't 1996) (citing Prosser & Keeton, Torts § 12, at 61 [5th ed] ). Conduct which has been found to be "extreme and outrageous" includes the making of false allegations which may result in imprisonment, *Levine v. Gurney,* 149 A.D.2d 473, 473, 539 N.Y.S.2d 967, 968 (N.Y.A.D. 2d Dep't 1989), or for the purpose of coercing a settlement. *Perry v. Manocherian,* 675 F. Supp. 1417, 1430 (S.D.N.Y. 1987). Notably, defendants who jointly participate in a campaign against the plaintiff are liable together. *See, Kurschus,* 16 F. Supp. 2d at 390-91.

---

[12] We discuss both claims together because the BOCES Defendants make the same argument with respect to the separate claims for intentional infliction of emotional distress by Plaintiff Paul Rissetto and Plaintiff Rachel Rissetto.

The BOCES Defendants' conduct must be examined not in isolation but in the greater context in which it occurred. Defendant Favro and his related Defendants searched both of the Plaintiffs' work-issued computers (Compl. paras 708-08) and falsely stated that Plaintiff Paul Rissetto had accessed pornography and searched for a prostitute using his workplace computer and had committed forgery (Compl. paras. 711, 718).  They did so for the purpose of silencing Plaintiff Paul Rissetto's protests against misconduct in the Defendant Department and coercing the Plaintiffs to settle their claims against the County Defendants (Compl. paras. 714, 720). A campaign of conduct directed at the Plaintiffs for the purpose of concealing the County Defendants' misconduct, using such coercive tactics, is extreme and outrageous. *See, Vasarhelyi*, 230 A.D.2d at 659-60, 646 N.Y.S.2d at 796 (defendant school president's conduct extreme and outrageous where he contrived a baseless investigation of plaintiff financial officer to cause her termination after she questioned his spending decisions). This is especially true where Defendant Favro threatened to make his false allegations public in order to embarrass the Plaintiffs and their children (Compl. para. 164), urged the initiation of a criminal investigation of Plaintiff Paul Rissetto by the New York State Police (Compl. para. 241), and threatened to serve additional disciplinary charges if the Plaintiffs did not settle their claims (Compl. para. 244). *See, Perry*, 675 F. Supp. at 1430 (threats of publicizing false allegations so as to extort a settlement extreme and outrageous conduct); *Levine*, 149 A.D.2d at 473, 539 N.Y.S.2d at 968 (criminal ramifications of false statements raise conduct to extreme and outrageous level).

Defendant Davey, Defendant Gray, and Defendant Clamser actively assisted in the campaign of the County Defendants by turning over Plaintiff Rachel Rissetto's work-issued computers and participating in the searches of those computers (Compl. paras. 709-10). They also repeated the false statements which had been made by Defendant Favro and his related Defendants (Compl. para.713). Working in tandem with Defendant Favro and his related Defendants, they

caused the Plaintiffs' emotional distress (Compl. para. 726). Similarly, in *Kurschus,* the defendant wife falsely accused the plaintiff of forcible sodomy, and the defendant husband joined in the accusation and assisted his wife in prosecuting it. 16 F. Supp. 2d at 390-91. Nevertheless, the plaintiff had stated a claim against both of them. *Id.* at 395. Thus, even if Defendant Favro and his related Defendants originated the campaign which included the search of Plaintiff Rachel Rissetto's work-issued computers, Defendant Davey, Defendant Gray, and Defendant Clamser contributed to the conduct which harmed the Plaintiffs. Moreover, the use of their positions, to wit the authority as management staff at Defendant BOCES, gave them "actual or apparent power" to seize Plaintiff Rachel Rissetto's work-issued computers and repeat false statements concerning the Plaintiffs. *Vasarhelyi,* 230 A.D.2d at 661, 646 N.Y.S.2d at 797. This abuse of power elevates the outrageousness of their conduct in any event.

Finally, the BOCES Defendants' contention that the Notices of Claim do not "contain any claim of intentional … infliction of emotional distress whatsoever" (BOCES Memo. at p. 35) is without merit. Infliction of emotional distress as a claim may be raised sufficiently by itemizing emotional distress among the damages recited in the notice of claim. *See, Lieber v. Vill. of Spring Valley,* 40 F. Supp. 2d 525, 531 (S.D.N.Y. 1999). The Plaintiffs' Notices of Claim as against the BOCES Defendants include as damages "emotional injury and related medical expenses" and "mental anguish" (Compl. Exhibit "B" at p. 4, Exhibit "D" at p. 4-5). Of course, the relevant facts on which the claim is based were also stated (See *id.*). Thus, the Plaintiffs adequately complied with the notice of claim requirements with respect to these claims.

