UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL J. RISSETTO; and RACHEL M.
RISSETTO,

                            Plaintiffs,

v.

COUNTY OF CLINTON; LEGISLATURE OF
THE COUNTY OF CLINTON; SHERIFF'S
DEP'T OF THE COUNTY OF CLINTON;
SHERIFF DAVID FAVRO, individually and as
Sheriff of the County of Clinton; MAJOR
ROBERT CRAIG, individually and as Chief
Deputy of the Sheriff's Department of the County
of Clinton; LIEUTENANT MICHAEL REID,
individually and as Lieutenant of the Sheriff's
Department of the County of Clinton; WILLIAM
FAVREAU; DEPUTY JOEY UPTON, individually
and as Deputy of the Sheriff's Department of the
County of Clinton; CLINTON ESSEX WARREN
WASHINGTON BOARD OF COOPERATIVE
EDUCATIONAL SERVICES; TERESA
CALABRESE GRAY, individually and as
Assistant Superintendent of Clinton Essex
Warren Washington Board of Cooperative
Educational Services; RONALD CLAMSER,
individually and as Business Executive of Clinton
Essex Warren Washington Board of Cooperative
Educational Services; and MARK DAVEY,
individually and as District Superintendent of
Clinton Essex Warren Washington Board of
Cooperative Educational Services,

                            Defendants.

_____

8:15-CV-0720
(GTS/CFH)

APPEARANCES:                                    OF COUNSEL:

THE STEELE LAW FIRM P.C.                        KIMBERLY A. STEELE, ESQ.
  Counsel for Plaintiffs
949 County Route 53
Oswego, New York 13126

LEMIRE JOHNSON, LLC                             GREGG T. JOHNSON, ESQ.
  Counsel for Defendants County of              APRIL J. LAWS, ESQ.
  Clinton, Legislature of the County of
  Clinton, Sheriff's Department of the
  County of Clinton, Sheriff David
  Favro, Major Robert Craig,
  Lieutenant Michael Reid, and
  Deputy Joey Upton
P.O. Box 2485
2534 Route 9
Malta, New York 12020

O'CONNOR, O'CONNOR,                             DENNIS A. FIRST, ESQ.
BRESEE & FIRST, PC
  Counsel for Defendant William
  Favreau
20 Corporate Woods Boulevard
Albany, New York 12211

BURKE, SCOLAMIERO,                             THOMAS J. MORTATI, ESQ.
MORTATI & HURD, LLP
  Counsel for Defendants
  Clinton Essex Warren Washington
  Board of Cooperative Educational
  Services, Teresa Calabrese Gray,
  Ronald Clamser, and Mark Davey
7 Washington Square
Albany, New York 12212

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

    Currently before the Court, in this civil rights action filed by Paul J. Rissetto and Rachel

M. Rissetto (collectively, "Plaintiffs") against the above-captioned entities and individuals

(collectively, "Defendants"), are the following three motions: (1) a motion to dismiss Plaintiffs'

Complaint (a) for failure to provide a short and plain statement showing that Plaintiffs are entitled to relief, pursuant to Fed. R. Civ. P. 8, and (b) for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendants Clinton Essex Warren Washington Board of Cooperative Education Services ("BOCES"), Teresa Calabrese Gray, Ronald Clamser, and Mark Davey (Dkt. No. 23); (2) a motion to dismiss Plaintiffs' Complaint (a) for failure to provide a short and plain statement showing that Plaintiffs are entitled to relief, pursuant to Fed. R. Civ. P. 8, and (b) for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendants County of Clinton, Sheriff David Favro, Major Robert Craig, Lieutenant Michael Reid, and Deputy Joey Upton (Dkt. No. 24); and (3) a motion to dismiss Plaintiffs' Complaint (a) for failure to provide a short and plain statement showing that Plaintiffs are entitled to relief, pursuant to Fed. R. Civ. P. 8 and 12(f), and (b) for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendant William Favreau (Dkt. No. 32).  For the reasons set forth below, Defendants' respective motions are each granted in part and denied in part.

## <u>TABLE OF CONTENTS</u>

I.    RELEVANT BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    Plaintiffs' Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
            1.    General Background and Nature of Plaintiffs' Complaint. . . . . . . . . . . . . 1
            2.    Plaintiffs' Employment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            3.    Mr. Rissetto's Concerns Regarding a CCSD Deputy. . . . . . . . . . . . . . . . . 3
            4.    Mr. Rissetto's Concerns Regarding Payment of
                  Overtime Compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            5.    Mr. Rissetto's Concerns Regarding a New York State Trooper. . . . . . . . . 5
            6.    Complaint Against, and Investigation of, Mr. Rissetto. . . . . . . . . . . . . . . 5
            7.    Dissemination of the Allegations Against Plaintiffs. . . . . . . . . . . . . . . . . 8
            8.    Search and Seizure of Mrs. Rissetto's Computers. . . . . . . . . . . . . . . . . . . 8
            9.    Retaliation Against Mrs. Rissetto. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
            10.   Disciplinary Charges Against Mr. Rissetto and
                  Plaintiffs' Notices of Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            11.   Plaintiffs' Claims in the Present Action. . . . . . . . . . . . . . . . . . . . . . . . . . 12
                  a.    Plaintiffs' Claims, Asserted Jointly. . . . . . . . . . . . . . . . . . . . . . . 12
                  b.    Mrs. Rissetto's Claims, Individually. . . . . . . . . . . . . . . . . . . . . . 13
                  c.    Mr. Rissetto's Claims, Individually. . . . . . . . . . . . . . . . . . . . . . . 14
      B.    Parties' Briefing on Defendants' Motions to Dismiss. . . . . . . . . . . . . . . . . . . 16
            1.    Defendants' Memoranda of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            2.    Plaintiffs' Opposition Memoranda of Law. . . . . . . . . . . . . . . . . . . . . . . . 24
            3.    Defendants' Reply Memoranda of Law. . . . . . . . . . . . . . . . . . . . . . . . . . 30

II.   GOVERNING LEGAL STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
      A.    Legal Standard Governing Motions to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . 33
      B.    Substantive Legal Standards Governing Plaintiffs' Claims. . . . . . . . . . . . . . . 36

III.  ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
      A.    Whether Plaintiffs' Complaint Should Be Dismissed for Failure
            to Comply with Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
      B.    Whether Plaintiffs' Claims Asserted Against CCSD Should Be Dismissed. . . . . 40
      C.    Whether Mr. Rissetto's § 1983 Claims Should Be Dismissed. . . . . . . . . . . . . . 42
            1.    Whether Mr. Rissetto's Fourth Amendment Claim
                  Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
            2.    Whether Mr. Rissetto's First Amendment Claim
                  Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
            3.    Whether Mr. Rissetto's Fourteenth Amendment Process
                  Claim Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

D.    Whether Mrs. Rissetto's § 1983 Claims Should Be Dismissed. . . . . . . . . . . . . 59
      1.    Whether Mrs. Rissetto's Fourth Amendment Claim
            Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
      2.    Whether Mrs. Rissetto's First Amendment Claim
            Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
E.    Whether Plaintiffs Have Alleged Facts Plausibly Suggesting the
      Existence of a Municipal Policy or Custom Giving Rise to a *Monell* Claim. . . . 68
F.    Whether Defendants Are Entitled to Qualified Immunity
      with Regard to Plaintiffs' § 1983 Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
G.    Whether Mr. Rissetto's ADA Disability Discrimination Claim
      Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71
H.    Whether Mr. Rissetto's NYSHRL Disability Discrimination Claim
      Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
I.    Whether Mr. Rissetto's ADEA Claim Should Be Dismissed. . . . . . . . . . . . . . . 76
J.    Whether Mr. Rissetto's Civil Service Law § 75-b Retaliation Claim
      Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
K.    Whether Mr. Rissetto's NYFCA Retaliation Claim Pursuant
      to Finance Law § 191 Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . 78
L.    Whether Plaintiffs' GML § 51 Claim Should Be Dismissed. . . . . . . . . . . . . . . 80
M.    Whether Plaintiffs' Malicious Abuse of Process Claim
      Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
N.    Whether Plaintiffs' Defamation Claims Should Be Dismissed. . . . . . . . . . . . . . 81
      1.    Whether Mr. Rissetto's Defamation Claim Should Be Dismissed. . . . . . . 81
      2.    Whether Mrs. Rissetto's Defamation Claims Should Be Dismissed. . . . . 86
O.    Whether Plaintiffs' Tortious Interference with Contract Claims
      Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87
      1.    Whether Mr. Rissetto's Tortious Inference with Contract Claim
            with Respect to His Employment Contract Should Be Dismissed. . . . . . 87
      2.    Whether Mr. Rissetto's Tortious Interference with
            Contract Claim with Respect to His Collective Bargaining
            Agreement Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
      3.    Whether Mrs. Rissetto's Tortious Interference with
            Contract Claim Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . 88
P.    Whether Plaintiffs' Negligence Claims Should Be Dismissed. . . . . . . . . . . . . . 89
Q.    Whether Plaintiffs' IIED Claims Should Be Dismissed. . . . . . . . . . . . . . . . . . . 92
R.    Whether Plaintiffs' Loss of Consortium Claims Should Be Dismissed. . . . . . . 97
S.    Whether Plaintiffs' Claims for Reasonable Attorney's Fees and
      Costs Should Be Dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 97
T.    Whether Plaintiffs Should Be Permitted to Conduct
      Discovery Before Dismissal of Any of Their Claims. . . . . . . . . . . . . . . . . . . . . 97

## I.     RELEVANT BACKGROUND

### A.     Plaintiffs' Complaint

#### 1.     General Background and Nature of Plaintiffs' Complaint

Plaintiffs' Complaint spans approximately 139 pages and consists of 862 numbered paragraphs and numerous subparagraphs.  (*See generally* Dkt. No. 1 [Plfs.' Compl.].)  In that span, Plaintiffs assert (or purport to assert) 21 causes of action ("COA") against various combinations of the 12 named Defendants, encompassing numerous federal constitutional, state statutory, and state common law claims.  With their Complaint, Plaintiffs filed 11 exhibits, totaling an additional 65 pages.  (Dkt. No. 1, Attach. 1, through Dkt. No. 1, Attach. 11 [attaching Exhibits "A" through "K"].)

Given the length of Plaintiffs' Complaint (as well as the dubious relevance and propriety of numerous of the allegations therein), a detailed summary of the factual allegations underlying Plaintiffs' claims would not be practicable, economical, or particularly helpful.  Because this Decision and Order is intended primarily for the review of the parties, the Court will provide only an overview of the factual allegations related to Plaintiffs' claims; further discussion of the factual allegations will be undertaken where necessary to analyze the parties' arguments on their respective motions.

Generally, Plaintiffs–who are husband and wife–appear to allege that Defendants have engaged in a comprehensive campaign designed to unconstitutionally retaliate and discriminate against them, defame them, improperly search and seize their property, and inflict emotional distress and injury to their reputations.  (*See generally* Dkt. No. 1.)  The purpose of this campaign was to punish Plaintiffs because Plaintiff Paul Rissetto expressed concerns to his workplace supervisors regarding–and thereby threatened to bring to light–three issues: (1) the qualifications

and competency of a Clinton County Sheriff's Department ("CCSD") deputy; (2) the payment of "suspicious" overtime compensation to another CCSD deputy; and (3) the brutality exhibited by a New York State Police officer on a single identified incident. (*See id.* at ¶¶ 51-74.)  More particularly, Plaintiffs allege as follows.

### 2.    Plaintiffs' Employment

Plaintiff Paul Rissetto ("Mr. Rissetto") has been employed by CCSD for more than 10 years, and, at the time that Plaintiffs' Complaint was filed, was a patrol lieutenant. (*Id.* at ¶ 26.) Mr. Rissetto suffers from posttraumatic stress disorder ("PTSD"), a fact known to CCSD employees, and which manifested "as a result of having witnessed a crash and shooting in the line of duty." (*Id.* at ¶¶ 27-28.)  Defendants David Favro ("Favro") and Robert Craig ("Craig"), the Sheriff and Chief Deputy of the CCSD, respectively, are Mr. Rissetto's supervisors.[1] (*Id.* at ¶¶ 31-32.)

Plaintiff Rachel Rissetto ("Mrs. Rissetto") is the Human Resource Director at BOCES, where she has worked since August 2000. (*Id.* at ¶¶ 79-80.)  Defendant Mark Davey ("Davey") is the District Superintendent of BOCES and Plaintiff's supervisor; Defendant Teresa Calabrese Gray ("Gray") is the Assistant Superintendent and Defendant Ronald Clamser ("Clamser") is BOCES' Business Executive.[2] (*Id.* at ¶¶ 83-85.)  Davey and Gray "supervised [Mrs. Rissetto] in performing her duties and responsibilities" for BOCES. (*Id.* at ¶ 634.)

---

[1]    Where practical, the Court refers to Clinton County, CCSD, Favro, Craig, Defendant Deputy Joey Upton, and Defendant Lieutenant Michael Reid collectively (or combinations of only these Defendants) as "County Defendants."

[2]    Where practical, the Court refers to BOCES, Davey, Gray, and Clamser collectively (or combinations of only these Defendants) as "BOCES Defendants."

### 3.      Mr. Rissetto's Concerns Regarding a CCSD Deputy

As part of his duties, in or around February 2013, Mr. Rissetto "participate[d] in the interviewing process" regarding candidates for a CCSD deputy position.  (*Id.* at ¶¶ 39-40.)  One of the interviewees for the position was Chelsea Warick ("Warick").  (*Id.* at ¶ 40.)  During her interview, Warick "admitted to misusing both prescription medication and illegal controlled substances," and, based on that "questionable conduct," Mr. Rissetto "objected to" Warick being hired; nevertheless, Favro offered Warick the position, and she accepted.  (*Id.* at ¶¶ 40, 42.)

At some point (whether before or after Warick was hired is not clear from Plaintiffs' Complaint), Mr. Rissetto "observed pictures of a sexual nature" and pictures depicting Warick "using alcohol" on her "social networking profile."  (*Id.* at ¶ 43.)  It was part of Mr. Rissetto's job duties to "supervise background checks" on job candidates, including "checking their social networking profiles."  (*Id.*)  Mr. Rissetto conveyed his concerns to Favro regarding the pictures, and "saved documentation" of Warick's "questionable background" on his work-issued computer. (*Id.* at ¶¶ 44-45.)

Between approximately March 2013 and February 2014, several incidents involving Warick gave Mr. Rissetto further concern about her employment with CCSD.  (*Id.* at ¶¶ 46-50, 64-67.)  In or around March 2013, Warick (then a deputy) was reported to be "publicly drinking and performing a lap dance for the Chief of the Plattsburgh Police Department."  (*Id.* at ¶ 46.)  Mr. Rissetto and Craig verbally counseled Warick, and, at that time, Warick admitted to "publicly drinking with another Sheriff Deputy."  (*Id.* at ¶ 46.)  Mr. Rissetto and Warick each drafted memoranda regarding the incident, and Mr. Rissetto saved those documents on his work-issued computer.  (*Id.* at ¶ 47.)  On or about May 28, 2013, Warick misplaced her sheriff's badge

-3-

"on the first day on which it was issued." (*Id.* at ¶ 48.)  On two separate occasions–on or about July 29, 2013, and again in or around August 2013–while driving her patrol car, Warick struck another motor vehicle.  (*Id.* at ¶¶ 49-50.)  In or around January 2014, Warick "failed and/or refused to respond" to a call to which she was asked to report, and, on or about February 20, 2014, she "failed to properly intake a sex offender." (*Id.* at ¶¶ 64-65.)  "During this time" (what time, exactly, is not clear from the Complaint), Mr. Rissetto and other CCSD members "voiced concerns" regarding Warick's performance to Craig and Favro, and "prepared memos on the subject. (*Id.* at ¶ 67.)

### 4.    Mr. Rissetto's Concerns Regarding Payment of Overtime Compensation

On or about August 31, 2013, Mr. Rissetto discovered that a CCSD boat patrol deputy was "being awarded an unusual and suspicious amount of overtime pay," including a single weekend during which he received 25 hours of overtime.  (*Id.* at ¶¶ 51-52.)  The deputy "was also a friend of" Craig and Defendant Michael Reid ("Reid"), a CCSD lieutenant, who "signed off on the timesheets containing this overtime." (*Id.* at ¶¶ 51, 53.)  "Upon information and belief," the patrol deputy was permitted to "claim overtime hours" that he had not actually worked, a fact known to Craig and Reid.  (*Id.* at ¶¶ 54-55.)[3]  Mr. Rissetto saved copies of documentation reflecting "the questionable overtime" on his work-issued computer and "stated his concern with the questionable overtime" to Favro.  (*Id.* at ¶¶ 58-59.)

---

[3]    Plaintiffs allege that, "[a]lternatively," the boat patrol deputy was permitted by Craig and Reid to "work unnecessary overtime." (*Id.* at ¶ 56.)

### 5.    Mr. Rissetto's Concerns Regarding a New York State Trooper

In or around February 2014, Mr. Rissetto "voiced his concerns" to Favro and Craig regarding "an incident of possible police brutality" that occurred in January 2013 on BOCES property.  (*Id.* at ¶¶ 69, 71.)  During the incident (which was apparently videotaped), a New York State trooper "lift[ed] up a teen-aged boy with special needs, slamm[ed] him against a wall," and struck him in the head and face, despite the fact that the teenager was not behaving combatively.  (*Id.* at ¶ 70.)  BOCES "asked" the NYSP to investigate the incident, but the NYSP did not do so.  (*Id.* at ¶ 71.)  BOCES then requested that the Clinton County District Attorney investigate the incident, but, again, this request was not granted.  (*Id.* at ¶ 72.)  Finally, BOCES asked Favro and the CCSD to investigate the incident, "but a follow up on or about January . . . 2014 revealed that" Favro also did not do so.  (*Id.* at ¶ 73.)  Mr. Rissetto felt that "the incident was being covered up" and "expressed his dissatisfaction" to Favro.  (*Id.* at ¶ 74.)

### 6.    Complaint Against, and Investigation of, Mr. Rissetto

During the period of approximately March 6, 2014, through March 9, 2014, while Plaintiffs were outside of Clinton County on vacation, "multiple deputies" informed Mr. Rissetto that Warick had filed a complaint alleging that he had sexually harassed her.  (*Id.* at ¶¶ 100-101, 142.)  Mr. Rissetto contacted Defendant Deputy Joey Upton ("Upton") by phone.  (*Id.* at ¶ 102.)  Upton is the union president for the Clinton County Deputy Sheriff's Police Benevolent Association.  (*Id.*)  Mr. Rissetto requested representation by a union attorney with respect to Warick's complaint, but Upton asserted that Mr. Rissetto was not entitled to one.  (*Id.* at ¶ 103.)  However, Upton actually "declined to provide the union attorney" because "he was biased against" Mr. Rissetto.  (*Id.* at ¶ 106.)  Mr. Rissetto retained a private attorney.  (*Id.* at ¶ 104.)

In any event, while Plaintiffs were still on vacation, Mr. Rissetto used Mrs. Rissetto's BOCES-issued laptop computer to access his computer files pertaining to Warick.  (*Id.* at ¶¶ 109-111, 118.)  Mr. Rissetto wanted to transfer his files related to "Warick's performance" to "cloud storage" so that the files would not be "deleted, hidden, or otherwise destroyed in his absence." (*Id.* at ¶ 118.)  When Plaintiffs returned from vacation, Favro placed Mr. Rissetto on administrative leave pending the investigation of Warick's complaint.  (*Id.* at ¶ 119.)  Favro also directed Plaintiff not to "use his credentials" or contact CCSD personnel while he was on administrative leave.  (*Id.* at ¶ 127.)

During the investigation of Warick's complaint, Favro advised "numerous" CCSD members that Mr. Rissetto "isn't coming back."  (*Id.* at ¶ 128.)  Mr. Rissetto was not initially "issued" a "written finding" with respect to the investigation, but, during a subsequent hearing related to disciplinary charges against him, "Defendants produced a report," dated March 26, 2014, which recommended that Mr. Rissetto receive "training" and a three-day paid suspension. (*Id.* at ¶¶ 131, 367, 409.)

On or about April 1, 2014, after "it seem[ed] that the investigation of" Warick's complaint had concluded, Mr. Rissetto learned from coworkers that Upton had searched Mr. Rissetto's work computer, at Favro's urging and without Mr. Rissetto's permission.  (*Id.* at ¶¶ 132-35.)  On or about April 9, 2014, Mr. Rissetto met with his attorney, as well as Favro, Craig, and Defendant William Favreau ("Favreau"), regarding Warick's complaint.[4]  (*Id.* at ¶ 147.)  At the meeting,

---

[4]     Plaintiffs allege that Favreau "was retained by" Favro "in connection with an investigation of" Mr. Rissetto," and that Favro and Favreau "were acting under color of state law . . . by acting on working time and on the Defendant Department's property, when they made allegations against Plaintiff Paul Rissetto."  (*Id.* at ¶¶ 337, 582.)

Favreau asked Mr. Rissetto to "turn over his office keys so that they could inventory his office," and Mr. Rissetto provided his keys.  (*Id.*)  Several other topics were also discussed.  First, Favro and Favreau asserted that Mr. Rissetto "had a pornographic video on" his work-issued computer.[5]  (*Id.* at ¶ 150.)  Second, Favro and Favreau asserted that Mr. Rissetto "had used a work-issued iPad to remotely access [Clinton] County's Internet server and access one hundred eighty (180) pornographic Web sites for twenty three (23) hours on December 14, 2013."[6]  (*Id.* at ¶ 152.) Third, Favro and Favreau asserted that, on or about February 21, 2014, Mr. Rissetto "accessed pornographic material" during work hours, specifically, that he had been "looking for a prostitute."[7]  (*Id.* at ¶ 156.)  Fourth, "[u]pon information and belief," at "some point in 2014," Favro asserted that Mr. Rissetto assisted Mrs. Rissetto "in conducting clandestine and improper background searches on" prospective employees of BOCES; this allegation was also false.  (*Id.* at ¶¶ 166-67.)

At another meeting, held on or about May 5, 2014, the allegations against Mr. Rissetto were again discussed (this time in the presence of Mr. Rissetto's attorney, as well as Favro, Favreau, Upton, and "a computer consultant hired by" Mr. Rissetto's attorney), and Favro

---

[5]      Plaintiffs allege that the video "was evidence in a criminal investigation" and was saved on Mr. Rissetto's computer "at the request of another deputy[.]"  (*Id.* at ¶ 151.)

[6]      Plaintiffs allege that Mr. Rissetto "had not accessed pornographic Web sites using his work-issued computer on that date," and that, on or about April 23, 2014, Favreau "admitted" that this allegation "was incorrect."  (*Id.* at ¶¶ 153-54.)

[7]      Plaintiffs allege that Mr. Rissetto "had in fact been researching a possible prostitution ring," that he did not "access[] pornographic material for personal purposes at any time during work hours," and that "[a]ny pornographic material" that he "ever accessed or possessed" was done so "in connection with criminal investigations" in the course of his CCSD duties.  (*Id.* at ¶¶ 157-59.)

"intimated that making these allegations public would embarrass" Mrs. Rissetto and Plaintiffs' children, and "demanded" Mr. Rissetto's resignation.  (*Id.* at ¶¶ 160, 164.)  Mr. Rissetto also "confirmed" during the meeting that he had used Mrs. Rissetto's work-issued laptop to "back up his files."  (*Id.* at ¶ 165.)  Up until that point, Mr. Rissetto had not been returned to duty since he had been placed on administrative leave.  (*Id.* at 382.)

### 7.    Dissemination of the Allegations Against Plaintiffs

At some point, "[i]t . . . came to the attention of" Plaintiffs that other CCSD officers, "community members, labor representatives, and teachers and staff at various school districts" learned of "the false allegations," some of which "were repeated on social networking sites," including Facebook.  (*Id.* at ¶ 175.)  Favro and Favreau "repeated the false allegations" to other CCSD and County employees, all of whom, "upon information and belief, repeated the false allegations against [Mr.] Rissetto to others."  (*Id.* at ¶ 174.)