**F.    The Plaintiffs Have Stated Claims for Loss of Consortium**

Although the County Defendants insist that the Plaintiffs' respective claims for loss of consortium must fail, this contention is defeated by their misplaced faith in their arguments against

Page 34

the Plaintiffs' other tort claims.[13] "Loss of consortium is a derivative claim; as long as the defendant is liable to an injured spouse, a valid cause of action can exist for the other spouse." *Hassanein v. Avianca Airlines*, 872 F. Supp. 1183, 1190-91 (E.D.N.Y. 1995). Even if a loss of consortium claim cannot derive from federal civil rights claims, *Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 445 (N.D.N.Y. 1998), or breach of contract claims, *Perrin v. Hilton Int'l, Inc.*, 797 F. Supp. 296, 302 (S.D.N.Y. 1992), loss of consortium claims nevertheless exist for torts in general. *See, Gimenez v. Great Atl. & Pac. Tea Co.*, 264 N.Y. 390, 394, 191 N.E. 27, 28 (N.Y. 1934). This would implicitly include tortious interference with contract, which has been emphasized to constitute a tort cause of action rather than a contractual one. *See, Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 96, 612 N.E.2d 289, 293 (N.Y. 1993). Here, the Plaintiffs have each stated numerous tort claims against the BOCES Defendants as discussed in greater detail *supra*. So long as Plaintiff Paul Rissetto has a tort claim against the BOCES Defendants, Plaintiff Rachel Rissetto has a corresponding loss of consortium claim; and so long as Plaintiff Rachel Rissetto has a tort claim against the BOCES Defendants, Plaintiff Paul Rissetto has a corresponding loss of consortium claim.

Finally, the Plaintiffs have substantially complied with the notice of claim requirements, so the BOCES Defendants' objection on notice of claim grounds fails. "A loss of consortium claim embraces what the non-injured has lost; it covers the loss of support and services provided by the injured spouse", among other things. *Dockery v. United States*, 663 F. Supp. 2d 111, 125 (N.D.N.Y. 2009). The "pleading and proof of material facts" on loss of consortium claims thus relates to the damages suffered by the injured spouse. *Lampman v. Cairo Cent. Sch. Dist.*, 47 A.D.2d 794, 795, 366 N.Y.S.2d 237, 238 (N.Y.A.D. 3d Dep't 1975). The Plaintiffs' Notices of Claim detail the factual circumstances and damages which each of the Plaintiffs suffered at the hands of the BOCES

---

[13] We discuss both claims together because the BOCES Defendants make the same argument with respect to the separate claims for loss of consortium by Plaintiff Paul Rissetto and Plaintiff Rachel Rissetto.

Defendants (Compl. Exhibit "B", Exhibit "D"), thus apprising them of precisely the facts and injuries which would be at issue with respect to the loss of consortium claims raised herein.

## POINT V
## THE PLAINTIFFS WILL BE ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS WHEN THEY PREVAIL IN THIS ACTION

Although the BOCES Defendants are correct that Plaintiff Paul Rissetto's Civil Service Law retaliation claim (allowing for an award of attorneys' fees and costs via N.Y. Lab. Law § 740[5] ) and Civil Rights Act employment discrimination claim (allowing for an award of attorneys' fees and costs via 42 U.S.C. § 2000e-5) are made as against the County Defendants, the BOCES Defendants' mistaken reliance on the dismissal of the Plaintiffs' civil rights claims against the BOCES Defendants is fatal to their argument against the Plaintiffs being able to collect reasonable attorneys' fees and costs. As discussed *supra,* the Plaintiffs have stated claims as against the BOCES Defendants for violation of their civil rights under 42 U.S.C. § 1983. In the event that the Plaintiffs prevail on those claims as against the BOCES Defendants, then the Court may award attorneys' fees and costs to the Plaintiffs pursuant to 42 U.S.C. § 1988(b).

## POINT VI
## THE PLAINTIFFS SHOULD BE AFFORDED AN OPPORTUNITY TO CONDUCT DISCOVERY BEFORE ANY CLAIMS ARE DISMISSED

Finally, this matter is in its infancy, and discovery which might otherwise expose facts in support of the Plaintiffs' claims has not been conducted. If the motion cannot be denied on the merits, it should be denied or, alternatively, stayed to allow the Plaintiffs to conduct discovery.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the BOCES Defendants' motion be denied in its entirety.

DATED:      October 19, 2015            **THE STEELE LAW FIRM, P.C.**
            Oswego, New York.

Page 36

Kimberly A. Steele, Esq. (KS 511152)
949 County Route 53
Oswego, New York 13126
Telephone:      (315) 216-4721
Facsimile:      (315) 216-6065
Email:          ksteele@thesteelelawfirm.com