### 8.    Search and Seizure of Mrs. Rissetto's Computers

On or about May 14, 2014, Favro contacted Davey and asserted that Mrs. Rissetto had violated BOCES's Acceptable Use Policy ("AUP"), which governed the use of her work-issued computer equipment.  (*Id.* at ¶ 176.)  Favro also discussed with Davey the allegations made against Mr. Rissetto, and issues related to Mr. Rissetto's employment; Davey then shared that information with Gray, Clamser, "members of BOCES' Board of Education" without Plaintiffs' knowledge or consent.  (*Id.* at ¶¶ 177-79.)

After Favro contacted Davey, Davey directed Mrs. Rissetto to retrieve her work-issued laptop computer and to turn it over to him; Mrs. Rissetto did so "under protest," meaning that she "neither consented to nor agreed with his directive."  (*Id.* at ¶¶ 180-81, 190-91.)  Davey or

-8-

Clamser also removed Mrs. Rissetto's desktop computer from her office.  (*Id.* at ¶ 183.)  Mrs. Rissetto also surrendered her work-issued iPad; and, after her laptop computer, desktop computer, and iPad were provided to CCSD personnel, Upton searched those items without a warrant.[8]  (*Id.* at ¶¶ 186, 194-97.)  "Upon information and belief," Favro and Craig, "among possibly others," instigated the search of Mrs. Rissetto's computer equipment "to obtain evidence of misconduct within" CCSD that "[Mr.] Rissetto had accumulated," and to destroy that evidence in order to "conceal said misconduct."  (*Id.* at ¶ 198.)  In actuality, however, Mr. Rissetto "never downloaded any files" to Mrs. Rissetto's work-issued desktop computer or iPad, and Defendants had no reason to believe that Mr. Rissetto had done so.  (*Id.* at ¶ 199.)  At some point thereafter, Davey stated to Mrs. Rissetto that "no violation of" BOCES's AUP was indicated by the review of Mrs. Rissetto's work-issued devices.  (*Id.* at ¶ 204.)

### 9.    Retaliation Against Mrs. Rissetto

In or around May 2014, Favro contacted Davey and asserted that Mrs. Rissetto stole two printers from BOCES and "provid[ed] them to" CCSD.  (*Id.* at ¶ 205.)  Davey shared these allegations with Gray, Clamser, and "other employees and agents" of BOCES, who "may have further repeated these allegations."  (*Id.* at ¶ 206.)  Mrs. Rissetto later learned that "various community members, labor representatives, and teachers and staff at various school districts" had "heard of the false allegations" against her.  (*Id.* at ¶ 207.)  The printers at issue had been loaned to CCSD with BOCES's approval.  (*Id.* at ¶ 209.)  Favro advanced the false allegations against

---

8       Plaintiffs elsewhere allege, in contradiction to the allegation that Defendants did not secure a warrant "authorizing *any* of the above-mentioned searches" (*Id.* at ¶ 196 [emphasis added]), that CCSD and Favro "also obtained two (2) Search Warrants in order to search Plaintiff Rachel Rissetto's work-issued laptop computer" and "executed" those warrants (*id.* at ¶¶ 458-59).

Mrs. Rissetto for the purpose of coercing Mr. Rissetto to "withdraw his accusations of misconduct within" CCSD, to conceal that misconduct, "and/or out of ill will toward" Mrs. Rissetto.  (*Id.* at ¶ 210.)

At some point, Davey accused Mrs. Rissetto of "insubordination as if she had refused to relinquish her work-issued iPad on May 14, 2014, although it had not been requested of her until May 16, 2014."  (*Id.* at ¶ 212.)  Davey also excluded Mrs. Rissetto from work meetings that she previously regularly attended, and began requiring her to submit weekly timesheets, although other employees with similar duties were not required to do so.  (*Id.* at ¶¶ 213-15.)  Moreover, Davey "pursued numerous investigations of" Mrs. Rissetto's workplace conduct and "repeated[ly] accused [her] of being disrespectful and/or combative toward other employees," but those accusations were unfounded.  (*Id.* at ¶¶ 217-18.)

### 10. Disciplinary Charges Against Mr. Rissetto and Plaintiffs' Notices of Claim

Beginning in or around May 2014, Plaintiffs and Defendants exchanged a volley of disciplinary charges against Mr. Rissetto (served upon Mr. Rissetto by the County Defendants pursuant to New York Civil Service Law § 75) and notices of claim (served upon Defendants by Plaintiffs pursuant to the New York General Municipal Law).  (*Id.* at ¶¶ 221-61.)  On or about May 15, 2014, Mr. Rissetto served a notice of claim on Clinton County, the Clinton County Legislature, and Favro.  (*Id.* at ¶ 223; *accord,* Dkt. No. 1, Attach. 3 [Exhibit "C"].)  On or about May 29, 2014, Defendants served disciplinary charges upon Mr. Rissetto, and Favro placed Mr. Rissetto on unpaid leave for 30 days and directed him not to communicate with any CCSD employees.  (*Id.* at ¶¶ 233-34; *accord,* Dkt. No. 1, Attach. 6 [Exhibit "F"].)  On about June 5,

2014, Mrs. Rissetto served a notice of claim upon the Clinton County Defendants and Favreau, pursuant to the New York General Municipal Law.  (Dkt. No. 1 at ¶ 221; *accord,* Dkt. No. 1, Attach. 1 [Exhibit "A"].)  On or about August 13, 2014, Plaintiffs each served a notice of claim on the BOCES Defendants.  (Dkt. No. 1 at ¶¶ 222, 224; *accord,* Dkt. No. 1, Attachs. 2, 4 [Exhibit "B," "D"].)

In the summer or fall of 2014, a hearing was held on the disciplinary charges, during the course of which the County Defendants made a settlement offer; Plaintiffs declined the offer. (*Id.* at ¶ 238.)  The County Defendants "implied that criminal charges would be filed against [Mr.] Rissetto if the Plaintiffs did not accept the settlement offer," and, the following week, Mr. Rissetto was "visited by" a NYSP investigator in relation to a criminal investigation against him. (*Id.* at ¶¶ 239-42.)

On or about September 5, 2014, the hearing was "discontinued" because the parties reached a settlement agreement, but the settlement "ultimately fell through."  (*Id.* at ¶ 243.)  On or about October 15, 2014, Defendants served a second set of disciplinary charges upon Mr. Rissetto.  (*Id.* at ¶ 247; *accord,* Dkt. No. 1, Attach. 8 [Exhibit "H"].)  The new charges were related to Mr. Rissetto's attempted contact with CCSD employees "in their capacity as liaisons with the union" and constituted an attempt to prevent him from "exercising his rights under the collective bargaining agreement" to which he was a party.  (Dkt. No. 1 at ¶ 251.)  On or about November 18, 2014, Mr. Rissetto served another notice of claim on Clinton County, the Clinton County Legislature, and Favro.  (*Id.* at ¶ 225; *accord,* Dkt. No. 1, Attach. 5 [Exhibit "E"].)  On or about January 13, 2015, Defendants served a third set of disciplinary charges upon Mr. Rissetto. (Dkt. No. 1 at ¶ 252; *accord,* Dkt. No. 1, Attach. 10 [Exhibit "J"].)

A hearing on all of the charges was scheduled for February 4, 2015; whether that hearing was actually held and completed is unclear from Plaintiffs' Complaint. (*Id.* at ¶ 254.) Plaintiffs assert that the "repeated disciplinary charges and threatened criminal charges" against Mr. Rissetto were intended to "increase the Defendants' bargaining power as against the Plaintiffs and to force the Plaintiffs to settle on terms favorable to the Defendants." (*Id.* at ¶ 261.)

### 11.   Plaintiffs' Claims in the Present Action

### a.   Plaintiffs' Claims, Asserted Jointly

Based upon the foregoing, Plaintiffs assert the following claims: (1) a claim that Clinton County, the Clinton County Legislature, CCSD, Favro, and Favreau engaged in a malicious abuse of process by serving three sets of disciplinary charges against Mr. Rissetto, obtaining a warrant to search Mrs. Rissetto's laptop computer, objecting to Plaintiffs' presence at the "public portions of certain meetings of" the Clinton County Legislature, implying or expressing that it would not "settle favorably with" Plaintiffs if they "continued to attend" those meetings, and "initiat[ing] a criminal investigation" against Mr. Rissetto, for the purpose of coercing Plaintiffs to withdraw their notices of claim "and/or settle upon terms favorable to" Defendants (*Id.* at ¶¶ 437-69) ("Fifth COA"); (2) a claim that Clinton County, the Clinton County Legislature, and CCSD were negligent in failing to adequately train, hire, and supervise Favro, Craig, Reid, Upton, and Favreau (*id.* at ¶¶ 657-83) ("Eleventh COA"); (3) a claim that BOCES was negligent in failing to adequately train, hire, and supervise Davey, Gray, and Clamser (*id.* at ¶¶ 685-704) ("Twelfth COA"); (4) a claim pursuant to New York General Municipal Law § 51 that Clinton County, the Clinton County Legislature, CCSD, Favro, Craig, and Reid "signed off" on timesheets of a CCSD deputy claiming entitlement to "fraudulent" overtime pay, and requiring

Craig and Reid to "return moneys received" by the CCSD deputy and an injunction upon these Defendants from "paying additional false claims" (*id.* at ¶¶ 845-56) ("Twentieth COA"); and (5) a claim against all Defendants for attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), New York Labor Law § 740(5), and/or 42 U.S.C. § 2000e-5 (*id.* at ¶¶ 858-61).

### b.      Mrs. Rissetto's Claims, Individually

Based upon the foregoing, Mrs. Rissetto asserts the following claims: (1) a claim that Favro, Craig, Upton, Gray, Clamser, and Davey violated the First, Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983 by (a) subjecting her to unreasonable searches and seizures of her work-issued computer devices, and (b) retaliating against her for associating with Mr. Rissetto (Dkt. No. 1 at ¶¶ 263-300) ("First COA"); (2) a claim that Favro, Favreau, Gray, Clamser, and Davey defamed her by (a) knowingly repeating the false allegations against Mr. Rissetto (i.e., that he used his work-issued computer devices to access pornographic and prostitution-related websites), thereby defaming Mrs. Rissetto by association, and (b) falsely stating (and repeating) that Mrs. Rissetto stole two printers from BOCES and, with Mr. Rissetto's assistance, conducted "secret criminal background checks" on prospective BOCES employees (*id.* at ¶¶ 516-74) ("Seventh COA"); (3) a claim that Favro, Craig, Upton, Gray, Clamser, and Davey tortiously interfered with her employment contract with BOCES (*id.* at ¶¶ 631-55) (Tenth COA); (4) a claim that, by their actions, Favro, Craig, Favreau, Upton, Gray, Clamser, and Davey intentionally inflicted emotional distress upon her (*id.* at ¶¶ 729-56) ("Fourteenth COA"); and (5) a claim against all Defendants for loss of consortium due to Mr. Rissetto's injuries (*id.* at ¶¶ 764-67) ("Sixteenth COA").

-13-

### c.      Mr. Rissetto's Claims, Individually

Based upon the foregoing, Mr. Rissetto asserts the following claims: (1) a claim that

Favro, Craig, Favreau, Upton, Gray, Clamser, and Davey violated the First, Fourth, Fifth, and

Fourteenth Amendments and 42 U.S.C. § 1983 by (a) subjecting him to an unreasonable search

and seizure of his work-issued computer, (b) retaliating against him for exercising his right to

free speech, and (c) damaging his reputation by publishing false accusations about him without

due process of law (*Id.* at ¶¶ 303-42) ("Second COA"); (2) a claim that Clinton County, CCSD,

Favro, Craig, Reid, and Upton retaliated and discriminated against him in violation of New York

Civil Service Law § 75-b by falsely accusing him of misconduct, placing him on administrative

leave without pay, and threatening to terminate his employment because he disclosed information

that he believed constituted improper governmental action (*id.* at ¶¶ 345-93) ("Third COA"); (3)

a claim that Clinton County CCSD, Favro, Craig, Reid, and Upton retaliated against him by

placing him on administrative leave, threatening to terminate him, and "taking other adverse

employment action against him because he made efforts to stop the submission" of false claims

for overtime compensation, in violation of the New York False Claims Act ("NYFCA"), New

York State Finance Law § 191 (*id.* at ¶¶ 395-436) ("Fourth COA"); (4) a claim that CCSD,

Favro, Gray, Clamser, and Davey defamed him by repeating the false allegations against him

(i.e., that he had accessed pornographic websites and sought a prostitute on his work-issued

computer) to other individual Defendants, "other employees," and members of BOCES's Board

of Education, with the intention of injuring his professional reputation and coercing him to resign

from his employment (*id.* at ¶¶ 471-515) ("Sixth COA"); (5) a claim that Favro, Craig, Favreau,

and Upton tortiously interfered with his employment contract with Clinton County and CCSD

(*id.* at ¶¶ 575-608) ("Eighth COA"); (6) a claim that Favro and Upton tortiously interfered with his collective bargaining agreement by (a) interposing disciplinary charges when Mr. Rissetto attempted to contact "union liaisons" and witnesses, and (b) refusing to provide him union representation with regard to Warick's harassment allegations (*id.* at ¶¶ 609-30) ("Ninth COA"); (7) a claim that Favro, Craig, Favreau, Upton, Gray, Clamser, and Davey intentionally inflicted emotional distress upon him (*id.* at ¶¶ 707-26) ("Thirteenth COA"); (8) a claim against all Defendants for loss of consortium due to Mrs. Rissetto's injuries (*id.* at ¶¶ 759-62) ("Fifteenth COA"); (9) and (10) a claim that Clinton County, CCSD, Favro, Craig, and Favreau discriminated against him on the basis of his PTSD in violation of New York Executive Law § 296(1)(a) and, as to Clinton County, CCSD, and Favro only, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a) *et seq.* (*id.* at ¶¶ 769-815)[9] ("Seventeenth COA" and "Eighteenth COA," respectively); and (11) a claim that Clinton County, CCSD, and Favro discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 (*id.* at ¶¶ 818-42)[10] ("Nineteenth COA").

---

[9]     At some point in time not specified in Plaintiffs' Complaint, Plaintiffs allege that Favro observed that Mr. Rissetto "has not been 'the same' since the accident which resulted in his PTSD." (Dkt. No. 1 at ¶ 776.) Plaintiffs allege that Favro's efforts "to dismiss or demote" Mr. Rissetto are "due, in whole or in part, to . . . Favro objecting to" Mr. Rissetto's PTSD, "and/or questioning" Mr. Rissetto's "abilities based solely on his PTSD[.]" (*Id.* at ¶ 782.) Plaintiffs allege that these "false allegations" and disciplinary charges against Mr. Rissetto, as well as the subsequent search of his computer devices, was an elaborate effort on the part of Favro, Upton, Craig, Reid, and Favreau to discover a pretext to demote or terminate Mr. Rissetto. (*Id.* at ¶¶ 784-87.)

[10]     Plaintiffs allege that Mr. Rissetto's date of birth is August 15, 1967, and he was thus was over 40 years old during the time period relevant to Plaintiffs' claims. (Dkt. No. 1 at ¶ 824.) Plaintiffs allege that other Clinton County and CCSD employees, who are younger than Mr. Rissetto, have not been subjected to adverse employment action, "some of them despite known and documented instances of misconduct and/or incompetence." (*Id.* at ¶ 838.)

B.      **Parties' Briefing on Defendants' Motions to Dismiss**

The BOCES Defendants, the County Defendants, and Favreau have filed respective

motions to dismiss Plaintiffs' Complaint, each seeking dismissal of all claims asserted again each

such Defendant.  (Dkt. No. 23, Attach. 7 [BOCES Defs.' Memo. of Law]; Dkt. No. 24, Attach. 6

[County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2 [Favreau's Memo. of Law].)  Several of

the parties' numerous arguments in support of their respective motions are identical or highly

similar (as are Plaintiffs' corresponding arguments in opposition).  Bearing in mind that (again)

this Decision and Order is intended primarily for the review of the parties, and to avoid lengthy

repetitions of identical or substantially similar arguments, the Court provides the following

overview of the parties' arguments in support of their respective motions, and Plaintiffs'

arguments in opposition thereto.

1.      **Defendants' Memoranda of Law**

Generally, in their respective memoranda of law, Defendants argue as follows: (1)

Plaintiffs' Complaint should be dismissed and/or stricken pursuant to Fed. R. Civ. P. 8 because it

does not contain a "short and plain statement" of their claims, but rather is unnecessarily prolix;[11]

(2) neither Mr. Rissetto nor Mrs. Rissetto has alleged facts plausibly suggesting that either had a

reasonable expectation of privacy in their respective work-issued computer devices, particularly

in light of applicable written policies[12] governing computer usage;[13] (3) neither Mr. Rissetto nor

---

[11]      (Dkt. No. 23, Attach. 7, at 3 [BOCES Defs.' Memo. of Law]; Dkt. No. 24, Attach.
6, at 10-12 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 12 [Favreau's Memo. of
Law, arguing that the Court should strike the unidentified portions of Plaintiffs' Complaint "that
are so prolix as to not provide fair notice of the accusations"].)

[12]      With their motion to dismiss, the BOCES Defendants have filed, among other
things, an affidavit sworn to by Davey on September 11, 2015 (Dkt. No. 23, Attach. 2), BOCES'

Mrs. Rissetto has alleged facts plausibly suggesting that the search of their work-issued computer devices was unreasonable;[14] (4) neither Mr. Rissetto nor Mrs. Rissetto has alleged facts plausibly suggesting that either engaged in protected speech or that such speech was causally connected to any adverse employment action to which either was subjected, and, in any event, Mr. Rissetto's

---

"Acceptable Use Policy for Technology Resources" (Dkt. No. 23, Attach. 3), and a "Laptop and Electronic Devices /AUP Acceptance Form" signed by Mrs. Rissetto (Dkt. No. 23, Attach. 4). The AUP Acceptance Form states that the "[a]nticipated period of [the] loan" began on September 22, 2011 (the same date as that of Mrs. Rissetto's signature) and ended on June 30, 2012. (Dkt. No. 23, Attach. 4.) In his affidavit, Davey asserts, among other things, the following: (1) on May 14, 2014, Favro contacted him and advised him that a "a computer identified as belonging to" BOCES had "improperly accessed" CCSD's computer systems "and/or accessed confidential [CCSD] files and materials" (*id.* at ¶ 4); (2) based on the "unique identifier number" provided by Favro, BOCES determined that the computer that accessed CCSD's systems was assigned to Mrs. Rissetto (*id.*); (3) Favro asked Davey/BOCES "to secure the laptop and provide access to it" to determine if any CCSD materials were on the laptop (*id.*); and (4) Favro reduced this request to a written letter and provided it to Davey during a meeting with Favro, Craig, and BOCES Board President Larry Barcomb on May 15, 2014 (*id.* at ¶ 5). The BOCES Defendants also filed a copy of Favro's letter with its motion. (Dkt. No. 23, Attach. 5 [Letter from Favro to Davey, dated May 15, 2014, explaining that CCSD learned "that critical evidence that was placed on a Sheriff owned mobile computer was removed using" a "device . . . owned by Champlain Valley Educational Services"].)

[13]     (Dkt. No. 23, Attach. 7, at 5-14 [BOCES Defs.' Memo. of Law, arguing that BOCES's AUP expressly stated that employees had no reasonable expectation of privacy in work-issued computer equipment, BOCES maintained ownership of the equipment, and BOCES had authority to consent to a search of such equipment by third parties such as CCSD]; Dkt. No. 24, Attach. 6, at 14-17 [County Defs.' Memo of Law, arguing that County's written policies precluded the possibility that Mr. Rissetto could held a reasonable expectation of privacy in his work-issued computer]; Dkt. No. 32, Attach. 2, at 20-24 [Favreau's Memo. of Law].)

[14]     (Dkt. No. 23, Attach. 7, at 14 [BOCES Defs.' Memo. of Law]; Dkt. No. 24, Attach. 6, at 17-20, 50-52 [County Defs.' Memo. of Law, arguing, moreover, that the County Defendants did not employ, discipline, arrest, detain, or pursue any other action against Mrs. Rissetto, and that the BOCES Defendants voluntarily turned over her work-issued computer to CCSD]; Dkt. No. 32, Attach. 2, at 22-23 [Favreau's Memo. of Law].)

-17-

complaints about possible CCSD misconduct was made pursuant to his official duties;[15] (5) to the extent that Mr. Rissetto may be understood to assert a § 1983 claim for a violation of his *procedural* due process rights, he has not alleged facts plausibly suggesting "a tangible burden" imposed in addition to the stigmatizing statement(s) made about him (i.e., a stigma plus claim);[16] (6) all of Plaintiffs' § 1983 claims must be dismissed as to Favreau because Plaintiffs have not alleged facts plausibly suggesting that he was personally involved in any retaliation against Mr. Rissetto or the search and seizure of Plaintiffs' computer devices;[17] (7) Favreau enjoys qualified immunity with respect to Plaintiffs' § 1983 claims because he was retained merely to prosecute the disciplinary charges against Mr. Rissetto and he violated none of Plaintiffs' well-settled constitutional rights;[18] (8) Plaintiffs' defamation claims must be dismissed because (a) they are time-barred under the one-year statute of limitations set forth in New York Civil Practice Law and Rules ("CPLR") 215, (b) Plaintiffs' allegation that statements were made on the date specified in Plaintiffs' Complaint "and thereafter" is insufficient to escape the limitations period, (c) Plaintiffs have not alleged facts plausibly suggesting that either suffered special damages or was subjected to defamation per se, (d) Mrs. Rissetto's claims premised upon statements made

---

[15]     (Dkt. No. 23, Attach. 7, at 15 [BOCES Defs.' Memo. of Law]; Dkt. No. 24, Attach. 6, at 22-24 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 16-18 [Favreau's Memo. of Law].)

[16]     (Dkt. No. 32, Attach. 2, at 26-27 [Favreau's Memo. of Law]; *accord,* Dkt. No. 24, Attach. 6, at 20-22 [County Defs.' Memo. of Law, arguing, as Plaintiffs alleged in their Complaint, Mr. Rissetto received a Section 75 hearing, was represented by counsel thereat, and no determination on his disciplinary charges have yet been issued].)

[17]     (Dkt. No. 32, Attach. 2, at 14-15 [Favreau's Memo. of Law].)

[18]     (Dkt. No. 32, Attach. 2, at 28-30 [Favreau's Memo. of Law].)

about Mr. Rissetto do not state a claim for relief merely because she is Mr. Rissetto's spouse, (d) Favreau enjoys absolute immunity with regard to any statements he made in relation to the disciplinary charges he was retained to prosecute, and (e) both Plaintiffs' claims are barred by the qualified privilege of common interest;[19] (9) Mrs. Rissetto's tortious interference with contract claim must be dismissed because she has not alleged facts plausibly suggesting (a) the existence of a contract between her and a third party in relation to Davey, Gray, and Clamser, (b) that she was subjected to an adverse employment action resulting in a breach of her employment contract with BOCES, (c) the manner in which her job duties were altered or she suffered any actual economic harm; or (d) that Favreau acted outside the scope of his authority as an agent of Clinton County;[20] (10) Mr. Rissetto's tortious interference with contract claims must be dismissed because (a) the County Defendants were parties to the same employment contract, (b) he has not alleged facts plausibly suggesting that the County Defendants were not acting in good faith as County employees in pursing Section 75 disciplinary charges against him, and (c) his allegations that he retained a private attorney with respect to the charges, and the fact that his answers to the charges are signed by a union attorney, undermine his claim that the County Defendants

---

[19]     (Dkt. No. 23, Attach. 7, at 18-30 [BOCES Defs.' Memo of Law]; Dkt. No. 24, Attach. 6, at 37-39 [County Defs.' Memo. of Law, arguing that Plaintiffs have not alleged facts plausibly suggesting that statements made about Mr. Rissetto were published or anything other than nonactionable opinion]; *id.* at 54 [arguing that Plaintiffs have not alleged that the County Defendants made any statements about Mrs. Rissetto]; Dkt. No. 32, Attach. 2, at 34-45 [Favreau's Memo. of Law].)

[20]     (Dkt. No. 23, Attach. 7, at 31-32 [BOCES Defs.' Memo of Law]; Dkt. No. 24, Attach. 6, at 54-55 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 45-47 [Favreau's Memo. of Law, arguing that Plaintiffs' tortious interference claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a)].)

interfered with or impeded his ability to contact union representatives or obtain representation;[21]
(11) Plaintiffs' negligence claim against BOCES must be dismissed because (a) Plaintiffs'
constitutional claims and defamation claims are lacking in merit, and thus, the BOCES
Defendants were not negligent in failing to train or supervise Davey, Gray, and/or Clamser, (b)
Defendants enjoy governmental immunity from tort liability, and Plaintiffs have not alleged facts
plausibly suggesting the existence of a special duty owed to them or a special relationship
between Plaintiffs and the BOCES Defendants, and (c) none of the notices of claim served by
Plaintiffs pursuant to General Municipal Law § 50-e contain any negligence claims, and any such
claim is therefore not properly before the Court;[22] (12) Plaintiffs' negligence claim against
Clinton County, The Clinton County Legislature, and CCSD must be dismissed because (a) those
Defendants enjoy governmental immunity with respect to Plaintiffs' negligence claim, and (b)
Plaintiffs' claim was not asserted in Plaintiffs' notices of claim and is therefore not properly
before the Court;[23] (13) Plaintiffs' intentional infliction of emotional distress ("IIED") claims
must be dismissed because (a) Plaintiffs' § 1983 claims and defamation claims are lacking in
merit, and the BOCES Defendants therefore did not intentionally inflict emotional distress upon
Plaintiffs, (b) Plaintiffs have not alleged facts plausibly suggesting sufficiently outrageous
conduct to support such a claim, (c) to the extent that Plaintiffs may be understood to assert a
claim of *negligent* infliction of emotional distress, they have not alleged facts plausibly
suggesting a breach of duty owed to either Plaintiff or any endangerment of their physical safety

---

[21]     (Dkt. No. 24, Attach. 6, at 39-42 [County Defs.' Memo of Law].)

[22]     (Dkt. No. 23, Attach. 7, at 32-33 [BOCES Defs.' Memo. of Law].)

[23]     (Dkt. No. 24, Attach. 6, at 42-43, 55-56 [County Defs.' Memo. of Law].)

or fear for their safety, and (d) none of Plaintiffs' notices of claim asserted any claim of infliction

of emotional distress, and this claim is therefore not properly before the Court;[24] (14) Mr.

Rissetto's disability discrimination claims (asserted pursuant to the ADA and New York

Executive Law § 296[1][a]) must be dismissed because (a) individuals are not subject to suit

under the ADA, and Favro therefore cannot be held liable on such a claim, (b) Mr. Rissetto has

not alleged that he filed any claim with the Equal Employment Opportunity Commission, and the

Court therefore lacks jurisdiction over this claim, and (c) Mr. Rissetto has not alleged facts

plausibly suggesting that (I) Favreau was aware of Mr. Rissetto's disability, (ii) that Mr. Rissetto

suffered an adverse employment action, or (iii) any connection between the alleged discovery of

his PTSD by CCSD personnel (on an unspecified date) and the initiation of disciplinary charges

against him, so as to give rise to an inference of discrimination;[25] (15) Mr. Rissetto's age

discrimination claim must be dismissed because he has not alleged facts plausibly suggesting that

he filed an age discrimination claim with the EEOC, and the Court therefore lacks jurisdiction

over this claim;[26] (16) all state law claims as to Reid and Upton must be dismissed because

neither was named or referred to in any of Mr. Rissetto's notices of claim;[27] (17) Plaintiffs'

---

[24]     (Dkt. No. 23, Attach. 7, at 34-35 [BOCES Defs.' Memo. of Law]; Dkt. No. 24, Attach. 6, at 43-45, 56-57 [County Defs.' Memo. of Law, arguing, moreover, that Plaintiffs failed to allege facts plausibly suggesting that Mr. Rissetto suffered a "severe" injury or a causal connection between the County Defendants' conduct and Mr. Rissetto's injury]; Dkt. No. 32, Attach. 2, at 47-50 [Favreau's Memo. of Law].)

[25]     (Dkt. No. 24, Attach. 6, at 25-26, 46-48 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 51-54 [Favreau's Memo. of Law].)

[26]     (Dkt. No. 24, Attach. 6, at 26 [County Defs.' Memo. of Law].)

[27]     (Dkt. No. 24, Attach. 6, at 27 [County Defs.' Memo. of Law].)

malicious abuse of process claims must be dismissed because (a) Mr. Rissetto concedes, by allegation, that disciplinary charges were brought against him as a result of a sexual harassment complaint asserted by Warick, and federal law requires employers to investigate such complaints, (b) Mr. Rissetto has failed to allege facts plausibly suggesting that the disciplinary proceedings were brought for an illegitimate purpose, (c) Mrs. Rissetto concedes, by allegation, that County Defendants secured a search warrant relative to the search of her BOCES-issued laptop computer, (d) Mrs. Rissetto has failed to allege facts plausibly suggesting that the County Defendants were motivated by an ulterior purpose to do harm to her, and (e) this claim was not asserted in Plaintiffs' notices of claim and therefore is not properly before this Court;[28] (18) Mr. Rissetto's retaliation claim pursuant to Civil Service Law § 75-b must be dismissed because Mr. Rissetto has not alleged facts plausibly suggesting that (a) he was a "whistleblower" for purposes of the statute, or (b) he notified any county employee regarding a perceived violation of a law, rule, or regulation that creates a substantial and specific danger to public health and safety;[29] (29) Mr. Rissetto's claim pursuant to the NYFCA must be dismissed because (a) Favro, Craig, Reid, and Upton are not amenable to suit, inasmuch as liability may only be imposed upon employers under Finance Law § 191, (b) this claim was not alleged in Mr. Rissetto's notices of claim and therefore is not properly before the Court, and (c) Mr. Rissetto has not alleged facts plausibly suggesting that (I) he was a "whistleblower" for purposes of Finance Law § 191, (ii) he made a "complaint" regarding the alleged overtime issues, and (iii) his alleged actions went beyond the

---

[28]     (Dkt. No. 24, Attach. 6, at 33-37, 52-53 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 31-33 [Favreau's Memo. of Law].)

[29]     (Dkt. No. 24, Attach. 6, at 28-30 [County Defs.' Memo. of Law].)

performance of his normal job responsibilities;[30] (20) Plaintiffs' loss of consortium claims must

be dismissed because (a) 42 U.S.C. § 1983 does not support a derivative claim for loss of

consortium, (b) no precedent exists for a loss of consortium claim flowing from a tortious

interference of contract claim, (c) Plaintiff' defamation, negligence, and infliction of emotional

distress claims are lacking in merit, and (d) none of Plaintiffs' notices of claim asserted any claim

for loss of consortium, and any such claim is therefore not properly before the Court;[31] (21)

Plaintiffs' taxpayer action claim pursuant to General Municipal Law § 51 must be dismissed

because (a) they have failed to allege facts plausibly suggesting that they have suffered a specific

injury sufficient to confer standing, and (b) this claim was not asserted in their notices of claim

and is therefore not properly before the Court;[32] (22) Plaintiffs have not adequately pleaded a

municipal liability claim against Clinton County under *Monell v. Dep't of Soc. Servs.*, 436 U.S.

658 (1978), because they have not alleged facts plausibly suggesting a violation of their

constitutional rights pursuant to any municipal policy or custom;[33] (23) based on Plaintiffs' own

factual allegations, Favro, Craig, Reid, Upton, and Favreau are entitled to qualified immunity as

a matter of law;[34] and (24) Plaintiffs' claim for "reasonable attorney's fees and costs" must be

---

[30]     (Dkt. No. 24, Attach. 6, at 30-33 [County Defs.' Memo. of Law].)

[31]     (Dkt. No. 23, Attach. 7, at 36-38 [BOCES Defs.' Memo. of Law]; Dkt. No. 24, Attach. 6, at 45-46, 57 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 50-51 [Favreau's Memo. of Law].)

[32]     (Dkt. No. 24, Attach. 6, at 48-49, 57-58 [County Defs.' Memo. of Law].)

[33]     (Dkt. No. 24, Attach. 6, at 58-59 [County Defs.' Memo. of Law].)

[34]     (Dkt. No. 24, Attach. 6, at 59-62 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 28-30 [Favreau's Memo. of Law].)

dismissed because (a) no independent cause of action for attorney's fees lies under 42 U.S.C. §

1988(b) or 42 U.S.C. § 2000e-5, and (b) no retaliation claims pursuant to Labor Law § 740(5) or

Civil Service Law § 75-b have been asserted against the BOCES Defendants.[35]

## 2.    Plaintiffs' Opposition Memoranda of Law

Generally, in opposition to Defendants' motions, Plaintiffs argue as follows: (1) dismissal

of the Complaint pursuant to Fed. R. Civ. P. 8 is unwarranted because the Complaint provides

fair notice of Plaintiffs' claims;[36] (2) Davey's Affidavit and Favro's letter to Davey (submitted in

support of the BOCES Defendants' motion) may not properly be considered on a motion to

dismiss for failure to state a claim;[37] (3) Plaintiffs' Fourth Amendment search and seizure claims

should not be dismissed because (a) whether an employee has a reasonable expectation of

privacy in a work-issued computer depends upon the employer's actual practices, and the written

policies issued by CCSD, Clinton County, and BOCES are therefore not dispositive, (b) there is

no record evidence that Mr. Rissetto or Mrs. Rissetto were notified of, or aware of, the terms of

any computer monitoring or use policies issued by Clinton County, CCSD, or BOCES, (c)

neither BOCES nor CCSD routinely monitored employees' computer usage or searched their

computers, and BOCES' former superintendent permitted Mrs. Rissetto (and her family) to use

her computer for personal purposes, (d) in light of those allegations, Plaintiffs have alleged facts

plausibly suggesting that they had a reasonable expectation of privacy in their respective work

---

[35]     (Dkt. No. 23, Attach. 7, at 37-38 [BOCES Defs.' Memo. of Law].)

[36]     (Dkt. No. 36 at 5-7 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.]; Dkt. No.
37 at 3-5 [Plfs.' Opp'n Memo. of Law to BOCES Defs.' Mtn.]; Dkt. No. 42 at 3-5 [Plfs.' Opp'n
Memo. of Law to Favreau's Mtn.].)

[37]     (Dkt. No. 37 at 5-7.)

computers, and (e) none of the searches of Plaintiffs' computers (i.e., Mr. Rissetto's work-issued computer and Mrs. Rissetto's work-issued laptop computer, desktop computer, and iPad) were reasonable or justified, particularly because Mr. Rissetto did not use Mrs. Rissetto's desktop computer or iPad and the sexual harassment investigation had already concluded by the time of the searches;[38] (4) Mr. Rissetto's First Amendment retaliation claim should not be dismissed because (a) his speech concerning the "possible payment of fraudulent overtime and a suspected incident of police brutality" touches on a matter of public concern, (b) he has alleged facts plausibly suggesting that his speech was made as a citizen rather than as a police officer engaged in his job duties, and (c) Warick's sexual harassment complaint was not an "intervening event" breaking the causal connection between his speech and the adverse consequences to which he was subjected;[39] (5) Mrs. Rissetto's First Amendment claim should not be dismissed because (a) it sounds in retaliation for her right of *association with* Mr. Rissetto, rather than her speech, and (b) Plaintiffs have alleged facts plausibly suggesting that (i) her association with Mr. Rissetto touches on matters of public concern in that Mr. Rissetto spoke out about "[m]isuse of government funds and police use of excessive force," (ii) she was subjected to an adverse employment action in that Davey "pursued . . . investigations" of her workplace conduct, excluded her from meetings, and required her to submit timesheets, and (iii) her protected activity and the adverse employment action occurred in close temporal proximity;[40] (6) Mr. Rissetto has adequately pleaded a "stigma plus" claim because he has alleged facts plausibly

---

[38]     (Dkt. No. 36 at 9-13, 20-22; Dkt. No. 37 at 7-13; Dkt. No. 42 at 6-10.)

[39]     (Dkt. No. 36 at 15-17; Dkt. No. 37 at 11-14.)

[40]     (Dkt. No. 37 at 13-16.)

suggesting that (a) the County Defendants deprived him of his reputation by making defamatory statements about his disciplinary charges before providing him notice and an opportunity to be heard, (b) Favro published those statements to "members of the community," (c) Davey "repeat[ed]" those "false statements" made by Favro, stigmatizing Mr. Rissetto and stripping him of his "good name, reputation, honor, [and] integrity" without due process, and (d) "it can be anticipated" that the disciplinary charges will be placed in Mr. Rissetto's personnel file;[41] (7) Plaintiffs have alleged facts plausibly suggesting that Favro was a "policymaker" in that he orchestrated a "campaign against the Plaintiffs" amounting to a policy;[42] (8) Favro, Craig, Reid, Upton, and Favreau are not entitled to qualified immunity because (a) in "seeking to conceal misconduct" within CCSD, they "exceeded the bounds of their authority," and (b) the constitutional rights that Plaintiffs allege the County Defendants violated were well established;[43] (9) the County Defendants are not entitled to qualified immunity under state law because Plaintiffs have alleged facts plausibly suggesting that they acted in bad faith;[44]  (10) Plaintiffs' failure to name Upton and Reid in their notices of claim is immaterial;[45] (10) Mr. Rissetto's Civil Service Law § 75-b retaliation claim should not be dismissed because Plaintiffs have pleaded

---

[41]      (Dkt. No. 36 at 18-19; Dkt. No. 37 at 16-17 [Plfs.' Opp'n Memo. of Law to BOCES Defs.' Mtn., quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)]; Dkt. No. 42 at 14-19 [Plfs.' Opp'n Memo. of Law to Favreau's Mtn., arguing, moreover, that Favreau is not entitled to qualified immunity].)

[42]      (Dkt. No. 36 at 28-29.)

[43]      (Dkt. No. 36 at 22-23; Dkt. No. 42 at 16-19.)

[44]      (Dkt. No. 36 at 31-32.)

[45]      (Dkt. No. 36 at 30-31.)

facts plausibly suggesting that Mr. Rissetto disclosed concerns about conduct within CCSD to Favro and was subsequently retaliated against for his whistleblowing;[46] (11) Mr. Rissetto has adequately pleaded a whistleblower claim under Finance Law § 191, and his notices of claim "substantially complied" with the General Municipal Law because "they provided the County Defendants with notice that [he] would be alleging that his termination" was retaliatory;[47] (12) Plaintiffs' sufficiently stated a malicious abuse of process claim in their notices of claim because they asserted that Favro attempted to "coerce a settlement," and Plaintiffs have adequately pleaded a claim for malicious abuse of process because they have alleged facts plausibly suggesting that (a) Favro and CCSD served process (three sets of disciplinary charges) and secured warrants to search Mrs. Rissetto's computer and (b) the County Defendants abused that process "out of a bad motive" to coerce Plaintiffs to withdraw their notices of claim or settle on favorable terms, and to "destroy evidence relevant to" Plaintiffs' claims;[48] (13) Mr. Rissetto's defamation claim should not be dismissed because (a) he has pleaded plausible factual support for the elements of his claim, (b) his claim re-accrued for statute of limitations purposes each time defamatory statements were repeated and Plaintiffs have alleged that Favro made statements "up to and including the present" and "on or about May 14, 2014 and thereafter," (c) he need not plead special damages because the alleged statements about him (i.e., that he accessed pornography and sought a prostitute on a work-issued computer) threaten him in his profession and thus constitute defamation per se, and (d) none of the Defendants enjoy a qualified privilege

---

[46]     (Dkt. No. 36 at 33-36.)

[47]     (Dkt. No. 36 at 37-39.)

[48]     (Dkt. No. 36 at 39-43; Dkt. No. 42 at 19-22.)

with respect to their statements because the statements were made maliciously;[49] (14) Mrs. Rissetto's defamation claim should not be dismissed because (a) her claim is not time-barred, (b) she has alleged facts plausibly suggesting that (i) Favro falsely stated to her supervisor that she had stolen a computer from BOCES, "for the purpose of retaliating against [her] by virtue of her association with" Mr. Rissetto, and (ii) the statements at issue–particularly that she conducted "secret and unauthorized background checks on prospective hires"–constitutes defamation per se, (c) Defendants have not cited authority for the proposition that she cannot "recover for *reputational* damage to herself" stemming from republication of defamatory statements about Mr. Rissetto, and (d) the qualified privilege of common interest does not apply because the BOCES Defendants repeated the defamatory statements to "members of the community";[50] (15) Mr. Rissetto has adequately pleaded a claim that the County Defendants interfered with his employment contract, and coworkers and supervisors may be held liable on such a theory because they exceeded their authority;[51] (16) Mr. Rissetto has alleged facts plausibly suggesting that the County Defendants interfered with the collective bargaining agreement because he was "initially refused a union attorney" to assist him in defending against the disciplinary charges, and, contrary to Favreau's argument, his claim is not preempted;[52] (17) Mrs. Rissetto has adequately asserted a tortious interference with contract claim because she has alleged facts plausibly suggesting that (a) "it is believed" that the BOCES Board of Education instructed

---

[49]     (Dkt. No. 36 at 43-46; Dkt. No. 37 at 18-23; Dkt. No. 42 at 22-30.)

[50]     (Dkt. No. 36 at 46-47; Dkt. No. 37 at 23-26; Dkt. No. 42 at 30-32.)

[51]     (Dkt. No. 36 at 47-49; Dkt. No. 42 at 32-34.)

[52]     (Dkt. No. 36 at 49-50.)

Davey, Gray, and Clamser not to provide Mrs. Rissetto's computers to the County Defendants, and they exceeded their authority in doing so, (b) Davey, Gray, and Clamser "committed independent predatory acts," including repeating defamatory statements concerning Mrs. Rissetto, accusing her of being insubordinate, disrespectful, and combative toward other BOCES employees, and (c) after the search of her computers, BOCES breached her employment contract by "alter[ing her] duties," namely, excluding her from meetings and requiring her to submit timesheets;[53] (18) Plaintiffs' negligence claims should not be dismissed because (a) governmental immunity does not apply in this case in that the acts alleged–searching workplace computers and repeating statements made by others–are not governmental functions, but rather proprietary functions, and (b) Plaintiffs' notices of claim adequately provided notice of their negligence claims;[54] (19) Plaintiffs have adequately pleaded intentional infliction of emotional distress ("IIED")August 3, 2016 claims because (a) Plaintiffs' notices of claim provided notice of the claims in that they itemized "emotional injury" and "mental anguish" as part of the damages Plaintiffs suffered, and (b) they have alleged facts plausibly suggesting that (I) the conduct of Favro, Craig, and Upton was extreme and outrageous, (ii) Davey, Gray, and Clamser "actively assisted" in the County Defendants' "campaign" against Plaintiffs by turning over Mrs. Rissetto's work-issued computers and participating in the searches of the computers, and (iii) Favreau also "participated" in the "campaign of harassment and intimidation" by "circulat[ing] false statements" about, and taking part in the "lengthy" investigation of, Mr. Rissetto;[55] (20) Plaintiffs

---

[53]        (Dkt. No. 36 at 50-51; Dkt. No. 37 at 26-29.)

[54]        (Dkt. No. 36 at 51-52; Dkt. No. 37 at 29-32.)

[55]        (Dkt. No. 36 at 53-57; Dkt. No. 37 at 32-34; Dkt. No. 42 at 34-37.)

have adequately alleged loss of consortium claims, and those claims need not have been specifically identified in their notices of claim;[56]  (21) Mr. Rissetto has adequately pleaded a disability discrimination claim pursuant to Executive Law § 296 because he has alleged facts plausibly suggesting that (a) he has a disability, (b) he performed his responsibilities well until Favro's "campaign" to terminate him, (c) there was no "legitimate reason" to terminate him, "raising the specter of animus toward his disability," and (d) Favreau was "an aider and abettor of . . . Favro and the County Defendants" pursuant to Executive Law § 296(6);[57] (22) Plaintiffs have alleged facts plausibly suggesting that they are tax-paying property owners in Clinton County and thus enjoy standing to prosecute a taxpayer action under General Municipal Law § 51;[58] (23) Plaintiffs may recover attorney's fees and costs under 42 U.S.C. § 1988(b) if they succeed on their § 1983 claims;[59] and (24) Plaintiffs should be permitted to conduct discovery before any claims are dismissed because discovery "might expose facts" supporting their claims.[60]

### 3.    Defendants' Reply Memoranda of Law

Generally, in reply to Plaintiffs' opposition memoranda of law, Defendants reiterate their initial arguments and, moreover, argue as follows: (1) CCSD's search of Mr. Rissetto's work-issued computer was reasonable because (a) CCSD's investigation of Warick's sexual harassment complaint was ongoing at the time of the search, (b) Mr. Rissetto expressly informed Favro that

---

[56]    (Dkt. No. 36 at 57-58; Dkt. No. 37 at 35-36; Dkt. No. 42 at 37-38.)

[57]    (Dkt. No. 36 at 58-61; DKt. No. 42 at 38-42.)

[58]    (Dkt. No. 36 at 61-63.)

[59]    (Dkt. No. 37 at 36.)

[60]    (Dkt. No. 36 at 63; Dkt. No. 37 at 36; Dkt. No. 42 at 42.)

he had saved information regarding Warick on his computer, and (c) as Plaintiffs allege in their Complaint, Mr. Rissetto used Mrs. Rissetto's work-issued laptop to remotely access computer files related to Warick;[61] (2) with regard to his First Amendment retaliation claim against Favro and Craig, Plaintiffs do not allege in their Complaint that Mr. Rissetto "spoke with . . . Craig at all" regarding his concerns;[62] (3) with regard to his Civil Service Law § 75-b retaliation claim, Mr. Rissetto's "complaints" related only to "past activity" (i.e., Warick's past incidents of poor driving, and a prior incident of brutality by a New York State trooper), and thus his allegations did not concern a "substantial" danger to the public;[63] (4) Plaintiffs have not alleged facts plausibly suggesting that their constitutional rights were violated pursuant to an official County policy, practice, or custom for purposes of a *Monell* claim;[64] (5) Davey's affidavit and Favro's letter may be considered by the Court on the BOCES Defendants' motion because (a) Plaintiffs' Complaint expressly references the "statements" set forth in Davey's affidavit and Favro's letter and (b) Plaintiffs do not dispute the authenticity, accuracy, or relevance of those documents;[65] (6) Plaintiffs' argument that there is no indication that Mrs. Rissetto was aware of the contents of the AUP in effect is "farcical at best", given that she was BOCES' Human Resources Director;[66] (7) the BOCES AUP Acceptance Form does not limit itself to any particular time period and "clearly

---

[61]     (Dkt. No. 46 at 8-10 [County Defs.' Reply Memo. of Law].)

[62]     (Dkt. No. 46 at 11.)

[63]     (Dkt. No. 46 at 13-14.)

[64]     (Dkt. No. 46 at 20-21.)

[65]     (Dkt. No. 48 at 2-3 [BOCES Defs.' Reply Memo of Law].)

[66]     (Dkt. No. 48 at 3.)

incorporates" the AUP that Mrs. Rissetto acknowledged;[67] (8) with regard to Mrs. Rissetto's First Amendment freedom of association claim, Plaintiffs have not alleged facts plausibly suggesting that (a) they were "banned" from associating with each other or (b) Mrs. Rissetto suffered a resulting adverse employment action such as termination, demotion, or reduction in pay;[68] (9) Mrs. Rissetto's defamation claim must be dismissed because (a) a spouse of a defamed person has no claim for defamation of her character based on comments against the other spouse and (b) Plaintiffs' allegations that Favro, Davey, Gray, and/or Clamser repeated statements about Mrs. Rissetto to other BOCES employees, "among *possibly* other members of the community," is entirely speculative;[69] (10) Plaintiffs' IIED claims must be dismissed because they have not alleged facts plausibly suggesting that the BOCES Defendants were involved in the alleged "campaign of conduct" undertaken to conceal the County Defendants' misconduct;[70] (11) Plaintiffs have not alleged facts plausibly suggesting that Favreau was personally involved in any procedural due process violation;[71] and (12) Plaintiffs are receiving adequate procedures, and Civil Service Law §§ 75 and 78 provide terminated public employees with remedies consistent with due process.[72]

---

[67]    (Dkt. No. 48 at 4.)

[68]    (Dkt. No. 48 at 5.)

[69]    (Dkt. No. 48 at 10.)

[70]    (Dkt. No. 48 at 14.)

[71]    (Dkt. No. 49 at 2-3 [Favreau's Reply Memo. of Law].)

[72]    (Dkt. No. 49 at 3-6.)

## II.     GOVERNING LEGAL STANDARDS

### A.     Legal Standard Governing Motions to Dismiss

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965.  More specifically, the "[f]actual allegations must

-34-

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Id*. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement."  *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[73]

###    B.    Substantive Legal Standards Governing Plaintiffs' Claims

Because the parties to this action have demonstrated, in their memoranda of law, an

accurate understanding of the relevant points of law contained in the general legal standards

---

[73]        *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are
"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the
factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may nevertheless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.") [internal
quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d
Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an
exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

governing Plaintiff's claims, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which is (again) intended primarily for review by the parties. (*See generally* Dkt. No. 23, Attach. 7 [BOCES Defs.' Memo. of Law]; Dkt. No. 24, Attach. 6 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2 [Favreau's Memo. of Law]; Dkt. Nos. 36, 37, 42 [Plfs.' Opp'n Memos. of Law]; Dkt. No. 46 [County Defs.' Reply Memo. of Law]; Dkt. No. 48 [BOCES Defs.' Reply Memo. of Law]; Dkt. No. 49 [Favreau's Reply Memo. of Law].)  Rather, the Court will merely reference portions of those standards where necessary in Part III of this Decision and Order.

## III.    ANALYSIS[74]

### A.    Whether Plaintiffs' Complaint Should Be Dismissed for Failure to Comply with Fed. R. Civ. P. 8

After carefully considering this matter, the Court answers this question in the negative for the reasons set forth in Plaintiffs' memoranda of law.  (Dkt. No. 36 at 5-7 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.]; Dkt. No. 37 at 3-5 [Plfs.' Opp'n Memo. of Law to BOCES Defs.' Mtn.]; Dkt. No. 42 at 3-5 [Plfs.' Opp'n Memo. of Law to Favreau's Mtn.].)  To those reasons, the Court adds the following analysis.

Pursuant to Fed R. Civ. P. 8, a pleading that states a claim for relief must contain, among other things, "a *short* and *plain* statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2) (emphasis added).  The statement of the claim "should be plain because the principal function of pleadings . . . is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  *Salahuddin v. Cuomo*, 861 F.2d 40,

---

[74]     The Court has, in part, reorganized the order of the issues presented by Defendants' motions.

42 (2d Cir. 1988) (emphasis added).  The statement of the claim "should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'"  *Salahuddin*, 861 F.2d at 42 (quoting 5 C. Wright & A. Miller, Federal Prac. and Proc. § 1281, at 365 [1969]).  "When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint."  *Id.* (citing Fed. R. Civ. P. 12[f]).  While it is within the district court's discretion whether or not to grant leave to amend, Fed. R. Civ. P. 15(a) directs that leave to amend "shall be freely given when justice so requires," and the Second Circuit has expressed a "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities[.]"  *Salahuddin*, 861 F.2d at 42.

In this case, Plaintiffs' Complaint is undeniably prolix, and contains allegations that are lacking in relevance,[75] are apparently contradictory,[76] constitute mere legal conclusions,[77] and are

---

[75]     (*See, e.g.,* Dkt. No. 1 at ¶ 34 [alleging that Craig has "borrowed money from" Mr. Rissetto and "other employees of" CCSD].)

[76]     (*Compare* Dkt. No. 1 at ¶ 196 [alleging that, "[u]pon information and belief, no warrant . . . was obtained authorizing any of the [computer] searches"] *with* ¶¶ 458-59 [alleging that, "[u]pon information and belief," CCSD and Favro "also obtained two (2) Search Warrants in order to search Plaintiff Rachel Rissetto's work-issued laptop computer" and "executed" those warrants].)

[77]     (*See, e.g.,* Dkt. No. 1 at ¶ 272 [alleging that certain Davey, Clamser, and Gray "were acting under color of state law"], 277 [alleging that Mrs. Rissetto "had a reasonable expectation of privacy" in her work-issued computer devices], 282, 318 [alleging that Upton's searches of Plaintiffs' computers were "unreasonable in scope"], 285 [alleging that Mrs. Rissetto "associated with" Mr. Rissetto], 287 [alleging that Mr. Rissetto's "concerns with misconduct . . . touched upon a matter of public concern"], ¶ 294 [alleging that "Davey took adverse employment

entirely repetitious of allegations contained elsewhere, particularly under each of the portions of

the Complaint setting forth the "Causes of Action."[78]  Rather than provide greater clarity and

specificity to Plaintiffs' claims, such allegations tend only to obfuscate allegations and claims.[79]

*See, e.g., In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 311 (S.D.N.Y. 2005) ("The Court is in

substantial sympathy with defendants.  The requirement of pleading fraud with particularity does

not justify a complaint longer than some of the greatest works of literature.  A complaint of this

length, indeed, is an undue imposition on all who are obliged to read it.").

        Nevertheless, the Court is mindful that "[t]he key to Rule 8(a)'s requirements is whether

adequate notice is given."  *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004).  Without yet

passing upon the merits of Plaintiffs' claims, the Court concludes that Plaintiffs' Complaint,

while "a model of neither clarity nor brevity," affords Defendants fair notice of the claims

contained therein.  *Wynder*, 360 F.3d at 79; *accord, e.g., In re Parmalat Sec. Litig.*, 375 F. Supp.

2d at 311 (denying dismissal of complaint pursuant to Fed. R. Civ. P. 8 because such a dismissal

"is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or

---

actions against" Mrs. Rissetto].)  The articulation of these legal conclusions serves only to
lengthen Plaintiffs' already overlong pleading.

        [78]     (*See, e.g.,* Dkt. No. 1 at ¶¶ 263-71, 273-76, 286, 290-93, 303-09, 313, 314-17,
327-29, 336-37, 348-58, 370-74, 381-90, 397-401, 408-21, 424-32, 444-56.)

        [79]     Ironically, in opposition to Defendants' arguments that Plaintiffs' Complaint
should be dismissed pursuant to Fed. R. Civ. P. 8 due to its prolixity, Plaintiffs cogently
summarize the factual framework of their claims for relief.  (Dkt. No. 37 at 1-2 [Plfs.' Opp'n
Memo. of Law to BOCES Defs.' Mtn.]; Dkt. No. 36 at 1-3 [Plfs.' Opp'n Memo. of Law to County
Defs.' Mtn.]; Dkt. No. 42 at 1-2 [Plfs.' Opp'n Memo. of Law to Favreau's Mtn.].)  This fact was
not lost on Favreau.  (Dkt. No. 48 at 1 [Favreau's Reply Memo. of Law, arguing that, "[o]f note,
plaintiffs were able to summarize their claims against the BOCES defendants in just over a
page[, which is] direct evidence that the 141 page Complaint is clearly not" compliant with Fed.
R. Civ. P. 8(a)(2)].)

otherwise unintelligible that its true substance, if any, is well disguised") (quoting *Salahuddin*, 861 F.2d at 42).  In substantial part, Plaintiffs' Complaint identifies the numerous Defendants, sets forth salient facts and approximates the time frames in which they occurred, delineates specific federal and state law claims, and expressly ties specific Defendants to each of those claims.  As set forth above, in their respective motions, Defendants advance numerous well-honed, discrete legal arguments, both substantive and procedural, as to why Plaintiffs' claims should be dismissed.  This fact suggests that Plaintiffs' Complaint "does not overwhelm the [D]efendants' ability to understand or to mount a defense."  *Wynder*, 360 F.3d at 80; *see, e.g., Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 281 (S.D.N.Y. 2015) ("[A]lthough Plaintiffs' pleadings are sometimes hard to parse, the Court concludes that they give Defendants fair notice of the claims that Plaintiffs are trying to assert.  Indeed, this is evident from the fact that Defendants also bring a Motion To Dismiss under Rule 12(b)(6) where they identify and respond to claims raised by Plaintiffs.").[80]

For these reasons, Defendants' motions to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 8 is denied.

### B. Whether Plaintiffs' Claims Asserted Against CCSD Should Be Dismissed

As indicated above in Part I.B. of this Decision and Order, the County Defendants assert, in their memorandum of law, that Plaintiffs have named Clinton County in the caption of this case in other forms, specifically, by naming CCSD and the Clinton County Legislature as Defendants.  (Dkt. No. 24, Attach. 6, at 1 n.1 [County Defs.' Memo. of Law].)  While not arguing

---

[80]     For this reason, the Court also declines Favreau's invitation to parse Plaintiffs' 860-plus-paragraph Complaint and "strike those [unspecified] portions of the Complaint" that are too prolix to pass muster under Fed. R. Civ. P. 8 and 12(f).  (Dkt. No. 32, Attach. 2, at 13.)

in such specific terms, the County Defendants appear to suggest that CCSD and the Clinton County Legislature are not properly named as defendants in this case.  For the reasons that follow, the Court concludes CCSD must be dismissed as a Defendant in this case, but that the Clinton County Legislature need not be dismissed as a Defendant.

As an initial matter, "[t]he [Clinton] County Sheriff's Department is 'merely [an] administrative arm[] of' [Clinton] County and 'do[es] not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued.'" *Pacherille v. Cty. of Otsego*, 13-CV-1282, 2014 WL 11515848, at *12 (N.D.N.Y. Nov. 20, 2014) (McAvoy, J.) (quoting *Daly v. Ragona*, 11-CV-3836, 2013 WL 3428185, at *10 (E.D.N.Y. July 9, 2013); *accord, Gordon v. Cty. of Onondaga*, 09-CV-1182, 2014 WL 6078426, at *2 (N.D.N.Y. Nov. 13, 2014) (Scullin, J.) ("[B]ecause Plaintiff has sued the Town of Clay and the County of Onondaga, the Court dismisses Plaintiff's claims against the Town of Clay Police Department and Onondaga County Sheriff's Department because neither of these entities is suable and Plaintiff's claims against these entities are redundant of her claims against Defendants Town of Clay and the County of Onondaga."); *Cummings v. Clinton Cty. Legislature*, 14-CV-0111, 2014 WL 5308636, at *3 (N.D.N.Y. Oct. 16, 2014) (Kahn, J., adopting Report-Recommendation of Dancks, M.J.) ("Plaintiff's claims against the Clinton County Sheriff's Department and the Clinton County Jail, which have no legal, separate identity apart from Clinton County, are not plausible.").  However, "[u]nlike law enforcement agencies and jails, county legislatures are not merely 'administrative arms' of municipalities," and, as a result, "county legislatures can be sued." *Cummings*, 2014 WL 5308636, at *4 (citation omitted).

-41-

Accordingly, the Court answers this question in the affirmative with respect to Plaintiffs' claims against CCSD only, and Plaintiffs' claims against CCSD are therefore dismissed.[81]

### C.     Whether Mr. Rissetto's § 1983 Claims Should Be Dismissed

As indicated above in Part I.A. of this Decision and Order, liberally construed, Mr. Rissetto's Second Cause of Action contains three claims pursuant to 42 U.S.C. § 1983: (1) a claim that Favro, Craig, and Upton violated his Fourth Amendment rights by subjecting him to an unreasonable search and seizure of his work-issued computer (Dkt. No. 1 at ¶¶ 303-20); (2) a claim that Favro and Craig violated his First Amendment rights by retaliating against him for speaking out about perceived misconduct within CCSD (*id.* at ¶¶ 321-32); and (3) a claim that Favro, Favreau, and Davey violated his Fourteenth Amendment rights by damaging his reputation by publishing false accusations about him without due process of law (*id.* at ¶¶ 333-42).[82]  The Court addresses each of these claims in turn.

### 1.     Whether Mr. Rissetto's Fourth Amendment Claim Should Be Dismissed

The Court answers this question in the negative for substantially the reasons set forth in Plaintiffs' opposition memoranda of law.  (Dkt. No. 36 at 9-15; Dkt. No. 42 at 5-10.)  To those reasons, the Court adds four points.

---

[81]     For these reasons, <u>the Clerk of the Court is directed to remove the Clinton County Sheriff's Department from the caption of this case.</u>

[82]     The caption setting forth the Defendants against whom Mr. Rissetto's "Second Cause of Action" is asserted includes Clamser and Gray, but Plaintiffs' Complaint does not allege any conduct on the part of Clamser and Gray in this regard; the only reference to Clamser and Gray with respect to Plaintiffs' pertinent allegations is that Favro and Favreau published false statements about Mr. Rissetto *to* them.  (Dkt. No. 1 at ¶ 334.)  Accordingly, to the extent that Mr. Rissetto may be understood to assert § 1983 claims against Clamser and Gray, those claims are dismissed.

First, Plaintiffs have (albeit barely) alleged facts plausibly suggesting that Mr. Rissetto had a reasonable expectation of privacy in his work-issued computer.  More particularly, Plaintiffs' Complaint alleges, in pertinent part, the following: (1) Mr. Rissetto's work-issued computer was issued to, and "controlled by," Mr. Rissetto only, and Mr. Rissetto "password-protected" the computer (*id.* at ¶ 136); (2) Clinton County and CCSD had never previously "inspected, accessed, or monitored" Mr. Rissetto's work-issued computer (*id.* at ¶ 137); (3) no other CCSD personnel or the public "had access" to Mr. Rissetto's computer (*id.* at ¶ 138); and (4) Mr. Rissetto's computer was located in his office until he was required to surrender it when he was placed on administrative leave (*id.* at ¶ 147).  From these allegations concerning the location of the computer and the CCSD's past practices with respect to inspection of, and access to, Mr. Rissetto's computer, the Court can reasonably infer that he had a reasonable expectation of privacy in relation to the computer.

Second (and relatedly), as exhibits to their motion, the County Defendants have filed various Clinton County technology-related policy documents: (1) a document titled "Information Security Policy Rules and Regulations for County Information Systems" ("CIS Rules") (Dkt. No. 24, Attach. 2); (2) a document titled "Rules and regulations for use of the County of Clinton's Network, Email, and Internet" ("Network Rules") (Dkt. No. 24, Attach. 3); (3) CCSD's General Order No. 08-083, titled "The Internet" (Dkt. No. 24, Attach. 4); and (4) a CCSD "Operations Manual Receipt and Review Acknowledgment," signed by Mr. Rissetto on May 29, 2009, pursuant to the terms of which Mr. Rissetto acknowledged reading and reviewing CCSD's "Patrol Division Operations Manual" (Dkt. No. 24, Attach. 5).

-43-

Several provisions in these documents, at least on their face, appear to weigh against concluding that Clinton County personnel (including Mr. Rissetto) had a reasonable expectation of privacy with regard to their use of the County's computer networks and hardware.  In particular, the CIS Rules provide in part that

> County ITS Users should be aware that Internet/Intranet related systems, including but not limited to computer equipment, software, operating systems, storage media, network accounts providing electronic mail, web browsing, and FTP's are property of the County and thus County ITS users *have no expectation of privacy.*  The County reserves the right to access and monitor all messages and files on the County's network, PCs, laptops or workstations as deemed necessary and appropriate.

> The County respects the privacy of all network users and indiscriminate monitoring of suer communications shall not occur.  However, exceptions to this policy may be made under specific conditions such as a program causing disruption to the network or other shared resources, *or the suspected violation of the County's guidelines of acceptable use and behavior or state and federal law.*

(Dkt. No. 24, Attach. 2, at 14-15 [emphasis added].)  Moreover, the Network Rules state in part that "Email messages are **not** personal and private" and that "Department Heads and Information Technology Staff may access an employee's Email" for numerous purposes, including "for a legitimate business purpose" such as to "access information when an employee is absent for an extended period of time," and "to investigate possible misuse of Email when a reasonable suspicion of abuse exists or in conjunction with an approved investigation."  (Dkt. No. 24, Attach. 3, at 5.)  Third, CCSD General Order No. 08-083 provides, in pertinent part,

> 1.  The County has software and systems in place that can monitor and record all Internet usage.  Be aware that security systems have the potential to record (for each and every user) each World Wide Web site visit, each chat, newsgroup or email message, and each file transfer into and out of our internal networks, and we have the right to do so at any time. *No employee should have any expectation of privacy as to his or her Internet usage.*

2.  The County and our agency may inspect any and all files downloaded from the Internet and stored in private areas of the network in order to assure compliance with policy.

3.  The display of any kind of sexually explicit image or document on any County system is a violation of policy on sexual harassment.  In addition, sexually explicit material may not be archived, stored, distributed, edited or recorded using our network or computing resources except as provided in this regulation.

4.  The County has available independently supplied software to identify inappropriate or sexually explicit Internet sites.  System administrators may block access from within our networks to all such sites.  If you find yourself connected accidentally to a site that contains sexually explicit or offensive material, you must disconnect from that site immediately, regardless of whether that site had been previously deemed acceptable by any screening or rating program.  If you should find that you have connected to a site of this nature, you must complete a (Internet Site Connection Form - CCS0-035) and submit same to the Patrol Major for filing.

(Dkt. No. 24, Attach. 4, at 1-2 [emphasis added].)

The Court is skeptical of Plaintiffs' argument that Mr. Rissetto "was under the impression that there were no computer usage policies" at all (Dkt. No. 36 at 10 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.]; *accord,* Dkt. No. 1 at ¶ 139 [Plfs.' Compl., alleging that Clinton County and CCSD "did not state, verbally or in writing, that employees were not entitled to privacy in their offices and on work-issued computer equipment"]), particularly in light of his rank, 10 years of service, and supervisory role (Dkt. No. at ¶ 26).  Nevertheless, Plaintiffs correctly note that the documents filed by the County Defendants with their motion do not establish that Mr. Rissetto received, acknowledged, or was advised of, the written policies on which they rely–a relevant consideration in determining whether an employee has a reasonable expectation of privacy at the

workplace.[83]  (Dkt. No. 36 at 10.)  The CIS Rules contemplate that "[a]ll County ITS Users" will

be provided with information security training and reference materials and "required to sign a

statement" acknowledging that they understood the training, but the County Defendants have not

filed an acknowledgment form or other evidence indicating that Mr. Rissetto was trained

regarding, or provided a copy of, the CIS Rules or any other policy.  (Dkt. No. 24, Attach. 2, at

11.)  Similarly, the copy of the Network Rules filed by the County Defendants includes a blank

"Acknowledgment Form."  (Dkt. No. 24, Attach. 3, at 11.)  It is also unclear whether these

written policies were in effect during the time period relevant to Plaintiffs' claims.  While CCSD

General Order No. 08-083 bears an "Effective/Issue Date" of January 1, 2008, and references the

"Clinton County Information Technology Policy and Procedures" and "Clinton County

Information Security Policy," it is not clear whether those policies are the same–or contain the

same cautionary language regarding the lack of privacy as to internet and computer usage–as the

policies filed by the County Defendants.  (Dkt. No. 23, Attach. 5, at 4.)

---

[83]        *See, e.g., Demaine v. Samuels*, 29 F. App'x 671, 673, 675 (2d Cir. 2002)
(summary order) (noting that plaintiff's "receipt of" a state police "Administration and Operations
Manual," which provided, *inter alia*, that the "department reserves the right to inspect issued
equipment at any other time for reasonable purposes . . . do[es] go to the issue of whether
[plaintiff's] expectation of privacy was objectively reasonable"); *cf. U.S. v. Simons*, 206 F.3d 392,
398 n.8 (4th Cir. 2000) (concluding that defendant did not have a legitimate expectation of
privacy with regard to his internet use in light of his employer's internet policy, and noting that
defendant "does not assert that he was not aware of, or that he had not consented to, the Internet
policy"); *Walsh v. Logothetis*, 13-CV-0401, 2014 WL 229588, at *5 n.5 (E.D. Va. Jan. 21, 2014)
("Walsh acknowledged th[e 'Use of Electronic Communications and Social Media' Policy] on
April 10, 2008. . . . Thus, even if Walsh did not read the policy, he had constructive notice of the
policy.")

Third, with regard to the issue of whether the County Defendants' search of Mr. Rissetto's work-issued office computer was reasonable,[84] Plaintiffs have alleged facts plausibly suggesting that the County Defendants' search was "excessively intrusive in light of . . . the nature of the [misconduct]" alleged against Mr. Rissetto by Warick.  *O'Connor*, 480 U.S. at 726 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 342 [1985]).  Specifically, Plaintiffs' Complaint alleges, in pertinent part as follows: (1) the search of Mr. Rissetto's computer was conducted days after the investigation of Warick's harassment complaint had already concluded (Dkt. No. 1 at ¶ 132); (2) Warick's harassment complaint, aside from being unfounded, concerned personal interactions rather than computer-based actions or communications[85] (*id.* at ¶¶ 142-43); and (3) Upton physically entered Mr. Rissetto's office and searched Mr. Rissetto's computer in its entirety[86] (*id.*

---

84      Even if Mr. Rissetto had a reasonable expectation of privacy in his work-issued computer, "when conducted for a 'noninvestigatory, work-related purpos[e]' or for the 'investigatio[n] of work-related misconduct,' a government employer's warrantless search is reasonable if it is 'justified at its inception' and if 'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of' the circumstances giving rise to the search."  *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 761 (2010) (quoting *O'Connor v. Ortega*, 480 U.S. 709, 725-26 [1987]) (internal quotation marks omitted) .

85      Plaintiffs' allegation in this regard is called into question by a portion of the harassment charge lodged against Mr. Rissetto, which is attached to Plaintiffs' Complaint as an exhibit and alleged that he "downloaded, printed and distributed photos of" Warick retrieved from her Facebook page.  (Dkt. No. 1, Attach. 6, at 5 [Disciplinary Charges, dated May 29, 2014].)  In their Complaint, Plaintiffs allege that Mr. Rissetto "saved documentation relating to . . . Warick's questionable background . . . on his work-issued computer."  (Dkt. No. at ¶ 45.)  In disposing of Defendants' motions in this lawsuit, the Court offers no opinion whatsoever as to the factual or legal merit of the disciplinary charges at issue.  To date, the parties have not advised the Court as to whether (or how) the disciplinary charges have been resolved.

86      The Court notes that the parties' papers do not expressly address whether Mr. Rissetto's computer could have been searched remotely and, if so, whether Upton's search of Mr. Rissetto's computer at the terminal itself, in Mr. Rissetto's office, was substantively different from a remote search for purposes of a Fourth Amendment analysis.

-47-

at ¶ 133).  These factual allegations plausibly suggest that Upton's search of Mr. Rissetto's computer was not justified at inception, and/or was excessively intrusive under the circumstances.

Fourth, and more generally, the Court notes that the parties' framing of the factual circumstances surrounding Plaintiffs' claims are starkly different from each other.  As discussed above, Plaintiffs allege that Defendants engaged in a campaign to, among other things, improperly effect Plaintiffs' resignation or termination from employment by falsely accusing them of wrongdoing after Mr. Rissetto discovered misconduct within CCSD.  On the other hand, Defendants characterize Plaintiffs' Complaint as an incendiary and baseless public response, advanced after Plaintiffs' fitness for employment was rightly called into question.  (*See, e.g.,* Dkt. No. 24, Attach. 6, at 1 [County Defs.' Memo. of Law, asserting that Plaintiffs' Complaint is "an overt attempt to harass and publically embarrass not only the County Defendants, but other non-parties," including members of CCSD, NYSP, and the Plattsburgh Police Department]; Dkt. No. 23, Attach. 7, at 3 [BOCES' Defs.' Memo. of Law, characterizing Plaintiffs' Complaint as "filled with conclusions and conspiracy allegations"].)  Despite these conflicting characterizations of the action's factual underpinnings, the Court is mindful that its "reliance on any assertion of fact requires a credibility assessment that [it] is fundamentally unsuited to undertake at the Rule 12(b)(6) stage."  *Turkmen v. Hasty*, 789 F.3d 218, 226 n.6 (2d Cir. 2015); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").  The Court offers no opinion as to whether Mr. Rissetto's Fourth Amendment claim (or, for that matter, any other claim contained in

-48-

Plaintiffs' Complaint that survives Defendants' present motions to dismiss) would withstand a motion for summary judgment.

In sum, in light of the allegations in Plaintiffs' Complaint, the procedural posture of this case, and the need for the factual development of the record with regard several of the parties' arguments (particularly the applicability of the computer and technology policies discussed above), the Court concludes that dismissal of Mr. Rissetto's Fourth Amendment claim is not warranted at this time.  The County Defendants' motion to dismiss this claim is therefore denied.

### 2.      Whether Mr. Rissetto's First Amendment Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the affirmative for the reasons set forth in the County Defendants' memoranda of law.  (Dkt. No. 24, Attach. 6, at 22-24 [County Defs.' Memo. of Law]; Dkt. No. 46 at 12-13 [County Defs.' Reply Memo. of Law].)  To those reasons, the Court adds the following analysis.

As indicated above in Part I.A. of this Decision and Order, Plaintiffs allege that Mr. Rissetto engaged in protected speech on three topics: (1) apparently in or around February 2013, he "stated [his] concerns" to Favro regarding (a) Warick being hired as a CCSD deputy based on photographs on her "social networking profile" and her admissions to "misusing both prescription medication and illegal controlled substances," and (b) various incidents involving Warick between May 2013 and early 2014, including the fact that she lost her badge, struck another vehicle with her patrol car, failed to respond to a call, and failed to "properly intake a sex offender" (Dkt. No. 1 at ¶¶ 40, 42-44, 48-50, 63-68); (2) on or about August 31, 2013, he "discovered that a part-time boat patrol deputy" received a "suspicious amount of overtime pay," and thereafter "stated his concerns with the questionable overtime to" Favro (*id.* at ¶¶ 51-59); and

(3) in or around February 2014, he "voiced his concerns" to Favro and Craig "regarding an incident of possible police brutality" involving a New York State trooper and a teenager on BOCES property (*id.* at ¶¶ 69-70).  Assuming the truth of Plaintiffs' allegations in this regard, the Court concludes that Plaintiffs have failed to allege facts plausibly suggesting that Mr. Rissetto engaged in protected speech, that is, that the speech alleged was made as a citizen on matters of public concern.

A public employee advancing a First Amendment retaliation must allege facts plausibly suggesting that "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest, (2) he or she suffered an adverse employment action, and (3) the speech was at least a substantial or motivating factor in the [adverse employment action.]"  *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (citations and internal quotation marks omitted); *accord, Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Kamholtz v. Yates Cty.*, 350 F. App'x 589, 591 (2d Cir. 2009) (summary order).[87]  With regard to the first element specifically, "[i]f the court determines that the plaintiff either did not speak as a citizen *or* did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'"  *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) (quoting *Garcetti*, 547 U.S. at 418) (emphasis added).

---

[87]     "If a plaintiff makes this required showing, defendants may nevertheless escape liability if they can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression."  *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008) (citing *Cobb v. Pozzi*, 352 F.3d 79, 91 [2d Cir. 2003]).

With regard to the "public concern" requirement, "[w]hether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163 [2d Cir. 1999]).  "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo*, 514 F.3d at 189 (quoting *Lewis*, 165 F.3d at 163-64); *accord, Sousa*, 578 F.3d at 170 ("The Supreme Court has defined 'a matter of public concern' as one that "relat[es] to any matter of political, social, or other concern to the community."') (quoting *Connick v. Myers*, 461 U.S. 138, 146 [1983]).

With regard to the "made as a citizen" requirement, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes[.]" *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 201 (2d Cir. 2010) (quoting *Garcetti*, 547 U.S. at 421).  This inquiry is an "objective," "practical" one, and because "[f]ormal job descriptions often bear little resemblance to the duties an employee is expected to perform," whether a "given task" is enumerated in the plaintiff's "written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Weintraub*, 593 F.3d at 202 (quoting *Garcetti*, 547 U.S. at 424-25).  Stated otherwise, speech may be "pursuant to" a pubic employee's official job duties (and thus not subject to First Amendment protection) even if it is not required by the employee's job description or an employer's directive.  *Id.* at 203.

-51-

The calculus of this factor also includes consideration of whether the speech was in a "form or channel of discourse available to non-employee citizens, as would be a letter to the editor or a complaint to an elected representative or inspector general." *Weintraub*, 593 F.3d at 204; *accord, Matthews v. City of N.Y.*, 779 F.3d 167, 173 (2d Cir. 2015) (explaining that courts must "ask two questions to determine whether a public employee speaks as a citizen: (A) did the speech fall outside the employee's 'official responsibilities,' and (B) does a civilian analogue exist?"); *Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 207 (E.D.N.Y. 2013) (noting that, "in the wake of *Weintraub,* many courts inside and outside this circuit have looked to the channels through which the speech was made as pertinent to the analysis," and collecting cases); *see also Carter v. Inc. Vill. of Ocean Beach*, 415 F. App'x 290, 293 (2d Cir. 2011) (summary order) ("Plaintiffs' allegations establish no more than that they reported what they believed to be misconduct by a supervisor up the chain of command–misconduct they knew of only by virtue of their jobs as police officers and which they reported as 'part-and-parcel of [their] concerns about [their] ability to properly execute [their] duties.'") (quoting *Weintraub*, 593 F.3d at 203); *see generally McGuire v. City of New York*, 12-CV-0814, 2015 WL 8489962, at *6-7 (E.D.N.Y. Dec. 8, 2015) (granting defendants' motion for summary judgment with regard to plaintiff employee's First Amendment retaliation claim because, among other things, plaintiff's "official position permitted him both access and means to make the complaints" and his "speech was made through official channels" that did "not have a citizen analogue").

Turning to Mr. Rissetto's alleged speech, with regard his "concerns" for Warick's qualifications and work performance, the Court notes that, as alleged in Plaintiffs' Complaint, Mr. Rissetto's job duties as a patrol lieutenant included supervising the investigation of job

candidates' backgrounds, including for the patrol deputy position that Warick accepted.  (Dkt.
No. 1 at ¶ 43.)  According to Plaintiffs' Complaint, during the course of her employment, Mr.
Rissetto also counseled Warick, drafted memoranda regarding various issues related to Warick's
performance, and altered her work schedule to give her broader experience and cover the absence
of another deputy.  (*Id.* at ¶¶ 46-47, 61-67.)  Fully crediting Plaintiffs' allegations, the Court
concludes that, in voicing his "concerns" about Warick during the interview process and her
employment, Mr. Rissetto has not alleged facts plausibly suggesting that those statements were
made as a citizen and outside of his official job duties, but rather that his speech "owe[d] its
existence to [his] professional responsibilities."  *Weintraub*, 593 F.3d at 201 (quoting *Garcetti*,
547 U.S. at 421); *accord, e.g., Pisano v. Mancone*, 08-CV-1045, 2011 WL 1097554, at *12-13
(S.D.N.Y. Mar. 18, 2011) (dismissing plaintiff police sergeant's First Amendment retaliation
claim to the extent that it concerned criticisms that, *inter alia*, the police chief "was issuing
allegedly unlawful orders," the police chief "had directed the improper alteration of payroll
records," and an officer "was not qualified to serve as a uniformed police officer," because those
topics "concerned the internal workings of the police department [and] issues of public safety"
and the criticisms were made "in furtherance of" the plaintiff's duties); *Carter v. Inc. Vill. of
Ocean Beach*, 693 F. Supp. 2d 203, 211 (E.D.N.Y. 2010), *aff'd*, 415 F. App'x at 290 (dismissing
plaintiff's First Amendment claim where plaintiffs' alleged speech, which challenged "alleged
cover-ups of officer misconduct," including employing improperly trained officers, "was
undertaken in the course of performing one of their core employment responsibilities of
enforcing the law").

Similarly, the Court concludes that Mr. Rissetto has failed to allege facts plausibly suggesting that he engaged in protected speech with regard to the improper approval of overtime pay to CCSD deputy and a New York State trooper's use of excessive force upon a teenager at BOCES (and the lack of an investigation related thereto).  At bottom, each of these topics concerns the internal workings of CCSD and fell within the ambit of Mr. Rissetto's core job responsibilities; whether to investigate the alleged incident of assaultive behavior necessarily concerned the exercise of CCSD's investigative and law enforcement functions, and the purported approval of improper or unearned overtime payment to a CCSD deputy concerned a potential violation of the law.  *See Pisano*, 2011 WL 1097554, at *12-13; *Carter*, 693 F. Supp. 2d at 211; *see also, e.g.*, *Harisch v. Goldberg*, 14-CV-9503, 2016 WL 1181711, at *1, *8 (S.D.N.Y. Mar. 25, 2016) (dismissing plaintiff police lieutenant's First Amendment retaliation claim where plaintiff reported that another officer in charge of scheduling had committed acts of misconduct, including misreporting time worked to accrue improper overtime pay on specific occasions); *Peone v. Cty. of Ontario*, 12-CV-6012, 2013 WL 775358, at *2-4, *8-9 (W.D.N.Y. Feb. 28, 2013) (granting defendant's motion to dismiss county police officer's First Amendment retaliation claim because his employment grievances, and subsequent complaints to district attorney and FBI, of police misconduct, including that lieutenant had "broken the law" by assaulting arrestees, pertained to his official job responsibilities); *Roman v. Velleca*, 11-CV-1867, 2012 WL 4445475, at *9 (D. Conn. Sept. 25, 2012) (granting defendants' motion to dismiss plaintiff police officer's First Amendment claim based on his concerns–expressed to supervisors, union representatives, and the City of New Haven–about the transfer of other police officers within major crimes unit because his speech was "made in his capacity as a police officer

and not as a citizen on a matter of public concern"); *cf. Matthews*, 779 F.3d at 173-74

(concluding that state police officer engaged in protected speech when that speech concerned

"precinct-wide policy" of supervising officers' implementation of an arrest quota system, rather

than discrete incidents or violations, and his speech was expressed to "commanding officers"

with whom "he did not communicate . . . beyond occasional hallway small talk").[88]  Moreover,

Mr. Rissetto "voiced" his "concerns" to two individuals in his chain of command (Favro and

Craig), but Plaintiffs do not allege facts plausibly suggesting that he directed those concerns to

any other channels, outside agencies, or public officials.

Accordingly, Mr. Rissetto's First Amendment retaliation claim is dismissed.

### 3. Whether Mr. Rissetto's Fourteenth Amendment Due Process Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the affirmative

for the reasons set forth in the County Defendants' memoranda of law.  (Dkt. No. 24, Attach. 6, at

---

[88]     The County Defendants rely upon Mr. Rissetto's job duties by citing the job specifications for CCSD lieutenants as posted on Clinton County's governmental website.  (Dkt. No. 24, Attach. 6, at 3 & n.2 [County Defs.' Memo of Law]; Dkt. No. 46 at 12 & n.13 [County Defs.' Reply Memo. of Law].)  *See also https://www.clintoncountygov.com/Depart-ments/Personnel/PDFS/Job%20Specifications/D/Deputy%20Sheriff%20Lieutenant.pdf* (last visited August 3, 2016).  In particular, the County Defendants note that Mr. Rissetto was responsible for, among other things, "[i]nvestigat[ing] complaints, allegations, or other bre[a]ches of discipline or conduct of staff," conducting investigations, "monitor[ing] personnel records of staff for compliance with training standards," and "assum[ing] command of the department in the absence of the Sheriff, Undersheriff, and Chief Deputy."  (Dkt. No. 46 at 12.)  Plaintiffs neither object to the County Defendants' reliance upon the job specifications nor dispute their accuracy; rather, Plaintiffs also cite to the job specifications.  (Dkt. No. 36 at 17 [Plfs.' Opp'n Memo. of Law, noting that the written job specifications does not expressly include review of time sheets].)  Under the circumstances, the Court may, and does, "take[] judicial notice of this official government website, as is common on motions to dismiss."  *Taft v. Agricultural Bank of China Ltd.*, 15-CV-5321, 2016 WL 2766661, at *13 n.18 (S.D.N.Y. May 12, 2016) (citing *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 [S.D.N.Y. 2015]).

22-24 [County Defs.' Memo. of Law]; Dkt. No. 46 at 12-13 [County Defs.' Reply Memo. of Law]; Dkt. No. 32, Attach. 2, at 27-28 [Favreau's Memo. of Law]; Dkt. No. 49 at 1-6 [Favreau's Reply Memo. of Law].)  To those reasons, the Court adds three points.

First, Mr. Rissetto's claim is, in essence, a "procedural due process claim[] by defamation[.]"  *Balentine v. Tremblay*, 554 F. App'x 58, 60 (2d Cir. 2014) (summary order).[89] "Defamation by a state actor does not amount to a deprivation of 'liberty' or 'property' within the meaning of the Fourteenth Amendment, unless accompanied by some interest other than mere loss of reputation."  *Balentine*, 554 F. App'x at 60 (citing *Paul v. Davis*, 424 U.S. 693 [1976]). "[T]o allege a cognizable claim under 42 U.S.C. § 1983 predicated upon an act of defamation, a plaintiff must allege what is colloquially referred to as 'stigma-plus' claim: 'a stigmatizing statement plus a deprivation of a tangible interest' without due process of law."  *Id.* (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 [2d Cir. 2005]).  "To establish the so-called 'stigma plus,' a plaintiff must allege two elements: (1) 'the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she

---

89     Based upon the allegations in Plaintiffs' Complaint and the arguments advanced and case law cited in Plaintiffs' opposition memoranda of law, the Court construes Plaintiffs' Second COA as asserting a stigma-plus claim.  (Dkt. No. 1 at ¶¶ 341 [alleging that Mr. Rissetto has been "stripped of life, liberty, or property, to wit his reputational right, without due process of law"]; Dkt. No. 36 at 19 [citing, *inter alia*, *Bradt v. Bd. of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk Cty., N.Y.*, 820 F.2d 41, 43-44 (2d Cir. 1987) and *Wilcox v. Newark Val. Cent. Sch. Dist.*, 74 A.D.3d 1558, 1563-64 (N.Y. App. Div. 3d Dep't 2010)]).  *See also Balentine*, 554 F. App'x at 60 n.1 ("Plaintiff does not expressly state in Count One of his complaint that he has asserted a so-called 'stigma-plus' defamation claim.  However, he alleges that as a result of defendants' conduct, he has 'suffered public humiliation, damage to his reputation, loss of employment, personal associations, and the benefits of liberty'–the damages typically associated with a 'stigma-plus' defamation claim.  Moreover, he states in his opening brief that the issue on appeal is whether he has 'plausibly alleged that he was subjected to stigma plus' defamation.").

-56-

claims is false,' plus (2) 'a material state-imposed burden or state-imposed alteration of the

plaintiff's status or rights.'" *Id.* (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 [2d Cir.

2004]).  With regard to the first element, the "statement must be sufficiently public to create or

threaten a stigma[.]" *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005).  "Burdens that can satisfy the

'plus' prong under this doctrine include the deprivation of a plaintiff's property, and the

termination of a plaintiff's government employment[.]" *Sadallah*, 383 F.3d at 38 (internal

citations omitted).

In this case, Plaintiffs have failed to allege facts plausibly suggesting that Mr. Rissetto

suffered "either termination or deprivation of a legal right or status," i.e., the "plus" element of

his claim.  *Munno v. Town of Orangetown*, 391 F. Supp. 2d. 263, 272 (S.D.N.Y. 2005) (granting

defendants' motion to dismiss plaintiff police officer's stigma-plus claim where plaintiff was

merely suspended without pay after disciplinary charges and criminal charges were imposed); *see

also, e.g., Lefebvre v. Morgan*, 14-CV-5322, 2016 WL 1274584, at *15 n.19 (S.D.N.Y. Mar. 31,

2016) (dismissing stigma plus claim because a suspension without pay for a week "is not a

sufficient burden or alteration as to satisfy the requirements of a stigma plus claim"); *Wright v.

City of Syracuse*, 10-CV-0661, 2014 WL 1293527, at *22 (N.D.N.Y. Mar. 31, 2014) (Suddaby,

J.) ("Courts in this Circuit hold that an employee does not have a constitutionally protected

interest to be free from employment actions other than termination."); *Dobosz v. Walsh*, 892 F.2d

1135, 1140 (2d Cir. 1989) (concluding that plaintiff, who was suspended for five months, "was

reinstated with back pay and seniority credit, and his due process claim thus fails the . . .

'reputation plus' test.") (citations omitted); *Walsh v. Lebanon Bd. of Educ.*, 11-CV-1947, 2013

WL 425092, at *6 (D. Conn. Feb. 4, 2013) ("[C]ase law has established that a suspension without

pay is not sufficient to support a claim of a protected liberty interest [for a stigma plus claim].").

Second, even assuming that Civil Service Law § 75 provides covered employees with a property interest, the deprivation of which could serve as the predicate for a stigma-plus claim,[90] Plaintiffs have failed to allege facts plausibly suggesting that Defendants contravened the statute's protections.  Plaintiffs' Complaint alleges that, following Warick's harassment complaint, Mr. Rissetto "was placed on administrative leave, *at least some of which* was without pay." (Dkt. No. 1 at ¶ 365.)  In their opposition memorandum of law, Plaintiffs argue that, upon being served with disciplinary charges, Mr. Rissetto was "suspended, without pay, for thirty (30) days and forbidden from returning to work or entering [CCSD's] buildings, premises, or grounds." (Dkt. No. 42 at 20 [Plfs.' Opp'n Memo. of Law to Favreau's Mtn.].)  Elsewhere in their opposition memorandum of law, Plaintiffs refer to Mr. Rissetto's "suspension" as "partially unpaid." (*Id.* at 14.)  However, as Plaintiffs expressly acknowledge, the Civil Service Law permits an employer to "suspend a public employee without pay for thirty (30) days and require him to attend a hearing" in connection with disciplinary charges. (*Id.* at 20.)  *See also* Civil Service Law § 75(3) ("Pending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days.").  In their Complaint, Plaintiffs do not advance a claim premised upon the violation of Civil Service Law § 75(3), nor do they allege

---

[90]     *Lefebvre*, 2016 WL 1274584, at *13 ("The Court recognizes that N.Y. Civil Service Law § 75, which provides that covered employees 'shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing,' has been found to 'give[ ] covered employees a property interest in their employment, so that they may not be terminated without notice and hearing.'") (quoting *O'Neill v. City of Auburn*, 23 F.3d 685, 689 [2d Cir. 1994]).

facts plausibly suggesting that Defendants violated that statute.[91]

Third, and finally, to the extent that Mr. Rissetto argues that reference to, or placement of, the charges in his personnel file satisfies the "plus" requirement, "the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation are not sufficient to meet the plus prong of the test." *Ingber v. New York City Dep't of Educ.*, 14-CV-3942, 2014 WL 6888777, at *3 (S.D.N.Y. Dec. 8, 2014); *accord, Munno*, 391 F. Supp. 2d at 272 ("Equally insufficient to implicate the Due Process Clause are conclusory statements that the accusations at issue harmed a future job opportunity or potential promotion.").

For each of these reasons, Mr. Rissetto's procedural due process claim is dismissed.

### D.     Whether Mrs. Rissetto's § 1983 Claims Should Be Dismissed

As indicated above in Part I.A. of this Decision and Order, liberally construed, Plaintiffs' First COA contains two claims asserted by Mrs. Rissetto pursuant to § 1983 against Favro, Craig, Upton, Gray, Clamser, and Davey: (1) a claim that these Defendants violated her Fourth Amendment rights by subjecting her to unreasonable searches and seizures of her work-issued laptop computer, desktop computer, and iPad, in order to regain control over documents and information stored by Mr. Rissetto and to conceal evidence of misconduct within CCSD (Dkt. No. 1 at ¶¶ 263-84); and (2) a claim that these Defendants violated her First Amendment rights

---

[91]     Section 75(3) of the Civil Service Law further provides that, if an employee is found guilty of the disciplinary charges at issue, the penalty imposed may consist of, among other things, a suspension without pay "for a period not exceeding two months[.]"  As noted above, Plaintiffs have not alleged facts plausibly suggesting that Mr. Rissetto was suspended for any specific period, and their opposition memorandum of law expressly asserts that he was suspended without pay for 30 days.

by retaliating against her because of her association with Mr. Rissetto, who spoke out about

misconduct within CCSD (*id.* at ¶¶ 285-97).

### 1.   Whether Mrs. Rissetto's Fourth Amendment Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the negative for

the reasons set forth in Plaintiffs' opposition memoranda of law.  (Dkt. No. 37 at 7-13 [Plfs.'

Opp'n Memo. of Law to BOCES Defs.' Mtn.]; Dkt. No. 42 at 5-10 [Plfs.' Opp'n Memo. of Law to

Favreau's Mtn.].)  To those reasons, the Court adds two points.

First, the BOCES Defendants have filed with their motion to dismiss two documents

related to BOCES' computer equipment policies: (1) the BOCES/Champlain Valley Educational

Services Acceptable Use Policy for Technology Resources (Dkt. No. 23, Attach. 3); and (2) the

CEWW BOCES/Champlain Valley Educational Services Laptop and Electronic Devices/AUP

Acceptance Form, signed by Mrs. Rissetto on September 22, 2011 (Dkt. No. 23, Attach. 4).  The

Acceptance Form provides, in pertinent part, the following clauses:

> I understand that all laptops, electronic devices, equipment, and
> accessories CVES has provided to me are the property of CVES
> and that CVES reserves the right to inspect them at any time.
>
> I understand that I have no personal property rights when using
> CVES laptops, electronic devices, or other equipment.
>
> . . .
>
> I will not allow any other individuals to use any laptops, electronic
> devices, equipment or accessories that have been provided to me
> by CVES.
>
> . . .

-60-

> I agree to all of the terms in the CVES Acceptable Use Policy . . . .
> I understand that a violation of the terms and conditions set out in
> the CVES Acceptable Use Policy will result in the restriction
> and/or termination of my use of CVES computers, equipment,
> and/or accessories and may result in further discipline up to, and
> including suspension or termination of employment or other legal
> action.

(Dkt. No. 23, Attach. 4, at 1.)  Moreover, the AUP provides, in part, that staff are required to

"promptly provide access to any laptop computer or electronic device, and associated equipment

that they have been assigned upon CVES request," and that staff "fully understand that such

laptops, electronic devices, and associated equipment are the property of CVES.  Therefore,

CVES reserves the right to inspect laptops at any time it deems appropriate.  Staff, students, and

guests further understand they have no personal property rights in CVES laptops and electronic

devices."  (Dkt. No. 23, Attach. 3, at 5.)

     The AUP also sets forth "Unacceptable Uses" for using "CVES technologies or personal

electronic devices."  (*Id.* at 7.)  "Unacceptable Uses" include "Searching, viewing,

communicating, publishing, downloading, storing, or retrieving materials that are inappropriate

or not related to education or CVES job duties," "[r]emotely accessing any computer or device,

or using any form of cloud storage without written approval from the CVES Technology

Department," and "[a]ttempting to gain access to any computer, network, website, or service by

using another person's username or password or allowing others to use yours."  (*Id.* at 7-8.)  The

AUP also explicates certain "Consequences of Misuse," including that "the CVES Technology

Department may gain access to the user's e-mail and files for review, including but not limited to

search and seizure of all necessary materials and property."  (*Id.* at 9.)  Finally, the AUP

contemplates "Special Circumstances" under which CVES and/or the District Superintendent

may evaluate possible uses of technology "that would normally be considered in violation of the CVES AUP," including "[a]ssisting law enforcement in any investigation." (*Id.* at 11.)

In light of this policy language, the Court is skeptical of Plaintiffs' arguments that Mrs. Rissetto nevertheless had a reasonable expectation of privacy in her work-issued computer equipment. However, as is relevant to Mrs. Rissetto's Fourth Amendment claims, Plaintiffs also allege the following: (1) Mrs. Rissetto's computers were password-protected (Dkt. No. 1 at ¶ 113); (2) in practice, BOCES did not routinely search or monitor computer equipment issued to BOCES staff (*id.* at ¶ 114); (3) Davey's predecessor as District Superintendent, Craig King, previously told Mrs. Rissetto "that it was permissible for her to allow her family, including [Mr.] Rissetto, to use her work-issued computer equipment and to possess items of a personal nature on her work-issued computer equipment" (*id.* at ¶ 116); and (4) Davey and "other employees and agents" of BOCES" were aware that Mrs. Rissetto allowed her family to use her computer equipment, and never objected (*id.* at ¶ 118).[92] Based upon those factual allegations and bearing in mind the procedural posture of this case, the Court concludes that Plaintiffs have, albeit barely, alleged facts plausibly suggesting that Mrs. Rissetto had a reasonable expectation of privacy with respect to her work-issued computer equipment. Once again, the Court offers no opinion as to whether Mrs. Rissetto's Fourth Amendment claim would withstand a motion for summary judgment.

---

[92]     *See generally Quon*, 560 U.S. at 758 (noting, in dicta, that whether a supervisor's statements to an employee that "an audit would be unnecessary" if the employee paid for an overage incurred on employer-issued pager "could be taken as announcing a change in . . . policy [stating that employees had no expectation of privacy as to pager messages]" would "bear on the legitimacy of an employee's privacy expectation").

Second, the Court concludes that Plaintiffs have alleged facts plausibly suggesting that the County Defendants' search was "excessively intrusive in light of . . . the nature of the [misconduct]" purportedly alleged against Mrs. Rissetto, i.e., violation of the AUP on her work-issued laptop computer. *O'Connor*, 480 U.S. at 726 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 342 [1985]).  Specifically, Plaintiffs have alleged facts plausibly suggesting that the Defendants searched three different devices issued to Mrs. Rissetto, even though Mr. Rissetto had previously used only her work-issued laptop computer, a fact known to the named Defendants.  (Dkt. No. 1 at ¶¶ 116-17, 178-199.)  Crediting Plaintiffs' allegations in this regard, the Court can reasonably infer, for purposes of the present motions, that the scope of the search was unjustified at inception or overly broad in scope relative to the stated purposes of the searches.  *O'Connor*, 480 U.S. at 725-26.

Accordingly, the County Defendants' and BOCES Defendants' motions to dismiss Mrs. Rissetto's Fourth Amendment claim is denied.[93]

### 2. Whether Mrs. Rissetto's First Amendment Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the negative for substantially the reasons set forth in Plaintiffs' opposition memoranda of law.  (Dkt. No. 37 at 13-16 [Plfs.' Opp'n Memo. of Law to BOCES Defs.' Mtn.].)  To those reasons, the Court adds two points.[94]

---

[93]     The Court accepts Plaintiffs' argument that Davey's affidavit and Favro's letter should not be considered on the BOCES Defendants' motion to dismiss.  (Dkt. No. 37 at 6-7.)  In any event, the Court notes that those documents would not alter the Court's analysis; as the BOCES Defendants argue (Dkt. No. 48 at 2-3), even if those documents are not expressly referenced in, or integral to, Plaintiffs' Complaint, Plaintiffs' Complaint contains numerous factual allegations that are embodied in those documents.

[94]     In advancing this claim, Mrs. Rissetto has alleged actions and personal involvement only on the part of Davey.  (Dkt. No. 1 at ¶ 295-98.)

First, Mrs. Rissetto's alleged activity pertinent to this claim consisted only of the fact that her marriage to Mr. Rissetto; she does not allege that she actively engaged in any other association, activity, or speech that served as an improper basis of an adverse employment action taken against her. (Dkt. No. 1 at ¶¶ 285-98.) In advancing her claim, Mrs. Rissetto alleges that her association with Mr. Rissetto touched upon matters of public concern solely by reason of the fact that Mr. Rissetto voiced concerns regarding perceived misconduct within CCSD and was thereafter subjected to retaliatory conduct–a fact that Mrs. Rissetto conveyed to Davey. (*Id.* at ¶¶ 285-90.)

Second, although Plaintiffs argue that the standard applicable to their intimate association claim is identical to that applied to freedom of speech claims (Dkt. No. 37 at 13-14), the case law on that point within the Second Circuit is less clear. "The right to intimate association protects the close ties between individuals from inappropriate interference by the power of the state." *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*, 502 F.3d 136, 143 (2d Cir. 2007). "Although both the Supreme Court and the Second Circuit have recognized a right of intimate association, the parameters of that right are anything but clear." *Toussie v. Cty. of Suffolk*, 806 F. Supp. 2d 558, 589 (E.D.N.Y. 2011) (citing *Poleo-Keefe v. Bergeron*, 06-CV-0221, 2008 WL 3992636, at *9 [D. Vt. Aug. 28, 2008] [noting that "the boundaries of [the] right to freedom of intimate association are largely unsettled and the Second Circuit has declined to articulate the level of review due to actions that infringe upon it"]); *accord, Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 59 (2d Cir. 2014) (explaining that "[s]ome courts have examined whether the relationship at issue calls for strict or intermediate scrutiny or rational basis review[, and, i]n the public employer context, others have applied the balancing test set out by the

-64-

Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563, 566-68 (1968), in order to

weigh the relative interests of the plaintiff in preserving an intimate relationship and the interests

of the state in 'promoting the efficiency of the public services it performs through its employees,'"

but finding it "[un]necessary to choose among those standards to resolve the issues in this case")

(citations omitted).[95]

        In any event, the Second Circuit has held that "a spouse's claim that adverse action was

taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed

as a claimed violation of a First Amendment right of intimate association."  *Adler v. Pataki*, 185

F.3d 35, 44 (2d Cir. 1999) ("[T]he New York action challenged here . . . seeks to penalize [the

plaintiff] with loss of his job because of its displeasure with the conduct of his wife.  If the First

Amendment accords an individual some right to maintain an intimate marital relationship free of

undue state interference, Adler's claim properly invokes the protection of that Amendment.");

*accord, Agostino v. Simpson*, 08-CV-5760, 2008 WL 4906140, at *9 (S.D.N.Y. Nov. 17, 2008)

("Where a plaintiff is allegedly retaliated against for the First Amendment activities of a family

member and asserts a claim based on intimate association, the courts in this Circuit have

considered the claim as deriving from the First Amendment."); *Berrios v. State Univ. of New*

*York at Stony Brook*, 518 F. Supp. 2d 409, 418 (E.D.N.Y. 2007) ("[O]ne spouse's claim that

adverse employment action was taken solely in retaliation for the conduct of the other spouse is

---

        [95]        *See also Poleo-Keefe*, 2008 WL 3992636, at *6 (opining that "[T]he *Pickering*
test has rarely been applied" to, and "does not logically fit with," intimate association claims
because, while the first factor examines "the public concern of the employee['s] speech or
association," "[i]ntimate associations are by their very nature not public").  The Second Circuit
applies the *Pickering* test "where both expressive and associational activities are involved,"
*Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York*, 336 F.3d 185, 196 (2d Cir. 2003),
which, as noted above, is not the case here.

properly analyzed as a claimed violation of the First Amendment right of intimate association.")
(citation omitted).

As indicated earlier, the BOCES Defendants advance two primary arguments in support
of their motion to dismiss Mrs. Rissetto's intimate association claim.  First, the BOCES
Defendants argue, without citation, that "it is not claimed nor has it been established that either
of the Rissettos was banned from association with the other by any action of BOCES
defendants."  (Dkt. No. 48 at 5 [BOCES Defs.' Reply Brief].)  However, "Second Circuit
precedent does not appear to require the plaintiff to articulate a specific level of injury to the
intimate relationship at issue[.]"  *Talley v. Brentwood Union Free Sch. Dist.*, 08-CV-0790, 2012
WL 3841396, at *11 (E.D.N.Y. Sept. 5, 2012); *accord, Norton v. Town of Brookhaven*, 33 F.
Supp. 3d 215, 234 (E.D.N.Y. 2014); *see also Patel v. Searles*, 305 F.3d 130, 137 (2d Cir. 2002)
(rejecting defendants' argument that their alleged "interference with plaintiff's relationships" was
"not severe enough," and noting that, in *Adler*, the Second Circuit concluded that plaintiffs had
stated a claim premised upon the termination of one spouse in retaliation for the activities of
another).  Based upon the limited information before it, the Court therefore finds this argument
unpersuasive.

Second, the BOCES Defendants argue that Plaintiffs have not adequately alleged that
Mrs. Rissetto was subjected to adverse action by BOCES, inasmuch as she is still employed.
(Dkt. No. 48 at 5.)  However, Plaintiffs have alleged that, after Mrs. Rissetto stated to Davey that
Mr. Rissetto was being subjected to improper treatment by CCSD personnel for voicing his
concerns and Davey turned over Mrs. Rissetto's computer equipment to CCSD personnel, Davey
subjected Mrs. Rissetto to, among other things, the following: (1) unfounded accusations of

insubordination; (2) exclusion from executive meetings that she had always attended in the past; (3) a requirement that she submit weekly timesheets, a burden not imposed upon other employees with similar duties; (4) "numerous investigations" into her "workplace conduct"; and (5) accusations that Mrs. Rissetto acted disrespectfully and combatively toward members of BOCES' Board of Education. (Dkt. No. 1 at ¶¶ 212-18.) Based upon the foregoing, the Court concludes that Plaintiffs have alleged facts plausibly suggesting that Mrs. Rissetto was subjected to adverse action by BOCES due to her association with Mr. Rissetto. *See Bachus v. Schenectady City Sch. Dist.*, 09-CV-0843, 2011 WL 500540, at *13 (N.D.N.Y. Feb. 10, 2011) (Suddaby, J.) (concluding that plaintiffs alleged facts plausibly suggesting that defendant "turned off the heat in [one plaintiff's] classroom for a period of time in the middle of the winter because of her relationship to her husband, who had (1) announced that he intended to run for" presidency of a pubic employees' union, and (2) "complained to" two defendants regarding retaliatory conduct he experienced after that announcement); *Sutton v. Vill. of Valley Stream, N.Y.*, 96 F. Supp. 2d 189, 191-93 (E.D.N.Y. 2000) (concluding that plaintiffs adequately stated a claim that son's employer harassed him in retaliation for his father's political activities, where the harassment allegedly included reassigning plaintiff, accusing him of "removing a bag of cement from the Village without authorization," disciplining him more harshly than other employees, falsely accusing him of sleeping on the job, downgrading his salary without justification, and advising him that he would receive less favorable job assignments).[96]

---

[96]   "It bears noting that circuit courts are split . . . as to whether a showing of *intentional* interference with the familial relationship is required," and the Second Circuit has not decided that issue. *Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 472 n.37 (S.D.N.Y. 2012) (emphasis added) (collecting cases). The County Defendants do not address the issue in support of their motion to dismiss. Under the circumstances, whether the County Defendants had a

Accordingly, taking Plaintiffs' allegations as true, the Court concludes that Plaintiffs have adequately pleaded an intimate association claim on behalf of Mrs. Rissetto.  The County Defendants' motion to dismiss this claim is therefore denied.

### E.     Whether Plaintiffs Have Alleged Facts Plausibly Suggesting the Existence of a Municipal Policy or Custom Giving Rise to a *Monell* Claim

As indicated above in Part I.B of this Decision and Order, the County Defendants argue that, to the extent that Plaintiffs may be understood to assert that Clinton County may be liable for any alleged constitutional violations pursuant to *Monell*, Plaintiffs have not alleged facts plausibly suggesting the existence of a municipal policy or custom pursuant to which the individual Defendants carried out those constitutional violations.  (Dkt. No. 24, Attach. 6, at 58-59 [County Defs.' Memo. of Law].)  In opposition, Plaintiffs argue that they have alleged facts plausibly suggesting that Favro was a policymaker and that his acts and directives with respect to Plaintiffs–and the violation of their constitutional rights–constituted a municipal policy.  (Dkt. No. 26 at 28-29 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.].)  After carefully considering this matter, the Court answers this question in the negative for the reasons that follow.

"To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality."  *Missel v. Cty.*

---

legitimate explanation for the actions taken against Mrs. Rissetto–a point that they do not expressly argue here–is a question better suited for consideration on a motion for summary judgment or by a factfinder.  *See Everitt v. DeMarco*, 704 F. Supp. 2d 122, 135 (D. Conn. 2010) (concluding that defendants' argument that husband was disciplined for violating regulations, and not for his wife's speech, was a "question[] of material fact for the jury").

-68-

*of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order); *accord, Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008) ("Policy, in the *Monell* sense, may of course be made by the municipality's legislative body, but it also may be made by a municipal official 'possess[ing] final authority to establish municipal policy with respect to the action ordered.'") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 [1986]) (internal citation omitted).

The Court concludes that, although Plaintiffs allege that Favro took various actions personally and directed Upton to perform searches of Plaintiffs' work-issued computers, they have not alleged facts plausibly suggesting the existence an official Clinton County policy or custom pursuant to which their constitutional rights were violated, or that Favro acted as a policymaker for the purposes of the actions taken with respect to the Rissettos (by any of the Defendants) for allegedly nefarious reasons. *See W.A. v. Hendrick Hudson Cent. Sch. Dist.*, 14-CV-8093, 2016 WL 1274587, at *12 (S.D.N.Y. Mar. 31, 2016) (noting that "[p]laintiffs cite no state or county law that actually vests [the alleged policymaker] with final policymaking authority over the maintenance and protection of student records," i.e., the areas pertinent to plaintiffs' alleged constitutional violations, and collecting cases); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 303-04 (S.D.N.Y. 2015) (collecting cases); *Canner v. City of Long Beach*, 12-CV-2611, 2015 WL 4926014, at *6 (E.D.N.Y. Aug. 18, 2015) (noting that the court previously had dismissed the plaintiffs' *Monell* claim under Rule 12(b)(6) "since [the complaint] did not reference any state law supporting their claim that [the defendant] was a final policymaker"); *accord, Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (holding that, while the determination of whether a police chief "is a final policymaker is ultimately a legal rather than a factual question, that does not relieve [the plaintiff] of the

obligation to plead in some fashion that [the police chief] had final policy making authority, as

that is a key element of a *Monell* claim") (internal citation omitted); *See generally Jeffes v.

*Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000) ("Where a plaintiff relies not on a formally declared or

ratified policy, but rather on the theory that the conduct of a given official represents official

policy, it is incumbent on the plaintiff to establish that element as a matter of law.").

Accordingly, to the extent that Plaintiffs' Complaint may be understood to assert that

Clinton County is liable for Plaintiffs' alleged constitutional violations pursuant to *Monell* by

reason of the actions of Favro, such claims are dismissed.

### F.    Whether Defendants Are Entitled to Qualified Immunity with Regard to Plaintiffs' § 1983 Claims

As indicated above in Part I.B. of this Decision and Order, the County Defendants and

Favreau argue that, even if Plaintiffs have "pled plausible claims" against Favro, Craig, Reid, and

Upton, those Defendants are shielded by qualified immunity.  (Dkt. No. 24, Attach. 6, at 59-62

[County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 28-30 [Favreau's Memo. of Law].)

The Court concludes that, at this procedural posture and in light of Plaintiffs' factual

allegations, a determination disposing of Plaintiffs' claims on the basis of qualified immunity is

not appropriate.  "For qualified immunity to bar suit at the motion to dismiss stage . . . the facts

supporting the defense [must] appear on the face of the complaint[.]"  *Holland v. City of New

York*, 14-CV-5517, 2016 WL 3636249, at *5 (S.D.N.Y. June 24, 2016) (citation omitted); *see

also, e.g., Kenney v. Clay*, 2016 WL 1156747, at *9 (N.D.N.Y. Mar. 23, 2016) (Hurd, J.)

(quoting *Weaver* v. Brenner, 40 F.3d 527, 532-33 [2d Cir. 1994]) (concluding that the application

of qualified immunity was "not appropriate" in light of the "vehemently dispute[d]" factual basis

of plaintiff's constitutional claims).[97]

Accordingly, the County Defendants' motion to dismiss Plaintiffs' claims as to Favro, Craig, Reid, and Upton on the basis of qualified immunity is denied.

### G.   Whether Mr. Rissetto's ADA Disability Discrimination Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the affirmative for the reasons set forth in the County Defendants' memorandum of law.  (Dkt. No. 24, Attach. 6, at 24-26 [County Defs.' Memo. of Law].)[98]  To those reasons, the Court adds two points.

First, in response to the County Defendants' argument that Plaintiffs failed to allege facts plausibly suggesting that Mr. Rissetto filed any EEOC charge, Plaintiffs advance no argument in relation to Mr. Rissetto's ADA claim.  (*See generally* Dkt. No. 36 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.].)  In this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[97]      The Court notes that, "[b]ecause 'a violation of state law is not cognizable under § 1983, the federal law doctrine of qualified immunity does not apply to state law claims[.]'"  *Baez v. City of Rochester*, 13-CV-6625, 2016 WL 3253896, at *3 n.2 (W.D.N.Y. June 9, 2016) (quoting *Mawhirt v. Ahmed*, 8 F. App'x 125, 127 [2d Cir. 2001]) (internal citation omitted).

[98]      Specifically, as the County Defendants correctly note, "[a] district court only has jurisdiction to hear claims brought pursuant to the ADA that are either contained in the EEOC charge or that are 'reasonably related' to the claims in the EEOC charge."  *Boyd v. Broome Cmty. Coll.*, 14-CV-0397, 2015 WL 6962498, at *10 (N.D.N.Y. Nov. 10, 2015) (Suddaby, C.J.) (quoting *Agosta v. Suffolk Cty.*, 981 F. Supp. 2d 167, 172 [E.D.N.Y. 2013]); *accord, Cherry v. City of New York*, 381 F. App'x 57, 58 (2d Cir. 2010) (summary order) ("A litigant must have filed a timely charge . . . with the Equal Employment Opportunity Commission and corresponding state agencies as a condition precedent to the filing of an action in federal court pursuant to the Age Discrimination in Employment Act, Americans with Disabilities Act, or Title VII of the Civil Rights Act.").

Rule 7.1(b)(3).[99]  Stated otherwise, when a non-movant fails to oppose a legal argument asserted

by a movant, the movant may succeed on the argument by showing that the argument possesses

facial merit, which has appropriately been characterized as a "modest" burden.[100]  The County

Defendants have met that burden here.

Second, as an additional basis requiring dismissal of Mr. Rissetto's ADA claim as to

Favro, the Court notes that, "[a]lthough the Second Circuit has yet to explicitly address whether

there is individual liability under Title I of the ADA, many district courts in this circuit, as well

as other circuit courts, have held that individual defendants may not be held personally liable for

alleged violations of Title I of the ADA." *Arcuri v. Schoch*, 15-CV-0798, 2015 WL 5652336, at

*5 (N.D.N.Y. Sept. 24, 2015) (Hurd, J., adopting Report-Recommendation of Dancks, M.J.)

(collecting cases); *accord, e.g., Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y.

2014) (collecting cases).  The Court agrees with this reasoning and therefore concludes that

Favro is not subject to liability under the ADA.

Accordingly, Mr. Rissetto's ADA claim is dismissed.

---

[99]      *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

[100]     *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### H.    Whether Mr. Rissetto's NYSHRL Disability Discrimination Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the affirmative for substantially the reasons stated in the County Defendants' memorandum of law and Favreau's memorandum of law.  (Dkt. No. 24, Attach. 6, at 46-48 [County Defs.' Memo. of Law]; Dkt. No. 32, Attach. 2, at 52-54 [Favreau's Memo. of Law].)  To those reasons, the Court adds the following analysis.

"Claims of intentional discrimination on the basis of disability under NYSHRL are identical to such claims under the ADA." *Sternberg v. New York City Health and Hosp. Corp.*, 2016 WL 3223624, at *4 (S.D.N.Y. June 7, 2016) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n. 3 [2d Cir. 2006]).  "A valid claim under either law requires that "(i) the employer is subject to the relevant law, (ii) the plaintiff experiences or is perceived by his employer as experiencing a disability within the meaning of that law, (iii) the plaintiff was qualified for his position, (iv) he suffered an adverse employment action, and (v) the adverse action was motivated by the plaintiff's disability." *Christiansen v. Omnicom Grp., Inc.*, 15-CV-3440, 2016 WL 951581, at *5 (S.D.N.Y. Mar. 9, 2016) (citing *Davis v. N.Y..C. Dep't of Educ.*, 804 F.3d 231, 235 [2d Cir. 2015]).[101]

Although "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination" in order to survive a motion to dismiss, *Twombly*, 550 U.S. at 569 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 [2002]), "it must at a minimum assert nonconclusory factual matter sufficient to nudge[] [its]

---

[101]    Defendants advance no argument with regard to the first or third elements of the claim.

claims . . . across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (citations and internal quotation marks omitted); *accord, Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order) (explaining that, to state a claim under the ADA, a plaintiff must allege facts that "give plausible support to a minimal inference of discriminatory motivation," and concluding that plaintiff had plausibly alleged that defendant did not follow its ordinary multi-step discipline policy, and a "closeness in time" existed between plaintiff's disability-causing injury and defendant's initiation of the process that lead to her firing) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 [2d Cir. 2015]).

Here, the Court cannot conclude that Plaintiffs have pleaded facts plausibly suggesting a nexus between Mr. Rissetto's alleged disability and the proffering of disciplinary charges against him.  Although the vast majority of Plaintiffs' allegations concern Mr. Rissetto's discovery of, and expression of concern regarding, perceived misconduct within CCSD and the improper behavior to which he was subjected in retaliation, Mr. Rissetto's disability claims are predicated upon a single comment made by Favro, alleged without reference to its tone, context, or audience, that Mr. Rissetto "has not been 'the same' since the accident which resulted in his PTSD.'" (Dkt. No. 1 at ¶¶ 379, 776.)  Moreover, Plaintiffs have not alleged when Mr. Rissetto's affliction first began (or when the "crash and shooting" that first caused his PTSD occurred), and have not alleged when Favro, Craig, or any other person became aware of Mr. Rissetto's PTSD. (*Id.* at ¶ 28.)  *See also Vega*, 801 F.3d at 84.  Based upon the nondescript nature of Favro's alleged comment–and absent any indication of the temporal relationship between Favro learning of Mr. Rissetto's condition and the adverse employment action–Plaintiffs' further allegations that

"it is suspected that . . . Favro was motivated, in whole or in part, by [Mr.] Rissetto's PTSD," and that Craig, Reid, and Favreau aided and abetted Favro's discrimination of Plaintiff by "concocting and publishing" false, pretextual disciplinary charges against Mr. Rissetto due to his disability (Dkt. No. 1 at ¶¶ 783-86), amount to bald speculation, and the allegations, taken together, are insufficient to nudge this claim across the line from conceivable to plausible. *Port Auth. of N.Y. & N.J.*, 768 F.3d at 254; *see, e.g., Franchino v. Roman Catholic Archdiocese of New York*, 15-CV-6299, 2016 WL 3360525, at *4-5 (S.D.N.Y. June 15, 2016) ("Plaintiff . . . argues the accusation of inappropriate or sexist conduct leveled against him was a 'pretext' for his termination, while the true reason he was terminated was his gender, ethnicity, or national origin. . . . The problem with plaintiff's theory of pretext is that none of his allegations supports the plausible inference that he was investigated for inappropriate or sexist conduct *because of* his gender, ethnicity, or national origin. . . . [T]he facts alleged support the conclusion that plaintiff was terminated because a co-worker accused him of inappropriate or sexist conduct in the workplace, and that the accusation was investigated and believed by his superior–*irrespective* of plaintiff's gender, ethnicity, or national origin.") (footnote omitted).

Accordingly, the Court concludes that Plaintiffs have failed to allege facts plausibly supporting a reasonable inference that Mr. Rissetto was subjected to an adverse employment action on the basis of his disability; and his NYSHRL claim is therefore dismissed.[102]

---

[102]     Because the standard applicable to NYSHRL disability discrimination claims is identical to the standard applicable to ADA disability discrimination claims, the Court's reasoning and conclusion apply with equal force to Mr. Rissetto's ADA disability discrimination claim, and constitute an additional, independent ground requiring dismissal of that claim.

## I.       Whether Mr. Rissetto's ADEA Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the affirmative for the reasons set forth in the County Defendants' memorandum of law.  (Dkt. No. 24, Attach. 6, at 26 [County Defs.' Memo. of Law].)[103]  To those reasons, the Court adds two points.

First, as with the County Defendants' arguments regarding Mr. Rissetto's ADA claim, Plaintiffs advance no opposition to the County Defendants' arguments seeking dismissal of Mr. Rissetto's ADEA claim.  (Dkt. No. 36 [Plfs.' Opp'n Memo. of Law to County Defs.' Memo. of Law].)  The County Defendants' may therefore succeed on their argument by showing that it possesses facial merit, and they have met that "modest" burden here.  *See*, *e.g.*, *Beers*, 1999 U.S. Dist. LEXIS 12285, at *27-31.

Second, as an additional basis for dismissing of Mr. Rissetto's ADEA claim as to Favro, the Court notes that the ADEA does not "subject[] individuals, even those with supervisory liability over the plaintiff, to personal liability."  *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order), *aff'g*, 08-CV-0028, 2010 WL 986403, at *6-8 (N.D.N.Y. Mar. 17, 2010) (McCurn, J.) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 [2d Cir. 1995], *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 [1998]).

Accordingly, Mr. Rissetto's ADEA claim is dismissed.

---

[103]       "Before commencing an action in federal court alleging violations of . . . the ADEA[] and the ADA, a plaintiff must first file a timely charge with the EEOC."  *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 277 (N.D.N.Y. 2012) (Hurd, J.).

**J.     Whether Mr. Rissetto's Civil Service Law § 75-b Retaliation Claim Should Be Dismissed**

After carefully considering this matter, the Court answers this question in the negative as to Clinton County only for the reasons stated in Plaintiffs' opposition memorandum of law.  (Dkt. No. 36 at 32-36 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.].)  To those reasons, the Court adds two points.

First, the Court notes that "§ 75-b 'does not apply separately to individual public employees where the pertinent governmental entity is also sued.'"  *Yan Ping Xu v. City of New York*, 612 F. App'x. 22, 25 (2d Cir. 2015) (summary order) (quoting *Frank v. State*, 86 A.D.3d 183, 188 [N.Y. App. Div. 3d Dep't 2011]).  Clinton County has been named as a Defendant in this action; and, for that reason, Mr. Rissetto's § 75-b claim is dismissed as to Favro, Craig, Reid, and Upton.

Second, with regard to the County Defendants' argument that Plaintiffs have not adequately pleaded that Mr. Rissetto's speech alleged a danger to public health or safety, "[t]his argument is unavailing because a danger to public health or safety is only a requirement pursuant to § 75-b(2)(a)(i), and [P]laintiff[s] ha[ve] pled a plausible claim pursuant to § 75-b(2)(a)(ii)."  *Portelos v. City of New York*, 12-CV-3141, 2013 WL 789460, at *3 (E.D.N.Y. Mar. 1, 2013); *see also* N.Y. Civil Service Law § 75-b(2)(a)(ii) (prohibiting retaliation against a public employee for disclosing information "which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action").  "On a Rule 12(b)(6) motion, that [P]laintiffs['] belief that these actions occurred and constituted improper governmental conduct was reasonable is assumed."  *Burns v. Cook*, 458 F. Supp. 2d 29, 45 (N.D.N.Y. 2006) (Hurd, J.).

Accordingly, Mr. Rissetto's Civil Service Law § 75-b retaliation claim is dismissed as to Favro, Craig, Reid, and Upton, but survives as to Clinton County.

K.      Whether Mr. Rissetto's NYFCA Retaliation Claim Pursuant to Finance Law
        § 191 Should Be Dismissed

After carefully considering this matter, the Court answers this question in the negative as

to Clinton County for the reasons stated in Plaintiffs' opposition memorandum of law.  (Dkt. No.

36 at 32-36 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.].)  However, the Court answers

this question in the affirmative as to Favro, Craig, Reid, and Upton for the reasons stated in the

County Defendants' opposition memorandum of law.  (Dkt. No. 24, Attach. 6, at 31 [County

Defs.' Memo. of Law].)  To those reasons, the Court adds two points.

First, as the County Defendants correctly argue (Dkt. No. 24, Attach. 6, at 31), "an

individual may not be sued under . . . Section 191, either in an individual or official capacity;

liability may only be imposed on employers."  *Monsour v. New York State Office for People with*

*Developmental Disabilities*, 13-CV-0336, 2014 WL 975604, at *10 (N.D.N.Y. Mar. 12, 2014)

(McAvoy, J.) (footnote and citations omitted).  Plaintiffs do not oppose this argument.

Accordingly, Mr. Rissetto's claim is dismissed as to Favro, Craig, Reid, and Upton.

Second, the Court notes that it is somewhat skeptical as to whether Plaintiff has alleged

facts plausibly suggesting that Clinton County "discharged, discriminated against or otherwise

retaliated against [Mr. Rissetto] *because of* the protected conduct."  *Garcia v. Aspira of New*

*York, Inc.*, 07-CV-5600, 2011 WL 1458155, at *3 (S.D.N.Y. Apr. 13, 2011) (citation and internal

quotation marks omitted) (emphasis added).[104]  Mr. Rissetto "stated his concerns" to Favro, in

---

[104]      "To state a retaliation claim under the NYFCA, a plaintiff employee must allege
that '(1) the employee engaged in conduct protected under the [NYFCA]; (2) the employer knew
that the employee was engaged in such conduct; and (3) the employer discharged, discriminated
against or otherwise retaliated against the employee because of the protected conduct.'" *Swanson
v. Battery Park City Auth.*, 15-CV-6938, 2016 WL 3198309, at *3 (S.D.N.Y. June 8, 2016)
(quoting *Garcia*, 2011 WL 1458155, at *3).  "Simply put, [t]he plaintiff must demonstrate that

August 2013, that "an unusual and suspicious amount of overtime" was awarded to a boat patrol

deputy.  (Dkt. No. 1 ¶¶ 51, 59.)  According to Plaintiffs' Complaint, the event precipitating the

disciplinary charges against Mr. Rissetto–that is, Warick's complaint–did not occur until March

2014.  (Dkt. No. 1 at ¶¶ 100-01.)  Thus, at least six months elapsed between the time that Mr.

Rissetto voiced his "concerns" to Favro and the time that he was the subject of an unrelated

harassment complaint by Warick.  The absence of temporal proximity between these events

suggests that a nexus between the protected conduct and any adverse action may be lacking.  *See,*

*e.g., McAllan v. Von Essen*, 517 F. Supp. 2d 672, 686 (S.D.N.Y. 2007) (on summary judgment

motion, concluding that "there is no temporal proximity between the initiation of an FCA action

and the allegedly retaliatory action sufficient to give rise to an inference of causation");  *cf.*

*Swanson*, 2016 WL 3198309, at *6 ("Given the temporal proximity between Swanson's email to

Singh and his termination, as well as Swanson's allegation that Hyman cited the email to Singh

as a reason for the termination, Swanson has–for the purposes of surviving a motion to

dismiss–satisfied this requirement.");  *Garcia*, 2011 WL 1458155, at *5 (concluding that

plaintiff's allegation that he was fired "within a few minutes" of advising a managing director that

he had sufficient evidence of fraud to "go to the authorities" suggested temporal proximity

_____

her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the
government."  *Grant v. Abbot House*, 14-CV-8703, 2016 WL 796864, at *7 (S.D.N.Y. Feb. 22,
2016) (citation and internal quotation marks omitted).  "The whistleblower provision of the
[federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h)] is 'intended to protect persons who
assist in the discovery and prosecution of fraud, because few individuals will expose fraud if they
fear their disclosures will lead to harassment, demotion, loss of employment, or any other form of
retaliation.'"  *Swanson*, 2016 WL 3198309, at *2 (quoting *Garcia*, 2011 WL 1458155, at *3).
"The NYFCA is closely modeled on the FCA," and "[c]ourts interpret [NYFCA provisions] by
closely tracking judicial interpretation of its federal counterpart."  *Id*. (citation omitted); *accord*,
*Monsour*, 2014 WL 975604, at *10 n.9.

between the two events).  However, because the County Defendants have not advanced any argument concerning the causal connection element, this issue is more properly explored on a motion for summary judgment (or at trial).

Accordingly, Mr. Rissetto's NYFCA retaliation claim is dismissed as to Favro, Craig, Reid, and Upton, but survives as to Clinton County.

### L.  Whether Plaintiffs' GML § 51 Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the negative for the reasons stated in Plaintiffs' opposition memorandum of law.  (Dkt. No. 36 at 61-63 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.].)

### M.  Whether Plaintiffs' Malicious Abuse of Process Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the negative as to Clinton County, the Clinton County Legislature, and Favro for the reasons stated in Plaintiffs' opposition memorandum of law.  (Dkt. No. 36 at 40-42 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.].)  However, the Court answers this question in the affirmative as to Favreau for the reasons set forth in Favreau's memoranda of law.  (Dkt. No. 32, Attach. 2, at 32-33 [Favreau's Memo. of Law]; Dkt. No. 49 at 11-12 [Favreau's Reply Memo. of Law].)  To those reasons, the Court adds two points.

First, the Court accepts Favreau's argument that Plaintiffs have failed to allege facts plausibly suggesting that he engaged in conduct satisfying the first element of a malicious abuse of process claim.  (Dkt. No. 32, Attach. 2, at 32-33; Dkt. No. 49 at 11-12.)  In particular, even if Favreau–who was apparently retained with respect to Mr. Rissetto's disciplinary charges, but whose role is not entirely clear from Plaintiffs' Complaint–did threaten Mr. Rissetto with arrest if

he failed to enter into a settlement agreement regarding his charges, that threat never came to fruition and thus no process was abused.  *See generally Colon v. City of New York*, 09-CV-0008, 2012 WL 691544, at *8 (E.D.N.Y. Feb. 9, 2012) ("The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim.") (emphasis added) (citation and internal quotation marks omitted).  Moreover, to the extent that Plaintiffs allege that Mr. Rissetto was subjected to a "criminal investigation," they also allege that Favro, and not Favreau, initiated that investigation, and that the investigation was carried out by the NYSP, rather than by any Defendant in this case.  (Dkt. No. 1 at ¶ 445.)

Second, while the Court accepts Defendants' argument that the mere assertion that disciplinary charges could be lodged if the parties did not settle Mr. Rissetto's then-pending disciplinary charges does not constitute a collateral objective giving rise to a malicious abuse of process claim (*e.g.,* Dkt. No. 32, Attach. 2, at 33), the Court concludes that Plaintiffs have alleged facts plausibly suggesting that Favro filed multiple sets of disciplinary charges for the collateral purpose of coercing Plaintiffs to settle not just Mr. Rissetto's disciplinary charges, but also their notices of claim.  *See generally Conte v. Cty. of Nassau*, 06-CV-4746, 2010 WL 3924677, at *20 (E.D.N.Y. Sept. 30, 2010) (concluding that issue of fact existed as to whether criminal charges were lodged to extort a resolution in a separate civil proceeding).

Accordingly, Plaintiffs' malicious abuse of process claim is dismissed as to Favreau only.

### N.    Whether Plaintiffs' Defamation Claims Should Be Dismissed

#### 1.    Whether Mr. Rissetto's Defamation Claim Should Be Dismissed

After carefully considering this matter, the Court answers this question in the negative for substantially the reasons set forth in Plaintiffs' opposition memoranda of law.  (Dkt. No. 36 at 40-

42 [Plfs.' Opp'n Memo. of Law to the County Defs.' Mtn.]; Dkt. No. 37 at 18-22 [Plfs.' Opp'n

Memo. of Law to the BOCES Defs.' Mtn.]; Dkt. No. 42 at 22-30 [Plfs.' Opp'n Memo. of Law to

Favreau's Mtn.].)  To those reasons, the Court adds five points.

First, for the reasons stated in Plaintiffs' opposition memorandum of law, the Court

concludes that Plaintiffs' Complaint alleges facts plausibly suggesting that the Defendants at

issue made statements of fact, rather than opinion, by repeating the allegations at issue *as fact*

(i.e., that Mr. Rissetto used his work-issued computer to visit pornographic and prostitution

related websites).  (Dkt. No. 36 at 43-45 [Plfs.' Opp'n Memo. of Law to County Defs.' Mtn.].)

Second, with regard to the BOCES Defendants' argument that Mr. Rissetto's defamation

claim is time-barred, "it is well established that a pre-answer motion to dismiss on this ground

may be granted *only* if it is clear on the face of the complaint that the statute of limitations has

run." *Tulino v. City of New York*, 15-CV-7106, 2016 WL 2967847, at *4 (S.D.N.Y. May 19,

2016) (denying motion to dismiss on statute of limitations grounds where the complaint alleged

that at least some of the defamatory statements were made within the limitations period) (citation

and internal quotation marks omitted) ; *accord, Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547

F.3d 406, 425 (2d Cir. 2008) (explaining that "[t]he lapse of a limitations period" may be raised

in a Rule 12[b][6] motion "if the defense appears on the face of the complaint").  In this case,

Plaintiffs' Complaint alleges facts plausibly suggesting (again, albeit barely) that the Defendants

identified in conjunction with their defamation claims made slanderous statements up to the time

of the filing of the Complaint.  Specifically, Plaintiffs' Complaint alleges that the subject

statements about Mr. Rissetto were made at "the end of March 2014 [and] up to and including

the present" (Dkt. No. 1 at ¶ 473 [Plfs.' Compl., alleging statements made by Favro and Favreau])

and "on or about May 14, 2014 and thereafter" (*id.* at ¶¶ 489-90 [alleging statements repeated by Davey, Gray, and Clamser]).  While the allegations in Plaintiffs' Complaint as to the timing of the allegedly defamatory statements "may well prove to be wrong . . . the Court cannot say that it is clear on the face of the [C]omplaint that the statute of limitations has run." *Tulino*, 2016 WL 2967847, at *4.[105]

In light of this holding, the Court need not reach the related issue of whether the republication exception to New York's single publication rule applies to Plaintiffs' claims, and, if so, whether Plaintiffs' claims are time-barred on that basis.[106]  *See, e.g., Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 16-CV-0057, 2016 WL 3773394, at *8 (S.D.N.Y. July 8, 2016) (noting that, because the court had denied defendant's motion to dismiss on statute of limitations grounds, the court had "no occasion to determine" whether certain statements "amount to a republication of" an earlier statement for claim accrual purposes).  The Court

---

[105]    Section 215(3) of the CPLR provides a one-year statute of limitations for claims sounding in both libel and slander, and such claims "generally accrue[] on the date of the first publication." *Hoesten v. Best*, 34 A.D.3d 143, 150 (N.Y. App. Div. 1st Dep't 2006); *accord, Karam v. First Am. Bank of New York*, 190 A.D.2d 1017, 1018 (N.Y. App. Div. 4th Dep't 1993) ("In an action for slander, the Statute of Limitations runs from the time of the utterance, not the discovery of the slanderous matter[.]") (citation omitted).

[106]    "Under New York's 'single publication rule,' the publication of a single defamatory remark gives rise to only one cause of action, which accrues at the time when the defamatory remark was originally published–even though the work might be published again." *Abshier v. Sunset Recordings, Inc.*, 14-CV-3227, 2014 WL 4230124, at *8 (S.D.N.Y. Aug. 5, 2014).  An exception to the single publication rule exists where "a reissue or republication of a defamatory statement is held to give rise to a new cause of action with a new period of limitations." *Liverpool v. Con-Way, Inc.*, 08-CV-4076, 2010 WL 4791697, at *4 (E.D.N.Y. Nov. 18, 2010) (citations, internal quotation marks, and alterations omitted).  "The justification for this exception to the single publication rule is that the subsequent publication is intended to and actually reaches a new audience." *Firth v. State*, 98 N.Y.2d 365, 371 (N.Y. 2002).  "[O]ther relevant considerations" in determining whether the republication exception applies "include whether the second publication is made on an occasion distinct from the initial one." *Hoesten*, 34 A.D.3d at 150.

merely notes that, although Plaintiffs cite no authority expressly providing that New York's single publication rule does not apply to statements allegedly constituting slander (Dkt. No. 37 at 18-20 [Plfs.' Opp'n Memo. of Law to BOCES Defs.' Mtn.]), application of the single publication rule to strictly oral statements is an awkward proposition; the rule "was designed for the context of 'mass transmission[s]' of a defamatory communication,' e.g., 'the printing and distribution of a newspaper or magazine to its millions of readers in many jurisdictions.'" *Liverpool*, 2010 WL 4791697, at *6 (quoting *David J. Gold, P.C. v. Berkin*, 00-CV-7940, 2001 WL 121940, *3 [S.D.N.Y. Feb. 13, 2001]); *see also Firth*, 98 N.Y.2d at 370.[107]

Third, for the reasons set forth in Favreau's memoranda of law, the Court concludes that Mr. Rissetto is a public figure for purposes of his defamation claim, that the statements allegedly made about him–particularly his attempt to solicit a prostitute from his work-issued computer–touch upon his fitness for his position, and that, accordingly, Mr. Rissetto must demonstrate that the statements about him were made with actual malice. (Dkt. No. 32, Attach. 2, at 34-35.) *See also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 267, 279-81 (1964); *Spetalieri v. Kavanaugh*, 36 F. Supp. 2d 92, 111 (N.D.N.Y. 1998) (McAvoy, C.J.) ("[L]aw enforcement officers, in defamation actions involving their conduct as such, have consistently been held to be public officials.") (quoting *Sweeney v. Prisoners' Legal Servs. of New York, Inc.*, 146 A.D.2d 1, 6 [N.Y. App. Div. 3d Dep't 1989]). However, for the reasons set forth in Plaintiffs' opposition memorandum of law (Dkt. No. 42 at 25-26), the Court concludes that Plaintiffs have alleged

---

[107]    In *Hoesten*, the court concluded that the defendant's verbal statements at a meeting did not constitute a republication (and thus did not start the statute of limitations anew) because the verbal statements were made to "three executives" who were already "intimately familiar with" the complaints "previously levied against the plaintiff" in earlier letters, and the content was "identical." 34 A.D.3d at 151. As a result, the court likened the verbal statements "to a delayed release of previously published matter as opposed to a distinct republication." *Id.*

facts plausibly suggesting that the statements allegedly made about him were made "with reckless disregard of whether [they] were false or not." *Sullivan*, 376 U.S. at 280.

Fourth, for the reasons stated by the BOCES Defendants (Dkt. No. 23, Attach. 7, at 20-21) and Favreau (Dkt. No. 32, Attach. 2, at 44-45), the Court concludes that Plaintiffs have failed to allege facts plausibly suggesting that Mr. Rissetto suffered special damages flowing from the injury to his reputation allegedly caused by the defamatory statements.[108] However, for the reasons set forth in Plaintiffs' opposition memoranda of law, the Court concludes that Plaintiffs have alleged facts plausibly suggesting that the statements at issue concerning Mr. Rissetto constitute defamation per se because the statements tended to injure him in his trade, business, or profession. (Dkt. No. 37 at 20-21; Dkt. No. 42 at 27-30.)

Fifth, and finally, with regard to the subject Defendants' argument that their statements are protected by a qualified privilege because they were made to those with a common interest (i.e., other Clinton County personnel), the Court concludes that, under the circumstances of this case and in light of its procedural posture, dismissal on this ground is inappropriate. *See Boushi v. U.S. Investigations Servs., LLC*, 06-CV-1289, 2007 WL 607394, at *3 (N.D.N.Y. Feb. 20, 2007) (McAvoy, J.) (denying motion to dismiss on qualified privilege grounds because, although that argument, "perhaps ultimately successful," could not be determined solely from the complaint's allegations).

---

[108]    In their opposition memorandum of law, Plaintiffs do not argue that they have adequately alleged that Mr. Rissetto suffered special damages; instead, Plaintiffs argue that the statements at issue were defamatory per se. (Dkt. No. 37 at 20-21.)

### 2.    Whether Mrs. Rissetto's Defamation Claims Should Be Dismissed

After carefully considering this matter, the Court answers this question in the affirmative for substantially the reasons stated in Defendants' memoranda of law. (Dkt. No. 23, Attach. 7, at 26-28 [BOCES Defs.' Memo. of Law]; Dkt. No. 48 at 8-10 [BOCES Defs.' Reply Memo. of Law; Dkt. No. 24, Attach. 6, at 37-38, 54 [County Defs.' Memo. of Law]; Dkt. No. 46 at 16-17 [County Defs.' Reply Memo. of Law]; Dkt. No. 32, Attach. 2, at 41-44 [Favreau's Memo. of Law]; Dkt. No. 49 at 17-18 [Favreau's Reply Memo. of Law].) To those reasons, the Court adds three points.

First, to the extent that Mrs. Rissetto predicates her defamation claim upon statements allegedly made about Mr. Rissetto, the claim must be dismissed. Mrs. Rissetto alleges that she "suffered the consequences and embarrassment" of Favro, Favreau, Gray, Clamser, and Davey, because Mr. Rissetto had accessed pornography and prostitution-related websites from his work-issued computer, thereby subjecting *her* to reputational injury. (Dkt. No. 1 at ¶¶ 517-47.) Under New York law, "[a] spouse of a defamed person does not have a cause of action for her own mental anguish and suffering." *Geddes v. Princess Props. Int'l., Ltd.*, 88 A.D.2d 835, 835 (N.Y. App. Div. 1st Dep't 1982). This is consonant with the well-settled point of law that, "[t]o state a claim for defamation under New York law, a plaintiff must establish, among other things, that the alleged defamatory statement was 'of and concerning [the] plaintiff.'" *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 639 (2d Cir. 2015) (summary order) (citation omitted); *see generally Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 & n.2 (2d Cir. 2006) ("We know of no principle of defamation law that permits someone to recover for a defamation of another solely because the communication contains an allegedly false implication that the person bringing suit is at risk of loss."). Plaintiffs have not alleged facts plausibly suggesting that the statements about Mr. Rissetto referred or related in any way to Mrs. Rissetto.

-86-

Second, to the extent that Mrs. Rissetto predicates her defamation claim upon Favro's alleged May 2014 statement to Davey that Mrs. Rissetto "had stolen two (2) printers from" BOCES and provided them to the CCSD (Dkt. No. 1 at ¶¶ 548-49), the Court concludes, from the face of Plaintiffs' Complaint, that her claim is time-barred as to that statement.  CPLR § 215(3).  Plaintiffs allege only that the statement was made and repeated by Favro in May 2014–more than a year before their Complaint was filed.  (Dkt. No. 1 at ¶¶ 548-49.)

Third, to the extent that Mrs. Rissetto predicates her defamation claim upon statements made by Favro, Davey, Gray, and/or Clamser that she had been "conducting secret criminal background checks on prospective hires of" BOCES (Dkt. No. 1 at ¶¶ 560-61), for the reasons set forth in the BOCES Defendants' memorandum of law, the Court concludes that Plaintiffs have failed to allege facts plausibly suggesting that she suffered special damages or that the alleged statement qualified as defamation per se (Dkt. No. 23, Attach. 7, at 28-29).

For each of these reasons, Mrs. Rissetto's defamation claim is dismissed in its entirety.

**O.**   **Whether Plaintiffs' Tortious Interference with Contract Claims Should Be Dismissed**

   **1.**   **Whether Mr. Rissetto's Tortious Inference with Contract Claim with Respect to His Employment Contract Should Be Dismissed**

After carefully considering this matter, the Court answers this question in the negative for the reasons stated in Plaintiffs' opposition memoranda of law.[109]  (Dkt. No. 36 at 47-49 [Plfs.'

---

[109]   The Court notes that, with respect to Mr. Rissetto's tortious interference with employment contract claim, Plaintiffs' Complaint merely reiterates the alleged actions taken by CCSD personnel, as asserted in support of their numerous other claims (i.e., that the individual Defendants defamed him, falsely accused him of misconduct, searched his work-issued computer without cause, threatened to dismiss or demote him, and "are in the process of subjecting [him] to disciplinary action").  (Dkt. No. 1 at ¶¶ 584-605.)  Stated otherwise, rather than identify the conduct constituting the breach of Mr. Rissetto's "employment contract" (none of the purported

Opp'n Memo. of Law to County Defs.' Mtn.]; Dkt. No. 42 at 32-34 [Plfs.' Opp'n Memo. of Law

to Favreau's Mtn.].)

> **2.     Whether Mr. Rissetto's Tortious Interference with Contract Claim
> with Respect to His Collective Bargaining Agreement Should Be
> Dismissed**

After carefully considering this matter, the Court answers this question in the negative for

the reasons stated in Plaintiffs' opposition memorandum of law.  (Dkt. No. 36 at 49-50 [Plfs.'

Opp'n Memo. of Law to County Defs.' Mtn.].)

> **3.     Whether Mrs. Rissetto's Tortious Interference with Contract Claim
> Should Be Dismissed**

After carefully considering this matter the Court answers this question in the negative for

the reasons stated in Plaintiffs' opposition memoranda of law.  (Dkt. No. 36 at 50-51 [Plfs.' Opp'n

Memo. of Law to County Defs.' Mtn.]; Dkt. No. 37 at 26-29 [Plfs.' Opp'n Memo. of Law to

BOCES Defs.' Mtn.].)  To those reasons, the Court adds three points.

First, because Plaintiffs allege that Davey, Gray, and Clamser provided Mrs. Rissetto's

work-issued computer equipment to CCSD personnel in contravention of the BOCES Board of

---

terms of which are identified in Plaintiffs' Complaint), Plaintiffs sweepingly reiterate the bulk of
the conduct underlying all of their other claims.  Under New York law, actual breach of an
underlying contract is a necessary element of a tortious interference claim.  *See Highland Capital
Mgmt. LP v. Schneider*, 198 F. App'x 41, 46 (2d Cir. 2006) ("Under New York law, the elements
of tortious interference with contract are: (1) the existence of a valid contract between the
plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional
procurement of the third-party's breach of the contract without justification; (4) actual breach of
the contract, and (5) damages resulting therefrom."); *accord, NBT Bancorp Inc. v. Fleet/Norstar
Fin. Grp., Inc.*, 87 N.Y.2d 614, 620-21 (N.Y. 1996) (noting that the New York Court of Appeals
has "repeatedly linked availability of the remedy" of a tortious interference claim "with a breach
of contract").  However, because the County Defendants do not argue with specificity that
Plaintiffs have failed to adequately plead this element of the claim, the Court will not address the
issue at this time.

Education's instructions, Plaintiffs have plausibly pleaded (albeit barely) that Davey, Gray, and

Clamser acted outside of the scope of their authority and thus, although they are BOCES

employees, they may potentially be liable pursuant to a tortious interference with contract claim.

*Albert v. Loksen*, 239 F.3d 256, 275 (2d Cir. 2001).

Second, although the subject Defendants' argument that Mrs. Rissetto's continued

employment with BOCES suggests that her employment contract was not breached is well taken,

Plaintiffs have alleged that actions taken by the BOCES Defendants (i.e., excluding her from

meetings and requiring her to submit timesheets) constituted a breach of her employment

contract.  *Cf. Fusco v. Fusco*, 36 A.D.3d 589, 591 (N.Y. App. Div. 2d. Dep't 2007) (concluding

that plaintiff failed to allege that her transfer to another school "constituted a breach of any

contract" of which the defendants were aware).

Third, contrary to the County Defendants' argument, Plaintiffs are not required to allege

that the County Defendants "exceeded the bounds of [their] authority" because they were not

parties to Mrs. Rissetto's employment contract.  (Dkt. No. 24, Attach. 6, at 55.)  *See, e.g., Albert*,

239 F.3d at 274 (noting that "a plaintiff may maintain an action for tortious interference against a

co-employee by showing that the co-employee acted outside the scope of [his or her] authority")

(citation and internal quotation marks omitted).

### P.    Whether Plaintiffs' Negligence Claims Should Be Dismissed

As indicated above in Part I.B of this Decision and Order, the County Defendants and the

BOCES Defendants advance two arguments in support of their respective motions to dismiss

Plaintiffs' negligent hiring and supervision claims: (1) they are entitled to governmental

immunity because the conduct alleged constituted discretionary acts involving the exercise of

reasoned judgment, and Plaintiffs have not alleged facts plausibly suggesting the existence of a special duty or relationship; and (2) Plaintiffs' negligence claims were not included in their notices of claim, requiring the dismissal of those claims.  (Dkt. No. 23, Attach. 7, at 32-33 [BOCES Defs.' Memo. of Law]; Dkt. No. 24, Attach. 6, at 42-43 [County Defs.' Memo. of Law]; Dkt. No. 48 at 12-13 [BOCES Defs.' Reply Memo. of Law].)

After carefully considering this matter, the Court accepts the BOCES Defendants' and the County Defendants' second argument, for the reasons set forth in their memoranda of law.[110]  To those reasons, the Court adds the following analysis.

"The test of the sufficiency of a notice of claim is whether it includes enough information to enable the municipality to investigate the claim adequately," *Niles v. Cty. of Oneida*, 06-CV-1492, 2009 WL 799971, at *2 (N.D.N.Y. Mar. 25, 2009) (Suddaby, J.) (citation and internal quotation marks omitted), and the notice must include "the nature of the claim" and "the time when, the place where and the manner in which the claim arose[.]"  GML § 50-e(2).  "Notice of claim requirements are construed strictly by New York state courts.  Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir.1999) (internal quotation marks and citations omitted).

---

[110]        In light of the procedural posture of this case, the Court rejects the BOCES Defendants' and County Defendants' first argument as unsupported. *See, e.g., Mosey v. Cty. of Erie*, 117 A.D.3d 1381, 1384 (N.Y. App. Div. 4th Dep't 2014) (concluding that motion court should not have granted motion to dismiss complaint on the basis of immunity because "[w]hether the acts in question were discretionary and thus immune from liability 'is a factual question which cannot be determined at the pleading stage'") (citation omitted).

In this case, Plaintiffs' notices of claim identify several general statutory bodies of law (for example, the New York Civil Service Law, Title VII, and the ADA) and make reference to common law theories of recovery (for example, that Plaintiffs were defamed), but provide no suggestion that Plaintiffs intended to pursue any claim for negligence in general, or a claim of negligent training or supervision as to the municipality Defendants in particular.[111]  *See, e.g., Asseng v. Cty. of Nassau*, 14-CV-5275, 2015 WL 4621104, at *4 (E.D.N.Y. July 31, 2015) (holding that, "[a]lthough [plaintiff's notice of claim] lists causes of action for 'malicious prosecution, false arrest, and false imprisonment,' it makes no reference to negligent supervision and does not discuss facts that would raise the inference that Plaintiff intended to pursue such a claim"); *Ferlito v. Cty. of Suffolk*, 06-CV-5708, 2007 WL 4180670, at *4 (E.D.N.Y. Nov. 19, 2007) (concluding that claim for "negligent hiring, training or retaining practices" was not sufficiently specified in plaintiff's claim, and reasoning that "[t]he facts alleged in the notice of claim are limited to the occurrences of July 24, 2005 and the facts with respect to negligent

---

[111]         (*See* Dkt. No. 1, Attach. 1 [Mrs. Rissetto's notice of claim as against Clinton County, the Clinton County Legislature, Favro, Craig, Favreau, and Upton, alleging that her work-issued computer equipment was improperly searched and seized and that she and her husband were defamed and coerced]; Dkt. No. 1, Attach. 2 [Mrs. Rissetto's notice of claim as against BOCES, Gray, Clamser, and Davey, alleging that they defamed her and violated her "property rights" with respect to her computer equipment and job]; Dkt. No. 1, Attach. 3 [Mr. Rissetto's notice of claim as against Clinton County, the Clinton County Legislature, and Favro, alleging that they tortiously interfered with his CBA and violated his due process rights under the New York Civil Service Law when he was placed on administrative leave]; Dkt. No. 1, Attach. 4 [Mr. Rissetto's notice of claim as against BOCES, Gray, Clamser, and Davey, alleging that they defamed him and violated his property rights by seizing and searching Mrs. Rissetto's work-issued computer equipment]; Dkt. No. 1, Attach. 5 [Mr. Rissetto's notice of claim as against Clinton County, the Clinton County Legislature, and Favro, alleging that they violated his rights under Title VII, the ADA, the NYSHRL, and "whistleblower protection laws," and to his right to union representation under the CBA].)  The Court notes that nothing in the papers filed in this case suggests that Plaintiffs sought to amend their notices of claim.

-91-

hiring, training and retention would, of necessity, have occurred prior to that date"); *Fincher v.*

*Cty. of Westchester*, 979 F. Supp. 989, 1003 (S.D.N.Y. 1997) (noting that plaintiff's notice of

claim "does not mention negligent hiring, training, or supervision among the stated causes of

action"); *see also Hargroves v. City of New York*, 03-CV-3869, 2014 WL 1271024, at *7

(E.D.N.Y. Mar. 26, 2014) (collecting cases).

　　　　Accordingly, Plaintiffs' negligence claims are dismissed.

### Q.　　Whether Plaintiffs' IIED Claims Should Be Dismissed

　　　　After carefully considering this matter, the Court answers this question in the affirmative

for substantially the reasons set forth in the subject Defendants' memoranda of law.[112]  (Dkt. No.

23, Attach. 7, at 34-35 [BOCES Defs.' Memo. of Law]; Dkt. No. 48 at 13-14 [BOCES Defs.'

Reply Memo. of Law]; Dkt. No. 24, Attach. 6, at 43-45 [County Defs.' Memo. of Law]; Dkt. No.

46 at 18-19 [County Defs.' Reply Memo. of Law].)  To those reasons, the Court adds the

following analysis.

　　　　The New York Court of Appeals "has enumerated four elements of a cause of action for

intentional infliction of emotional distress: '(I) extreme and outrageous conduct; (ii) intent to

cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal

---

[112]　　The Court notes that it accepts Plaintiffs' argument that their notices of claim sufficiently notified the subject Defendants that Plaintiffs might assert an IIED claim.  *See Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016) (concluding that, because plaintiff's notice of claim alleged "[v]iolation of civil rights; battery; denial of medical care; and negligent screening, hiring, training, supervising and retaining of police officers," defendants were "adequately notified" that plaintiff "might bring an IIED claim against them").  The claims and factual allegations set forth in Plaintiffs' notices claim notified Defendants of the possibility that Plaintiffs would assert such a claim, and, moreover, Plaintiffs' notices of claim made reference to Plaintiffs' "mental anguish," and "emotional injury" and "related medical expenses."  (*See, e.g.*, Dkt. No. 1, Attach. 2, at 4; Dkt. No. 1, Attach. 3, at 4; Dkt. No. 1, Attach. 4, at 4.)

connection between the conduct and injury; and (iv) severe emotional distress[.]'" *Chanko v. Am. Broadcasting Co. Inc.*, 27 N.Y.3d 46, 56 (2016) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 [1993]).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Chanko*, 27 N.Y.3d at 56 (quoting *Howell*, 81 N.Y.2d at 122); *accord, Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).  The requirements "are rigorous, and difficult to satisfy," and "'of the intentional infliction of emotional distress claims considered by th[e Court of Appeals], *every one* has failed because the alleged conduct was not sufficiently outrageous[.]'" *Chanko*, 27 N.Y.3d at 57 (quoting *Howell*, 71 N.Y.2d at 122).

　　　As indicated above in Part I.A. of this Decision and Order, in essence, Plaintiffs' Complaint alleges as follows: (1) Defendants repeated the allegations comprising Mr. Rissetto's disciplinary charges to other Clinton County personnel, stating those allegations as fact; (2) seized and searched Plaintiffs' work-issued computers without sufficient grounds to do so; (3) Davey excluded Mrs. Rissetto from meetings that she previously attended, required her to submit timesheets, investigated her workplace conduct, and accused her of being insubordinate; (4) Favro asserted to Davey that Mrs. Rissetto stole two BOCES printers; and (5) following Warick's baseless sexual harassment complaint, Favro placed Mr. Rissetto on administrative leave pending its resolution, lodged other disciplinary charges against him, and prevented him from contacting union representatives, all for the purpose of covering up misconduct within CCSD (apparently consisting of approving false claims for overtime payment and other unspecified "misconduct within the [CCSD]").  (Dkt. No. 1 at ¶¶ 707-56.)

"[S]everal New York courts have dismissed cases involving acts of coercion and misrepresentation related to employment or disability decisions on the ground that such conduct was not extreme and outrageous." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (collecting cases, including, *inter alia*, *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 [1983] [concluding that plaintiff's claim fell "far short" of the "strict standard" where plaintiff alleged that he was unjustly transferred, demoted, and fired in a humiliating manner for reporting fraud and other alleged in-house illegal conduct]); *see also Gomez v. N. Shore Long Island Jewish Health Sys.*, 13-CV-2394, 2014 WL 4373315, at *4 (E.D.N.Y. Sept. 2, 2014) ("[F]ederal courts in New York routinely dismiss claims of [intentional infliction of emotional distress] in the employment context, with the only exception being where employment discrimination claims are accompanied by allegations of both sexual harassment and battery.") (citation and internal quotation marks omitted); *Garafalo v. City of Saratoga Springs*, 11-CV-0087, 2013 WL 1180835, at *13 (N.D.N.Y. Mar. 20, 2013) (D'Agostino, J.) (noting that false accusations of crime and threats of prosecution are insufficient to state an IIED claim); *Balduzzi v. City of Syracuse*, 96-CV-0824, 1997 WL 52434, at *10 (N.D.N.Y. Feb. 4, 1997) (Munson, J.) (concluding, on motion for summary judgment, that plaintiff did not meet the outrageous conduct standard where "the allegations contained in the complaint . . . concern[ed] certain negative comments defendants allegedly made to the public about [his] job performance, certain allegedly discriminatory and harassing employment actions defendants took against him, and certain allegedly false claims defendants made against him in order to have him terminated").

Even assuming the truth of Plaintiffs' allegations for purposes of the pending motions, the Court concludes that they have not alleged facts plausibly suggesting that Defendants engaged in

conduct so extreme and outrageous as to satisfy the high standard required under New York law.[113]  While Defendants' conduct, if undertaken for the purposes alleged by Plaintiffs, was certainly inappropriate, the Court cannot conclude that the conduct rises to the level of "atrocious, and utterly intolerable in a civilized community."'  *Chanko*, 27 N.Y.3d at 56 (quoting *Howell*, 81 N.Y.2d at 122).

Plaintiffs' reliance upon *Kurschus v. PaineWebber, Inc.*, 16 F. Supp. 2d 386 (S.D.N.Y. 1998), and *Vasarhelyi v. New Sch. for Soc. Research*, 230 A.D.2d 658, 661 (App. Div. 1st Dep't 1996), does not command a different conclusion, because those distinguishable cases involved factual allegations of substantially more outrageous conduct.  *See Kurschus*, 16 F. Supp. 2d at 390, 394-95 (denying defendant's motion for summary judgment as to his IIED claim where plaintiff was allegedly falsely accused of forcible sodomy, arrested, held in jail, lost his job, and divorced by his spouse); *Vasarhelyi*, 230 A.D.2d at 659-61 (concluding that plaintiff had adequately alleged extreme and outrageous conduct where "hostile, abusive, and threatening" criminal attorneys retained by her employer interrogated her for ten hours, asserted that the FBI was assisting in investigating her, humiliated her for her poor knowledge of English, probed into her personal relationships, and "impugn[ed] her honesty and chastity," after which she was suspended and ultimately discharged).

Moreover, the Court notes that, "[a]lthough the New York Court of Appeals has not set forth detailed guidelines for when the tort may be available, it has cautioned that a claim for IIED may not be sustainable 'where the conduct complained of falls well within the ambit of other

---

[113]      "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto*, 164 F.3d at 827.

traditional tort liability.'" *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 159 (2d Cir. 2014)

(quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 557-58 [N.Y. 1978]); *accord, Russo v. Cty. of*

*Warren*, 12-CV-1616, 2015 WL 7738043, at *10 (N.D.N.Y. Dec. 1, 2015) (Scullin, J.)

("Plaintiff's IIED claims concern the same conduct as her excessive force claims and her assault

and battery claims.  For this reason, Plaintiff may not properly bring her IIED claims in addition

to her excessive force and assault and battery claims."); *Bouveng v. NYG Capital LLC*, 14-CV-

5474, 2015 WL 3503947, at *14 (S.D.N.Y. June 2, 2015) (dismissing plaintiff's IIED claim

premised on defendant's "sexual contact" with her because, whether that contact constituted

"rape, tortious menacing, or unwanted touching," the "traditional tort remedies of assault and

battery apply"); *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 364 (N.D.N.Y. 2014) (Baxter, M.J.)

(noting that plaintiff's allegations in support of IIED claim were the same "factual bases" as those

advanced in support of plaintiff's discrimination and false imprisonment claims, and that the

IIED claim was thus "duplicative" of those claims); *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504,

530 n.10 (S.D.N.Y. 2013) (concluding that plaintiff's "IIED claim is well within the ambit of

Plaintiff's defamation claims.").  Here, in advancing their IIED claims, Plaintiffs simply reassert

many of their factual allegations asserted in support of their numerous other claims.  However,

the conduct at issue more appropriately falls within the ambit of those other claims, including for

defamation, rather than IIED, "a highly disfavored" tort which may only "be invoked as a last

resort." *Turley*, 774 F.3de at 158 (citations and internal quotation marks omitted).

      For all of these reasons, Plaintiffs' IIED claims are dismissed.

**R.      Whether Plaintiffs' Loss of Consortium Claims Should Be Dismissed**

After carefully considering this matter, the Court answers this question in the negative for the reasons set forth in Plaintiffs' opposition memoranda of law.  (Dkt. No. 36 at 57-58 [Plfs.' Opp'n Memo. of Law to the County Defs.' Mtn.]; Dkt. No. 37 at 34-36 [Plfs.' Opp'n Memo. of Law to the BOCES Defs.' Mtn.]; Dkt. No. 42 at 37-38 [Plfs.' Opp'n Memo. of Law to Favreau's Mtn.].)

**S.      Whether Plaintiffs' Claims for Reasonable Attorney's Fees and Costs Should Be Dismissed**

After carefully considering this matter, the Court answers this question in the negative for the reasons set forth in Plaintiffs' opposition memoranda of law.  (Dkt. No. 37 at 36 [Plfs.' Opp'n Memo. of Law to the BOCES Defs.' Mtn.].)

The Court adds only that, while Plaintiffs' claims for reasonable attorney's fees are clearly premature, numerous of Plaintiffs' claims remain pending and dismissal of their requests for attorney's fees and costs is therefore inappropriate at this time.

**T.      Whether Plaintiffs Should Be Permitted to Conduct Discovery Before Dismissal of Any of Their Claims**

After carefully considering this matter, the Court answers this question in the negative for the reasons set forth in Defendants' reply memoranda of law.  (Dkt. No. 48 at 15-16 [BOCES Defs.' Reply Memo. of Law]; Dkt. No. 49 at 24 [Favreau's Reply Memo. of Law].)

**ACCORDINGLY**, it is

**ORDERED** that Defendants' respective motions to dismiss Plaintiffs' Complaint (Dkt. No. 23, Attach. 7; Dkt. No. 24, Attach. 6; Dkt. No. 32, Attach. 2) are **<u>GRANTED</u> in part and <u>DENIED</u> in part**; and it is further

**ORDERED** that Plaintiffs' Complaint is **DISMISSED** in its entirety as to the Clinton County Sheriff's Department; and it is further

**ORDERED** that Plaintiffs' Second Cause of Action is **DISMISSED** with respect to Mr. Rissetto's First Amendment retaliation and procedural due process claims; and it is further

**ORDERED** that Plaintiffs' Third Cause of Action is **DISMISSED** as to Defendants Favro, Craig, Reid, and Upton; and it is further

**ORDERED** that Plaintiffs' Fourth Cause of Action is **DISMISSED** as to Defendants Favro, Craig, Reid, and Upton; and it is further

**ORDERED** that Plaintiffs' Fifth Cause of Action is **DISMISSED** as to Defendant Favreau; and it is further

**ORDERED** that Plaintiffs' Seventh, Eleventh, Twelfth, Thirteenth, Fourteenth, Seventeenth, Eighteenth, and Nineteenth Causes of Action are **DISMISSED** in their entirety; and it is further

**ORDERED** that **SURVIVING** Defendants' motions to dismiss are the following nine Causes of Action:

1.     Plaintiffs' First Cause of Action;

2.     Plaintiffs' Second Cause of Action to the extent that it asserts a claim of unreasonable search and seizure pursuant to 42 U.S.C. § 1983 and the Fourth Amendment on behalf of Mr. Rissetto;

3.     Plaintiffs' Third Cause of Action to the extent that it is asserted against Defendant Clinton County;

-98-

      4.       Plaintiffs' Fourth Cause of Action to the extent that it is asserted against

Defendant Clinton County;

      5.       Plaintiffs' Fifth Cause of Action to the extent that it is asserted against Defendants

Clinton County, the Clinton County Legislature, and Favro;

      6.       Plaintiffs' Sixth Cause of Action;

      7.       Plaintiffs' Eighth Cause of Action;

      8.       Plaintiffs' Ninth Cause of Action;

      9.       Plaintiffs' Tenth Cause of Action;

      10.      Plaintiffs' Fifteenth Cause of Action;

      11.      Plaintiffs' Sixteenth Cause of Action;

      12.      Plaintiffs' Twentieth Cause of Action; and

      13.      Plaintiffs' Twenty-First Cause of Action; and it is further

**ORDERED** that Defendants file an answer to Plaintiffs' Complaint within **FOURTEEN**

**(14) DAYS** of the date of this Decision and Order pursuant to Fed. R. Civ. P. 12(a)(4)(A).  This

case is referred back to Magistrate Judge Hummel for a Rule 16 conference and the scheduling of

pretrial deadlines.

Dated: August 29, 2016
      Syracuse, New York

                                Hon. Glenn T. Suddaby
                                Chief U.S. District Judge