**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

PAUL J. RISSETTO and RACHEL
RISSETTO,

                       Plaintiffs,

        v.                                 No. 8:15-CV-720
                                                 (CFH)

CLINTON ESSEX WARREN
WASHINGTON BOARD OF
COOPERATIVE EDUCATIONAL
SERVICES, et al.,

                     Defendants.

_____

| | |
|---|---|
| **APPEARANCES:** | **OF COUNSEL:** |
| The Steele Law Firm PC<br>949 County Route 53<br>Oswego, New York 13126<br>Attorneys for plaintiffs | KIMBERLY A. STEELE, ESQ. |
| Burke, Scolamiero & Hurd, LLP<br>7 Washington Square<br>P.O. Box 15085<br>Albany, New York 12212-5085<br>Attorneys for defendants | PETER M. SCOLAMIERO, ESQ.<br>JUDITH B. AUMAND, ESQ. |

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER

Presently pending before the undersigned[1] is defendants' motion for summary

judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 138.

Plaintiffs opposed the motion. Dkt. No., 141. Defendants filed a reply. Dkt. No. 142.

Plaintiffs filed a surreply. Dkt. No. 146.

_____

[1] The parties consented to the jurisdiction of a magistrate judge for all proceedings in this action.
Dkt. No. 106.

Plaintiffs Paul J. Rissetto and Rachel M. Rissetto commenced this action on June 1, 2015 with the filing of a complaint. Dkt. No. 1. On August 29, 2016, this Court dismissed from this action several defendants and causes of action. Dkt. No. 59. On September 27, 2017, the Court granted plaintiffs' motion to amend the complaint. Dkt. No. 127. On October 2, 2017, plaintiffs filed the Amended Complaint. Dkt. No. 129. On January 16, 2018, defendants Clinton Essex Warren Washington Board of Cooperative Educational Services ("CVES BOCES" or "BOCES," where appropriate), Mark Davey, Ronald Clamser, and Teresa Calabrese Gray (collectively, "individual defendants," where appropriate) filed a Motion for Summary Judgment. Dkt. No. 138. On February 1, 2018, plaintiffs opposed the motion. Dkt. No. 141. On February 13, 2018, defendants filed a reply. Dkt. No. 143. Plaintiffs filed a sur-reply on February 15, 2018. Dkt. No. 146.[2] For the following reasons, defendants' Motion for Summary Judgment is granted in part and denied in part.

Plaintiffs' remaining causes of action are claims for (1) defamation by Mr. Rissetto, (2) Fourth Amendment by Mrs. Rissetto, (3) tortious interference with contract by Mrs. Rissetto, (4) retaliation by Mrs. Rissetto pursuant to Civil Service Law § 75-b, and (5) First Amendment freedom of association by Ms. Rissetto.[3] See Dkt. Nos. 127, 129. Further, plaintiffs have corresponding claims for loss of consortium and attorneys fees. Id. at 129.

---

[2] Plaintiffs sur-reply was filed with permission of the Court. Dkt. No. 144, 145.

[3] In their Motion for Summary Judgment, defendants contend that "other causes of action appear in the Amended Complaint" but "the prior order on the motion to dismiss addressed them and *stare decisis* applies." Dkt. No. 138-33 at 6. In their opposition, plaintiffs note that defendants fail to address Mrs. Rissetto's first cause of action for First Amendment freedom of association. Dkt. No. 141-2 at 5. Defendants addressed this claim in their reply, requesting the Court dismiss Mrs. Rissetto's claim of violating her First Amendment associational rights. Plaintiffs correctly observe that the Court did not dismiss Ms. Rissetto's First Amendment claim, which was alleged against Davey. Dkt. No. 59 at 68.

**I. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it is supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. <u>See</u> FED. R. CIV. P. 56. The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. <u>See</u> FED. R. CIV. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." <u>Dister v. Cont'l Grp., Inc.</u>, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party. <u>See</u> <u>Skubel v. Fuoroli</u>, 113 F.3d 330, 334 (2d Cir. 1997). However, "inferences must be supported by affirmative facts and must be based on relevant, admissible evidence." <u>Gen. Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp.</u>, 975 F.Supp. 511, 515 (S.D.N.Y.1997) (citing FED. R. CIV. P. 56(e)). When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the . . . pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e)], must set forth specific facts showing that there is a genuine issue for trial." <u>St. Pierre v. Dyer</u>, 208 F.3d 394, 404 (2d Cir. 2000). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" <u>Rexford Holdings, Inc. v. Biderman</u>, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted ).

3

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  See Gallo v. Prudential Residential Services, Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

## II.  Facts

The facts are viewed in the light most favorable to the nonmoving party.  The facts underlying the present action were largely  set forth in this Court's August 29, 2016 Decision and Order, Dkt. No. 59 at 6, and, thus, a full restatement of the facts is not warranted.  Dkt. No. 59.  The Court will recount facts only to the extent it deems necessary for a review of the remaining causes of action.

## III.  Analysis

### A.  Fourth Amendment, Mrs. Rissetto

Plaintiffs contend that "using their authority as administrators of Defendant BOCES[,]" Davey, Clamser, and Gray "took Plaintiff Rachel Rissetto's work-issued laptop computer, work-issued desktop computer, and work-issued iPad from Plaintiff Rachel Rissetto, over Plaintiff Rachel Rissetto's protests and without the agreement, consent, or authorization of the Plaintiffs."  Dkt. No. 129 at 43.  Plaintiffs contend that Davey, Clamser, and Gray were present during the search of Mrs. Rissetto's work laptop.  Id. at 44.  Plaintiffs

assert that the individual defendants were "acting under color of law, to wit by virtue of their affiliation with Defendant BOCES and their acting during working hours and on Defendant BOCES's property" when they "obtained Plaintiff Rachel Rissetto's work-issued laptop computer, and monitored the search of Plaintiff Rachel Rissetto's work-issued laptop computer." Id. at 45.

Plaintiffs provide that Mrs. Rissetto's work-issued laptop was accessible only by her and "not accessible to other employees and agents of Defendant BOCES or to the public." Dkt. No. 129 at 45. Plaintiffs further contend that BOCES "did not conduct routine searches of employees' work-issued computer equipment." Id. Plaintiffs allege that BOCES permitted Mrs. Rissetto to allow her family, including Mr. Rissetto, to use plaintiff's work-issued electronic devices and "store items of a personal nature" on them. Id. Plaintiffs further contend that Mrs. Rissetto had "a reasonable expectation of privacy" in her work-issued electronic devices. Id. at 46.

Plaintiffs argue that Davey, Gray, and Clamser "did not have reasonable grounds to believe that evidence of work-related misconduct would be found by searching plaintiff's work-issued laptop computer, work-issued desktop computer, and work-issued iPad." Dkt. No. 129 at 46. Plaintiffs further argue that the individual defendants failed to "obtain[] a warrant and/or court order authorizing a search of Plaintiff Rachel Rissetto's work-issued laptop computer." Id. at 47. Plaintiffs contend that the search was for evidence of Mr. Rissetto's alleged misconduct, and that the search was not connected "at all with any valid accusation of workplace misconduct against either of the Plaintiffs." Id. at 46. Plaintiffs argue that the scope of the search was also improper insofar as the defendants searched Mrs. Rissetto's entire computer, rather than limiting the search to evidence of work-related

misconduct.  Id.  Plaintiffs contend the search deprived Mrs. Rissetto of her Fourth Amendment rights.[4]  Id.

Defendants do not directly address plaintiffs' contention that Mrs. Rissetto had a reasonable expectation of privacy based on BOCES' actual practices.  In support of dismissal, defendants argue that plaintiff's Fourth Amendment claim must fail because (1) Mrs. Rissetto did not have a reasonable expectation of privacy in her work-issued laptop, or (2) alternatively, if Mrs. Rissetto did have an expectation of privacy, "the search of the laptop was valid based on third-party consent."  Dkt. No. 138-33 at 12.  More specifically, defendants contend that Mrs. Rissetto signed a laptop policy, the Acceptable Use Policy ("AUP")[5], in which she agreed that (1) she would provide access to the laptop upon demand, (2) defendant BOCES could access the device's e-mail and files if there were a suspected violation of the AUP, (3) there is no expectation of privacy "with respect to CVES technology resource usage while on CVES property or while using CVES technology resources," and that CVES BOCES reserved the right to monitor computer usage and internet activity.  Id. at 13-14; Dkt. No. 138-9.  Further, defendants contend that Mrs. Rissetto "took no action whatsoever with regard to the information/content being accessed"

---

[4]  Within plaintiff's Fourth Amendment claim, plaintiffs contend that the search violated Mrs. Rissetto's "due process rights, among others."  Dkt. No. 129 at 47 at ¶311, 49-50 at ¶ 329.  The Court in its Decision & Order, Dkt. No. 59 at 60, determined that plaintiffs failed to set forth a due process claim as it related to Mr. Rissetto. In its August 2016 Decision and Order, the Court noted that Mrs. Rissetto also alleged that defendants violated her Fourteenth Amendment rights, Dkt. No. 59 at 18, but did not assess the Fourth Amendment claim as also brought under the Fourteenth Amendment.

The Amended Complaint does not include a separate cause of action for due process violations, nor does it explain how the search violated Mrs. Rissetto's Fourteenth Amendment due process rights beyond the conclusory claims contained within the Fourth Amendment claim. The undersigned deems the Fourteenth Amendment claims abandoned as plaintiffs utterly fail to explain in their amended complaint or opposition papers how defendants violated Mrs. Rissetto's Fourteenth Amendment rights through the search of the work-issued laptop.  Id. at 13-18.

[5]  See Dkt. No. 138-9.

as the "content at issue was materials [sic] that her husband, Paul Rissetto, placed on the laptop by whatever means he did that." Id. at 14. Thus, because Mrs. Rissetto was "passive in the entire event[,]" defendants contend that Mrs. Rissetto "cannot be said to have any privacy interest in the materials being sought." Id.

As for their third-party consent argument, defendants contend that BOCES had "common authority" over the laptop due to the AUP Mrs. Rissetto signed. Dkt. No. 138-33 at 15. Next, defendants argue that BOCES had a substantial interest in the laptop, as well as permission to gain access to the laptop through the AUP and acknowledgment form and its ownership of the laptop. Id.

"In the workplace context, the Supreme Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police." United States v. Zhu, 23 F. Supp. 3d 234, 237 (S.D.N.Y. 2014) (internal quotations omitted). Recently, the Eastern District of New York, in assessing whether an employee had a reasonable expectation of privacy in his work-issued computer and work e-mail account, applied a test set forth in In re Asia Glob. Crossing, Ltd., 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005):

> The Asia Global test provides that when measuring an employee's expectation of privacy in his computer files and email, '[i]n general, a court should consider four factors: (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

United States v. Nordlicht, No. 16-CR-00640 (BMC), 2018 WL 705548, at *4 (E.D.N.Y. Feb. 2, 2018) (quoting In re Asia Glob. Crossing, Ltd., 322 B.R. at 257). Further, the Eastern District noted that, although not a factor under the Asia Global test, a "key fact" was that the

employer's policy "in at least three instances . . . expressly alerted employees that they had no expectation of privacy when using [the employer's] electronic devices." Id. at *5.

Plaintiffs' argument that Mrs. Rissetto had a reasonable expectation of privacy in her work-issued electronic devices is without force. When the Court considered plaintiffs' argument on the Motion to Dismiss, the Court indicated that "in light of this policy language" – the AUP – it was "skeptical of Plaintiffs' arguments that Mrs. Rissetto nevertheless had a reasonable expectation of privacy in her work-issued computer equipment." Dkt. No. 69 at 65, 67. The Court, however, noted plaintiffs' arguments that Mrs. Rissetto's laptop was password protected, BOCES did not monitor or search electronic equipment provided to BOCES staff, Craig (Davey's predecessor) told Mrs. Rissetto her family could use the equipment and store personal items on it. Id. The Court denied the Motion to Dismiss on this ground, noting the "procedural posture of this case," and concluded that plaintiffs, "albeit barely, alleged facts plausibly suggesting that Mrs. Rissetto had a reasonable expectation of privacy with respect to her work-issued computer equipment" Id.[6] Now, the Court finds that, in response to the Motion for Summary Judgment, plaintiffs have failed to demonstrate that Mrs. Rissetto had a reasonable expectation of privacy.

The AUP provides that "access to technology resources will be denied without a signed AUP Signature Form . . ." Dkt. No. 138-9 at 4. Further, the AUP indicates that use of laptops is limited to work-related use. Id. at 8, 10 ("CVES laptops are only to be used as

---

[6] The Court "offer[ed] no opinion as to whether Mrs. Rissetto's Fourth Amendment claim would withstand a motion for summary judgment." Id. The Court also concluded that plaintiffs "alleged facts plausibly suggesting that the County Defendants' search was 'excessively intrusive in light of . . . the nature of the misconduct'' purportedly alleged against Mrs. Rissetto, i.e., violation of the AUP on her work issued computer." Dkt. No. 59 at 68. As noted above, plaintiffs have since settled with the County defendants. The Amended Complaint contends that Defendant Upton's search of Mrs. Rissetto's laptop is unreasonable in scope; however, there are no claims in the *Amended Complaint* about the scope of the search as it relates to BOCES or the individual defendants.

a productivity tool for CVES related business, curriculum enhancement, research, and communications."; "All CVES technology resources . . . must be used in support of education or academic research and must be used in a manner consistent with the educational mission, objectives, and Code of Conduct of CVES."). The AUP also states that unacceptable uses include "[s]earching, viewing, communicating, phishing, downloading, storing, or retrieving materials that are not appropriate or not related to education or CVES job duties." Id. at 10. Further, the AUP states that staff "will promptly provide access to any laptop computer or electronic device, and associated equipment they have been assigned upon CVES request." Id. at 8. Those who sign the AUP "understand that laptops, electronic devices, and associated equipment are the property of CVES. Therefore, CVES reserves the right to inspect laptops at any time it deems appropriate. Staff . . . understand[s] they have no personal property rights in CVES laptops and electronic devices." Id. The AUP provides that CVES-issued electronic devices are for the use of the assigned staff member only. Id. at 10 ("Users of CVES technologies are provided usernames and passwords to access various computers, systems, and other resources and are expected not to let other people use their accounts or reveal their passwords to others . . . .").

In addition, the AUP states that if a user is suspected to be in violation of the AUP, "the CVES Technology department may gain access to the user's e-mail and files for review including, but not limited to search and seizures of all necessary materials and property." Dkt. No. 139-9 at 11. Further, the AUP indicates that "special circumstances" may arise "that require permission to access resources or use technology in a way that would normally be considered in violation of the CVES AUP," including "[a]ssisting law enforcement in any

investigation." Id. at 14.  The AUP explicitly addresses expectations of privacy, noting that:

staff . . . shall have no expectations of privacy with respect to CVES technology resource

usage while on CVES property or while using CVES technology resources.  Id. at 16.[7]  The

policy also notes that "CVES Technology Department members will respect the privacy of

personal communications encountered on the systems," but notes

> if CVES Technology Department members, while involved in
> their routine duties, encounter information that indicates a
> violation of the CVES AUP, any other CVES policy, or any
> federal, State, or local law or regulation, they are required to
> report the existence and source of this information to the proper
> CVES administrator, and who [sic] Investigate the matter.

Id.  Further, "[t]o ensure effective and appropriate use of and access to technology

resources, and to enforce technology use rules, the CVES Technology Department may

delete files, review accounts, and require users to decrypt any encrypted materials

contained in any CVES computer system."  Id.

Applying the Asia Global test, under the first prong, it is clear that BOCES had in

place a specific policy informing the employee that she has no reasonable expectation of

privacy, and that the employer reserves the right to monitor and search electronic devices,

---

[7]  The AUP further states:
> CVES neither intends nor guarantees that data or information created,
> stored or sent on CVES information technology or network is private.
> CVES reserves the right to access and view any data or material stored
> on CVES equipment or used in conjunction with CVES information
> technology or network.  CVES further reserves the right to monitor all
> computer, network, and Internet activity including transmission and
> receipt of e-mail, transmission and receipt of files, or any other data that
> is transmitted, received, or passed through CVES computer systems.
> This monitoring is for the purpose of . . . compliance with the provisions
> set forth in, and required by CVES policies . . . the CVES Acceptable Use
> Policy, and other applicable federal, State, and local laws or regulations.

Dkt. No. 139-9 at 16.

that work-issued computers were for use solely by the employee, and that work-issued computers were to be limited to work-related uses. See Asia Global, 322 B.R. at 257. Similarly under the fourth prong, whether the employer notified the employee of its policy, it is clear that Mrs. Rissetto was aware of this policy, as she signed it. Id. However, the second (whether the employer actually monitors the employee's use) and third factors (whether third parties have a right of access to the computer) require additional assessment.

Plaintiffs cite O'Connor v. Ortega, 480 U.S. 708, 717 (1987), to argue that actual practice and procedures must be assessed when determining whether an employee had a reasonable expectation of privacy. Dkt. No. 141 at 13 (citing O'Connor, 480 U.S. at 717, "'Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer,' although 'employees' expectations of privacy in their offices, desks, and file cabinets . . . may be *reduced* by virtue of actual office practices and procedures, or by legitimate regulation.'")(emphasis added).[8] O'Connor involved the search of the public employee's office, and the plurality concluded that reasonableness of the employee's expectation of privacy in the contents of his desk and file cabinets wherein the employee maintained personal documents and items could not be determined on summary judgment due to "conflicting and incomplete evidence." Id. at 710-11. In O'Connor, the Supreme Court noted that there was no evidence that the employer had "established a [] reasonable regulation or policy discouraging employees . . . from storing personal papers and effects in their desks or file cabinets." O'Connor 480 U.S. at 719.

---

[8] The Court notes that O'Connor indicated that expectation of privacy may be reduced by actual practice, not, as plaintiffs argue, that it may be increased by actual practice.

Here, there is a clear policy about expectations of privacy.

In Leventhal v. Knapek, also cited by plaintiffs, the Second Circuit, assessing whether the employee had a reasonable expectation of privacy in his office computer, assessed, "'in the context of the employment relation,'" "what access other employees or the public had to Leventhal's office." 266 F.3d 64, 73-74 (2d Cir. 2001) (quoting O'Connor, 480 U.S. at 719)). The Court observed that the plaintiff had "a private office with a door. He had exclusive use of the desk, filing cabinet, and computer in his office." Id. at 73. The Court also noted that the plaintiff did not share his computer with other employees and there was no public access. Id. at 73-74. In denying summary judgment in favor of the employer and concluding that the employee had a reasonable expectation of privacy in the contents of his office computer, the Second Circuit noted that there was no evidence that the employer "had a general practice of routinely conducting searches of office computers *or had placed Leventhal on notice that he should have no expectation of privacy in the contents of his office computer.*"[9] Id. at 74 (emphasis added). Here, unlike in Leventhal, Mrs. Rissetto was on notice, through the AUP, that she did not have a reasonable expectation of privacy in her work-issued computer.

The plaintiffs' citation to Haynes v. Office of the AG, from the District of Kansas, Dkt. No. 141 at 13, does not require the Court reach a contrary finding. 298 F.Supp. 2d 1154 (D. Kansas 2003). In Haynes, the Court assessed a motion for preliminary injunction, wherein the plaintiff sought, among other things, that the defendants to be "prohibited from accessing, copying, reading, altering or otherwise searching the private files, documents, e-

---

[9] In Leventhal, the employer had a policy related to the prohibition of theft, which included improper use of State equipment," including use of State computers and internet for personal use. Leventhal, 266 F.3d at 74.

mails or other communications of plaintiff." Id. at 1163. Upon "careful review of the limited evidence presented by the parties," the Court granted the preliminary injunction after concluding that the plaintiff demonstrated a "subjective expectation of privacy and has raised serious issues concerning whether this expectation of privacy was reasonable." Id. at 1161-62. The Court noted that, although the employer's computer use policy indicated that employees had no expectation of privacy in their use of the computer system and the plaintiff was aware of this policy, there existed evidence that the plaintiff was not given a copy of this policy and only had the chance to briefly read this policy on a computer screen. Id. The standard applied in a motion for preliminary injunctive relief – which assesses whether the plaintiff would likely experience irreparable harm – is far different from that applied in a motion for summary judgment, and the District of Kansas clearly noted that the matter was before the Court on limited evidence. Id. at 1162. The Court did not reach a determination of whether the employee's expectation of privacy was objectively reasonable. Id. at 1161-61. Nothing in Hayes, a case from outside of this district and before the Court on a completely different posture from the case here, persuades this Court to find differently.

Moving to review of whether Mrs. Rissetto had an expectation of privacy that was reasonable, the Court will first assesses the fourth Asia Global factor – whether the employee was notified/ aware, of the use and monitoring policies. "Where an employer reserves the right to access or inspect an employee's email or work computer, courts often find that the employee has no reasonable expectation of privacy." Nordlicht, 2018 WL 705548 (quoting In re Reserve Fund Sec., 275 F.R.D. 154, 163 (S.D.N.Y. 2011)). Indeed, review of several cases assessing whether a public employee has a reasonable expectation

13

of privacy in her work computer and its usage and contents revealed that, where the employer has in place a clear policy which informs the employee of appropriate uses, reserves the right to search and/or monitor the computer and its usage, and informs the employee that she has no expectation of privacy in its use, courts largely have held that the employee does not have a reasonable expectation of privacy.  See, e.g., Nordlicht, 2018 WL 705548, at *4 ("In the face of this express policy, Nordlicht's statements that Platinum did not, in fact, routinely monitor employees' electronic activities is of minimal significance, because it always retained the right to do so, and its employees knew it."); United States v. Etkin, 07-CR-913, 2008 WL 482281, at *4 (S.D.N.Y. Feb. 20, 2008) (holding that the employee did not have a reasonable expectation of privacy in his work computer where a log-on notice informed him that he had no reasonable expectation of privacy with regard to his computer use and that his continued use of computer was consent to that policy); see also United States v. Hill, __ F. Supp. 3d __, 2018 WL 3059669, at *4 (June 20, 2018 D.D.C.); United States v. Angevine, 281 F.3d 1130, 1134-35 (10th Cir. 2002) (holding employee had no reasonable expectation of privacy in contents of work computer where employer "explicitly reserved ownership not only of its computer hardware, but also the data stored within.); Centennial Bank v. Servisfirst Bank Inc., 8:16-mc-00082 (CEH/JSS), 2016 WL 6037552, at *8 (M.D. Fl. Oct. 14, 2016) (quoting State v. Young, 974 So.2d 601, (Fla. 1st DCA 2008) ("where an employer has a clear policy allowing others to monitor a workplace computer, an employee who uses the computer has no reasonable expectation of privacy in it."); DeMaine v. Samuels, 3:99CV34 (JBA), 2000 WL 1658586, at *7 (D. Conn. Sept. 25, 2000) (holding that, although a policy does not, alone, mean the employee could have no reasonable expectation of privacy, but that in the case before the Court, the plaintiff's

expectation of privacy in his desk was not reasonable).

Here, it is not disputed that BOCES reserved the right to access and monitor employee computer and internet usage. However, plaintiff argues that BOCES did not actually engage in monitoring, and, thus, that she has a reasonable expectation of privacy. As for the second Asia Global factor – whether the employer actually engages in monitoring – courts often hold that where there is a policy reserving for the employer's right to search and/or monitor computer usage and/or informing the employee that she has no reasonable expectation of privacy, there is no reasonable expectation of privacy regardless whether the employer actually performed monitoring of computer usage. United States v. Finazzo, 10-CR-457 (RMM/RML), 2013 WL 619572, at *9 (E.D.N.Y. Feb. 19, 2013); Etkin, 2008 WL 482281, at *4; but see Brown-Criscuolo v. Wolfe, 601 F. Supp. 2d 441, 450 (D. Conn. 2009). Indeed, it appears that the majority of courts have accorded great weight to the existence of an employer's computer usage policy, regardless whether the employer engages in actual monitoring. See Bingham v. Baycare Health Sys., 8:14-CV-73-T-23JSS, 2016 WL 3917513, at *4 (M.D. FL July 20, 2016) (collecting cases); see also In re Reserve Fund Securities and Derivative Litig., 275 F.R.D. 154, 163-64 (holding that, although the employer contended that it would not routinely monitor employees' emails and would protect e-mail privacy, because its policy reserved the right to access e-mail "for a legitimate business reason . . . or in conjunction with an approved investigation," the second Asia Global factor weighed against a reasonable expectation of privacy). This Court agrees with the majority viewpoint. Although the Court does not conclude that there can be no situation wherein an employee can be found to have a reasonable expectation of privacy in a work-issued computer, despite an explicit policy stating otherwise, see, e.g., DeMaine, 2000 WL

15

1658586, at *7, the Court finds no basis to conclude such expectation is reasonable under the facts set forth in this case. Ultimately, even if Mrs. Rissetto held a subjective expectation of privacy, in light of the AUP, such expectation of privacy was not objectively reasonable. Nordlicht, 2018 WL 705548, at *4 ("In the fact of this express policy, Nordlicht's statements that Platinum did not, in fact, routinely monitor employees' electronic activities is of minimal significance, because it always retained the right to do so, and its employees knew it.").

Although the third Asia-Global factor assesses whether third parties have the right to access the employee's computer, this Court finds this factor to be of minimal significance under the specific facts of this case. Here, the AUP directed that computer users implement a computer password. See Dkt. No. 138-9 at 10 ("Users of CVES technologies are provided usernames and passwords to access various computers, systems, and other resources and are expected not to let other people use their accounts or reveal their passwords to others . . . ."); cf. U.S. v. Zhu, 23 F. Supp.3d 234, 238 (S.D.N.Y. 2014) (in a law enforcement search of a computer, the Court held the plaintiff had a subjective expectation of privacy in laptop he purchased with university grant where he "had ordered and configured the laptop himself," it was not shared with coworkers, he encrypted the laptop, and applied "several layers of password, which he ostensibly did not share with others."). Although Mrs. Rissetto contends that she password protected her work-issued laptop, this Court finds that this factor, without more, fails to demonstrate that her presumed subjective expectation of privacy was reasonable. Indeed, holding that a computer password alone suffices to provide a public employee with a reasonable expectation of privacy in that computer and its files or usage could create a slippery slope wherein an

16

employee can combat an employers' express statements regarding expectation of privacy by setting up a password. Regardless, the AUP also provided notice to employees that the computers could be accessed in conjunction with a law enforcement investigation. Dkt No. 138-9 at 14. Thus, although plaintiff contends that her laptop was password protected, and, thus, not accessible to third parties, plaintiff was also informed that the computer may need to be accessed by third parties during an investigation. Ultimately, the Court finds that this factor is, at most, neutral, and weighs neither in favor or against an objectively reasonable expectation of privacy.

Next, plaintiffs argue that the AUP "expressly acknowledges at least some privacy" as it states that the technology department "will respect the privacy of personal communications encountered of [sic?] the systems." Dkt. No. 141 at 14. Plaintiffs do not appear to claim that defendant BOCES accessed Mrs. Rissetto's personal e-mails.[10] However, even if such a claim were alleged, the undersigned would be inclined to reject it. See Nordlicht, 2018 WL 705548, at *5 n.4 ("Individuals may not "enjoy [ ] an expectation of privacy in transmissions over the Internet or e-mail that have already arrived at the recipient.")(citing United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004) ("Insofar as defendants assert a privacy interest in their personal emails, as distinct from other personal electronic files, the Court is further skeptical of the viability of this claim for an independent reason")).

Lastly, as the Court finds that Mrs. Rissetto did not have a reasonable expectation of privacy in her work-issued electronic devices, the Court need not reach the question

---

[10] The Court's reasonable understanding of "personal emails" as used in the AUP would be e-mails sent and received from a personal, i.e., not work-issued e-mail account that was accessed on the work-issued electronic devices.

whether there existed valid third-party consent.  Accordingly, summary judgment is granted on plaintiffs' Fourth Amendment claim.

## B.  Defamation, NYS Law, Mr. Rissetto[11]

Plaintiffs contend that Favro, Favreau, Craig,[12] (1) "stated that Plaintiff Paul Rissetto had possessed a pornographic video on his work-issued computer"; (2) "stated that Plaintiff Paul Rissetto had used a work-issued iPad to remotely access the Defendant County's Internet server and access one hundred eighty (180) pornographic Web sites for twenty three (23) hours on December 14, 2013"; and (3) "stated that Plaintiff Paul Rissetto had used his work-issued computer during working hours to 'look[] for a prostitute.'"  Dkt. No. 129 at 59.  Plaintiffs contend that "on or about May 14, 2014 and thereafter," defendants Davey, Gray, and Clamser "repeated the above-mentioned statements to other employees and Board of Education members of Defendant BOCES."  Dkt. No. 129 at 60.  Plaintiffs contend that Davey, Gray, and Clamser's statements "had the effect of republishing the previously published statements."  Dkt. No. 129 at 60.  Defendants Davey, Gray, and Clamser "uttered the aforesaid statements with the intention that they be republished

---

[11]    This Court, in its August 29, 2016 Decision & Order, concluded that plaintiffs failed to demonstrate that Mr. Rissetto suffered special harm/damages as a result of the allegedly defamatory statements.  Dkt. No. 59 at 90.  However, it concluded that  "Plaintiffs have alleged facts plausibly suggesting that the statements at issue concerning Mr. Rissetto constitute defamation per se because the statements tended to injure him in his trade, business, or profession."  Id.  This Court also determined that Mr. Rissetto is a public figure for purposes of his defamation claim.  Id. at 89.  The Court declined to dismiss on the basis of qualified privilege "under the circumstances of this case and in light of its procedural posture . . . ."  Id.  In its September 27, 2017 Memorandum-Decision & Order, the Court permitted plaintiffs to amend their complaint to add defendant BOCES to the defamation claim.  Dkt. No. 127.

[12]    Favro, Favreau, and Craig are no longer defendants in this action, as they were terminated on June 19, 2017 by Stipulation and Order.  See Dkt. Nos. 108, 109, 110.

18

generally and specifically among the employees and Board of Education members of Defendant BOCES." Id. Plaintiffs contend that the statements "expressly and implicitly call into question Plaintiff Paul Rissetto's integrity and character." Id. Plaintiffs argue that the defendants have failed to show that Davey's statements were substantially true and that the "CVES Defendants" cannot rely on Mr. Rissetto's underlying disciplinary charges because they were "annulled on appeal." and, thus "issues of fact remain as to the truth of these statements." Dkt. No. 141 at 12.

Plaintiffs further argue that the individual defendants "uttered and published the above-mentioned defamatory statements with knowledge of their falsity, and/or with reckless disregard of their truth or falsity, and/or with actual and wrongful intent to injure Plaintiff Paul Rissetto in his profession." Dkt. No. 129 at 61. Plaintiffs argue that as a result of the statements, Mr. Rissetto "suffered injuries, including psychological distress, trauma, nervousness, anxiety, embarrassment, humiliation, lost earnings and employment benefits, loss of employment opportunity, out of pocket medical expenses, and damage to reputation." Id. at 64.

Defendants argue that (1) the statements made were true, and, alternatively, (2) defendants had a qualified privilege. Dkt. No. 138-33 at 7. Defendants contend that the statements can be considered true despite the fact that Mr. Rissetto's underlying disciplinary determination was overturned because "the reason the determination was overturned is because of a procedural technicality in selection of the hearing officer not being reduced to writing. There was never a successful appeal of the merits of the hearing officer's determination." Dkt. No. 142 at 8.

To survive summary judgment on a defamation claim, a plaintiff must allege

"'(1) an oral defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party by the defendant, and (4) injury to the plaintiff." Hillary v. Village of Potsdam, 7:12-CV-1669 (GLS/DEP), 2015 WL 902930, at *11 (N.D.N.Y. Mar. 3, 2015) (quoting Weldy v. Piedmont Airlines, 985 F.2d 57, 61 (2d Cir. 1993)). "Further, if the plaintiff is a public figure, to succeed on a defamation claim the plaintiff must prove actual malice, that is 'with knowledge that the statement was 'false or with reckless disregard of whether it was false or not.'" Weitsman v. Levesque, No. 3:17-CV-727 (MAD/DEP), 2018 WL 1990218, at *3 (N.D.N.Y. Apr. 25, 2018) (quoting Dongguk Univ. v. Yale Univ., 734 F.3d 113, 123 (2d Cir. 2013) (additional quotation omitted). For a defamatory statement to be actionable under New York law, "it must either cause special harm or constitute defamation per se." Peters v. Baldwin Union Free Sch. Dist., 320 F.3d 164, 169 (2d Cir.2003) (citing Dillon v. City of N.Y., 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999)). "A statement is defamatory per se if it asserts that the plaintiff committed a serious crime or tends to injure the plaintiff in his trade, business or profession." Id. (citing Albert v. Loksen, 239 F.3d 256, 271 (2d Cir. 2001)).[13]

The Court first addresses two threshold issue. First, defendants argue that "[n]ot once has Mr. Rissetto, either in pleadings or in testimony, set forth specific words used by any of the moving defendants in support of his defamation claim[]" only "generalities of what

---

[13] "Defamation per se absolves a plaintiff of the requirement to plead special damages," Grayson v. Ressler & Ressler, 271 F.Supp. 3d 501, 518 (S.D.N.Y. 2017), because "the law presumes that damages will result." Liberman v. Gelstein, 80 N.Y.2d 429, 435 (N.Y. 1992). Cain v. Atelier Esthetique Inst. of Esthetics Inc., No. 16-3750-CV, __F App'x __, 2018 WL 2065067, at *2 (2d Cir. May 3, 2018) (summary order).

he assumes has been said." Dkt. No. 138-33 at 9. Defendants also argue that Mr. Rissetto improperly relies on hearsay, as he bases his "information . . . in support of his claim" from Mrs. Rissetto which "includes what was said by the moving defendants in the executive session, from which she was excluded." Id. Plaintiffs contend that the fact that they did not fully specify the slanderous statements is not fatal to their case as the federal pleadings standard applies to this case, and such standard does not require parties to identify the exact statements made. Dkt. No. 141 at 10 (quoting Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986).

As plaintiffs' defamation claim is brought pursuant to New York State common law, "'while this court must apply the substantive law of New York to [his] defamation claim, . . . the pleading requirements for such a claim, set forth in C.P.L.R. 3016(a), do not apply." Hillary v. Village of Potsdam, 7:12-CV-1669 (GLS/DEP), 2015 WL 902930, at *11, n.11 (N.D.N.Y. Mar. 3, 2015) (internal citations omitted); see also Triestman v. Wacks, 12-CV-1987 (GLS/CFH), 2017 WL 639322 (N.D.N.Y. Feb. 16, 2017). Thus, plaintiffs are not required to meet the higher pleading standard set forth in CPLR 3016(a). Regardless of the pleading standard, however, the Court concludes that plaintiffs have failed to defeat summary judgment with respect to Mr. Rissetto's defamation claim for the reasons discussed below.

Second, it is noted that although the amended complaint sets forth defamation claims against Davey, Clamser, and Gray, Dkt. No 129 at 60 ¶ 395-97, 401, 404-95, 407, 419, plaintiffs papers allege only that Davey made or repeated certain defamatory statements about Mr. Rissetto. Dkt. No. 141 at 11 (listing Davey's statements); 12 ("The CVES Defendants have failed to show that Davey's statements were substantially true");

Dkt. No. 141-1 at 19 ¶¶99-102).  There are no claims that Clamser or Gray made any statements about Mr. Rissetto to anyone else.  Id.  Thus, the Court considers the defamation claims against Clamser and Gray abandoned.  See, e.g., Anti-Monopoly, Inc., v. Hasbro, Inc., 958 F.Supp. 895, 907 & n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), aff'd 130 F.3d 1101 (2d Cir. 1997), cert. denied, 525 U.S. 813 (1998); see also Irwin v. City of New York, 902 F.Supp. 442, 451 (S.D.N.Y. 1995) (dismissing equal protection claim on summary judgment when plaintiff presented no argument in opposition).  Similarly, although plaintiffs were granted permission to amend their complaint to add defendant BOCES to Mr. Rissetto's defamation claim, beyond adding BOCES to the caption of the cause of action, the plaintiffs fail to set forth any defamation claims against BOCES in their amended complaint, Dkt. No 129 at 57, and similarly fail to set forth any claims in their opposition papers.  Any defamation claims against defendant BOCES are deemed abandoned.

In the amended complaint, plaintiffs do not identify the specific statements Davey made; they merely state that the individual defendants "repeated" Favro, Favreau, Craig's statements.  In opposition to the motion for summary judgment, plaintiffs contend that Davey told members of the Board, BOCES counsel, and a member of the BOCES technology department that the Sheriff's Department was seeking "criminal evidence," that Mr. Rissetto was involved in a "bad case" or "a very serious matter," that there may be "pornographic information" and "criminal evidence" on Mrs. Rissetto's laptop, and that Mr. Rissetto would be "held accountable."  Dkt. No. 141 at 11; Dkt. No. 141-2 at 6-7; Dkt. No.

141-15 at 116: 18-117:3, 118:8-119:1, 177:10-178:7, 181:18-182:2).[14]

Even if the Court presumes that Davey's statements were ones that "tend to injure his trade, business, or profession," Davey has proven the existence of an absolute defense, that the statements at issue were substantially true.  See Printers II, Inc. v. Professionals Publishing, Inc., 784 F.2d 141, 146 (2d Cir. 1986) ("[I]t is not necessary to demonstrate complete accuracy to defeat a charge of [defamation]. It is only necessary that the gist or substance of the challenged statements be true.").  Plaintiffs contend that the defendants have failed to show that Davey's statements were substantially true and that the "CVES Defendants" cannot rely on Mr. Rissetto's underlying disciplinary charges because they were "annulled on appeal" and, thus "issues of fact remain as to the truth of these statements."  Dkt. No. 141 at 12.  However, the question is not whether Mr. Rissetto was found guilty of the disciplinary charges, but whether the *statements* Davey allegedly made to the Board were substantially true.  Plaintiffs allege solely that Davey told Board of Education ("Board") members that the sheriff's department told him that the sheriff department's request to access Mrs. Rissetto's laptop was a "very serious matter," that the sheriff's department believed that "pornographic information" and "criminal evidence" were transferred to Mrs. Rissetto's work-issued laptop, that Mr. Rissetto was involved in a "bad case," and that Mr. Rissetto would be "held accountable."  Dkt. No. 141 at 11; Dkt. No. 141-2 at 6-7.   Direct review of the statements on which plaintiffs base their claims provides

---

[14]  Plaintiffs' opposition papers make clear that they are no longer alleging that the individual defendants repeated Favro, Favreau, Craig's exact statements that "Plaintiff Paul Rissetto had possessed a pornographic video on his work-issued computer"; (2) "Paul Rissetto had used a work-issued iPad to remotely access the Defendant County's Internet server and access one hundred eighty (180) pornographic Web sites for twenty three (23) hours on December 14, 2013"; and (3) that Plaintiff Paul Rissetto had used his work-issued computer during working hours to 'look[] for a prostitute.'" Dkt. No. 129 at 59.

additional context.  Dkt. No. 141-15 at 116: 18-117:3, 118:8-119:1, 177:10-178:7, 181:18-182:2.

Davey testified in the affirmative in response to a deposition question asking him whether it was his "impression" based on his phone call with Sheriff Favro, that the issue with Mr. Rissetto was "a very serious matter," and that he believed it was

> a very serious matter, as I had stated, and that if through
> CVES's knowledge we were made aware of it, we did not act,
> and we did not protect the confidentiality of that information,
> which we didn't create, but has now been placed . . . on our
> files and in our network and on our computer, that we then have
> a obligation to protect that and secure it,

and that he conveyed that it was a "very serious matter" to Board members.  Dkt. No. 141-15 at 116-18.  As for the statements relating to "pornographic information" and "criminal evidence," Davey testified that he was reiterating to the Board the sheriff's belief of the contents of the material that had been placed onto Mrs. Rissetto's laptop.[15]  There is no indication that he accused Mr. Rissetto of being directly involved in pornographic information or criminal evidence, but that such material potentially had been transferred to the laptop.  Dkt. No. 141-15 at 178.

Review of the evidence of record demonstrates that the substance of the challenged statements is true: the Sheriff's Department wished to investigate Mrs. Rissetto's laptop because they believed it could contain files that included pornographic information and criminal evidence transferred by Mr. Rissetto from the Sheriff's Department to Mrs. Rissetto's laptop.  Although the hearing officer may have overturned or annulled the

---

[15]  Davey testified the sheriff's department told him "we have . . . personnel information . . . pornographic information . . . criminal evidence on the file.  This is on your – this is potentially on your laptop."  Dkt. No. 141-15 at 178-79.

underlying disciplinary charges against Mr. Rissetto, that does not render untrue the fact that the Sheriff's Department wished to investigate the laptop for this content, as the statements arose in the context of a conversation about the potential files that were transferred from the sheriff's department to Mrs. Rissetto's work-issued laptop.

Moreover, even if Davey had not demonstrated that the statements were substantially true, the Court concludes that Davey has demonstrated that the qualified privilege applies. "Under New York law, '[a] communication is said to be qualifiedly privileged where it 'is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned.'" Fahnestock & Co. v. Waltman, 935 F.2d 512, 516 (2d Cir. 1991) (quoting Toker v. Pollak, 44 N.Y.2d 211 (1978) (additional citations and quotation marks omitted); Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 409-10 ("[G]ood faith communications of a party having an interest in the subject, or a moral or societal duty to speak, are protected by a qualified privilege if made to a party having a corresponding interest or duty.") (internal quotation marks and citation omitted)). Further, "'qualified[ ] privilege extends to a communication made by one person to another upon a subject in which both have an interest.'" Chandok v. Klessig, 632 F.3d 803, 815 (2d Cir. 2011) (quoting Liberman v. Gelstein, 80 N.Y.2d 429, 437 (1992). "This privilege encompasses a defamatory communication on "any subject matter in which the party communicating has an interest . . . made to a person having a corresponding interest." Id. (quoting Stukuls v. State, 42 N.Y.2d 272, 279 (N.Y. 1977).

Plaintiffs contend that the qualified privilege is applicable only where the speaker had a "relationship" with the defamed individual – such as through "contractual ties" or where

25

they "at least knew each other," and that, because Davey had no relationship with Mr.

Rissetto and has not shown that Mr. Rissetto "was even personally known to the parties

participating in the defamatory communications," he cannot claim qualified privilege.  Dkt.

No. 41 at 12-13.  In response, defendants contend that for the qualified privilege to apply,

the statement must be "made to someone who shares a common interest with the speaker

in the subject matter," and that "there is not even consideration in this standard for the

relationship of the subject matter to the speaker or listener."  Dkt. No. 142 at 10.  The Court

agrees.  Although plaintiffs cite cases wherein the parties may have personally known each

other, they present no case law demonstrating that a personal relationship between the

alleged defamer and the defamed is *required* for qualified privilege to apply.  Here, Davey

made statements to the Board, who had common interest with Davey in the allegations that

there was potentially sensitive and confidential material belonging to the Sheriff's

Department that was transferred to a BOCES-owned laptop computer.  Davey testified that

after speaking with Sheriff Favro, he relayed the contents of the conversation to the Board

and that his purpose of communicating this information was because "we had information

on the computer that potentially was very damaging to the County of – and the sheriff's

department, could potentially be a huge liability to BOCES."  Dkt. No. 141-15.  He reiterated

that the

> emphasis of the conversation was about this material which
> should not have been on our laptop, which is now there.  Now,
> the process of how it got there and why it was there and what
> the rationale was, I didn't get into that.  I didn't know specifics
> about Paul Rissetto's standing in the sheriff's department.  I
> didn't know the specifics about anything.

Dkt. No. 141-15 at 189.  Davey "relayed" to the Board "that we need to protect our BOCES,

26

and that we needed to take steps to at least secure the information that then determine how – what our response is going to be." Id. at 189-90. When asked whether he discussed Mr. Rissetto specifically with the Board, Davey testified that "the emphasis of the conversation that I recall and the various comments that were made specifically about the laptop, the downloaded information, what our responsibilities were, how shall we cooperate or not cooperate with the sheriff's department, what level of cooperation shall we provide, and at what point should we – should we turn anything over." Id. at 194. Thus, it is clear that Davey shared the sheriff's statements with members of the Board (and potentially an IT staff member who was assisting with the laptop search) for the primary purpose of protecting BOCES' interests and determining how the content on a BOCES employee laptop could impact BOCES and their employee, Mrs. Rissetto -- not just the sheriff's department or the county. As Davey made these statements to Board members and potentially a BOCES information technology staff member, all of whom would have a clear common interest in BOCES potential involvement in the subject matter – the existence of potentially confidential material from the sheriff's department being placed onto a BOCES-owned laptop computer – his statements fall under the qualified privilege. Chandok, 632 F.3d at 815.

As the Court has found that Davey has demonstrated that qualified privilege applies, the burden shifts to plaintiffs to prove malice.

> "In order to overcome the qualified privilege, plaintiff must show
> that the defamatory statement was false and that defendant
> abused the privilege by acting (1) 'with common law malice;' or
> (2) with constitutional malice, which is 'with knowledge that the statement was false or w

Canino v. Barclay's Bank, PLC, 173 F.3d 843, 1999 WL 132180, at *1 (2d Cir. Mar. 11,

27

1999) (summary order); Weldy v. Piedmont Airlines, Inc., 985 F.2d 57, 62 (2d Cir. 1993).

Common law malice or "actual malice" "has been defined as "personal spite or ill will, or

culpable recklessness or negligence.'" Fahnestock & Co., Inc. v. Waltman, 935 F.3d 512,

516 (2d Cir. 1991) (quoting Garson v. Hendlin, 141 A.D.2d 55, 64, 532 N.Y.S.2d 776, 782

(N.Y. App. Div. 1988) (citation omitted)). Constitutional malice, in defamation cases, is

defined as "publication with [a] high degree of awareness of [the publication's] probable

falsity or while the defendant in fact entertained serious doubts as to the truth of [the]

publication." Boyd, 208 F.3d at 410 (quoting Harte-Hanks Commc'n, Inc. v. Connaughton,

491 U.S. 657, 667 (1964)).

For the reasons set forth in defendants' moving papers, the Court concludes that

plaintiffs have failed to meet their burden of demonstrating common law/actual malice or

constitutional malice. Plaintiffs have not demonstrated common law malice because they

have presented no evidence demonstrating that in speaking to Board members and/or

BOCES IT staff about his conversation with the sheriff and the potential files the sheriff

believed Mr. Rissetto transferred to Mrs. Rissetto's laptop, Davey spoke solely out of spite

or ill will. Davey's testimony demonstrates that he shared his conversation with the sheriff

with the Board because he was concerned with BOCES potential involvement with

confidential material being placed on BOCES equipment, the need to safeguard that

information, and potential consequences BOCES could face if it failed to safeguard the

information. Dkt. No. 145-15 at 189-90. Plaintiffs have also failed to demonstrate

constitutional malice as they have presented no evidence that Davey had a "high degree of

awareness" of the probable falsity of the information or entertained "serious doubts" about

its truth. Boyd, 208 F.3d at 410. There is no evidence that Davey was "highly aware" that

his statements were false or that he doubted the truth of the statements the sheriff told him, to any degree, let alone to a serious degree.  Dkt. No. 141-15.

In sum, as Davey has demonstrated that the allegedly defamatory statements were substantially true, he has a complete defense to plaintiffs' defamation claim.  Furthermore, as the Court has discussed above, even if the Court had not concluded that defendants demonstrated that the statements were substantially true, the qualified privilege applies, and plaintiffs have failed to demonstrate that Davey communicated the alleged statements with actual/common law malice or constitutional malice.  Further, as plaintiffs set forth no defamation claims against Clamser, Gray, or BOCES, summary judgment is also granted as to those defendants.

### C.  Tortious interference with contract, Mrs. Rissetto

Defendants argue that Mrs. Rissetto "does not entirely make clear which contract is at issue," thus, "on its face, the claim should failed [sic]."  Dkt. No. 138-33 at 17.  To the extent that Mrs. Rissetto "is claiming that CVES BOCES interfered with her contract with CVES BOCES," defendants argue that CVES BOCES "would not be a third party, and . . . on its face, the claim should fail."  Id.  Finally, defendants argue that "there is no evidence that the moving defendants acted for a wrongful purpose or used dishonest, unfair or improper means to interfere with any contract whatsoever."  Id.

Plaintiffs argue that the contract at issue is the employment contract between Mrs. Rissetto and CVES BOCES.  Dkt. No. 141 at 23.  Plaintiffs explain that "Gray, Glamser, and Davey are accused of tortiously interfering with the contract between Rachel Rissetto and CVES[,]" and contends that the individual defendants "are third parties[.]"  Id. at 23-24.

29

More specifically, plaintiffs contend that the individual defendants are third parties because they exceeded their authority[16] when they provided Mrs. Rissetto's work-issued computer to Sheriff's Department personnel in contravention of the Board's instructions to wait for a warrant or court order.  Id. at 24.  Plaintiffs contend that Mrs. Rissetto's contract was interfered with because the defendants' adverse employment actions following the turning over of her work-issued electronic devices – submitting unwarranted negative performance evaluations to the Board, withholding employment benefits, charging Mrs. Rissetto for health insurance despite her having opted out, eliminating human resources job duties, reducing her compensation, denying certain reimbursements, moving her office, transferring her labor relations duties to Capital Region BOCES – amounted to a breach of her employment contract.  Plaintiffs also allege that Davey specifically exceeded his authority by: (1) falsely accusing her of insubordination,[17] (2) falsely accusing her of being disrespectful and/or combative toward CVES employees, and (3) urging CVES BOCES to eliminate Mrs. Rissetto's human resources duties in order to "vindicate his personal interest in punishing Rachel Rissetto at an additional expense to CVES, rather than to its benefit, actually undermining his employer's interest in competent provision of those duties and cost-effective management."  Id. at 24.[18]

In the August 2016 Decision and Order, this Court concluded that plaintiffs "plausibly

---

[16]  Plaintiffs contend that Davey, Gray, and Clamser "were administrative staff of Defendant BOCES and Defendant Davey and Defendant Gray supervised Plaintiff Rachel Rissetto in performing her duties and responsibilities for Defendant BOCES."  Dkt. No. 129 at 65 ¶ 424.

[17]  The only allegation in the amended complaint of insubordination is that Davey accused Mrs. Rissetto of insubordination for her protesting turning in her work-issued iPad.  Dkt. No. 129 at 66 ¶ 437.

[18]  Plaintiffs allege that Davey "acknowledges having urged this personnel change," but plaintiffs fail to provide a citation to an exhibit and pin cite to assist the Court in determining where in the record this acknowledgment lies.  Dkt. No. 141 at 25.

pleaded (albeit barely)" tortious interference through their allegations that the individual

defendants provided Mrs. Rissetto's computer to the Sheriff's Department in contravention

of the Board's instructions, and, thus, that the individual defendants acted outside of the

scope of their authority. Dkt. No. 59 at 93-94.

> Under New York law, the elements of a tortious interference
> claim are: (a) that a valid contract exists; (b) that a "third party"
> had knowledge of the contract; (c) that the third party
> intentionally and improperly procured the breach of the
> contract; and (d) that the breach resulted in damage to the
> plaintiff.

Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001) (quoting Finley v. Giacobbe, 79 F.3d

1285, 1294 (2d Cir. 1996)).  A fellow employee may be considered a "third party" for

purposes of a tortious interference claim where the plaintiff demonstrates that the employee

"acted outside of the scope of [his or her] authority."  Id.  An at-will employee may only

maintain a claim in certain limited situations: she must demonstrate that a "'third party used

wrongful means to effect the termination such as fraud, misrepresentation, or threats, that

the means used violated a duty owed by the defendant to the plaintiff, or that the defendant

acted with malice.'"  Id. (quoting Cohen v. Davis, 926 F.Supp. 399, 403 (S.D.N.Y. 1996)).

As a threshold issue, although plaintiffs contend in their opposition papers that Davey

falsely accused Mrs. Rissetto of being disrespectful and/or combative toward CVES

employees, this claim is not contained within the tortious interference cause of action in

amended complaint, and, thus, it is not properly before the Court.  Compare Dkt. No. 141 at

24 with Dkt. No. 129 at 64-70.  As the remaining allegations against Davey – false claims of

insubordination, unwarranted negative performance reviews, and urging the Board to

terminate Mrs. Rissetto's human resources duties – are set forth within the amended

complaint, the Court will review those claims.

31

Plaintiffs contend that the individual defendants exceeded their authority by providing the laptop "without the knowledge, permission, consent, or authorization of the Board of education of Defendant BOCES." Dkt. No. 129 at 68. In contending that the individual defendants acted against the Board's wishes by providing the laptop to the Sheriff's Department without a warrant or court order, plaintiffs rely on an affidavit from one Board member, Sue Reaser, who contended that the Board

> strongly stated their instructions to Davey in executive session that a court order or search warrant was necessary" and that "no one was to look at Rachel Rissetto's CVES-issued laptop computer or make a copy of it without a court order or search warrant. The Board was in agreement that a court order or search warrant was required.

Dkt. No. 141-27 at 2-4. Reaser also contends that another Board member, Bill Hazelton,[19] was "also adamant and vocal about the need for a search warrant or court order." Id. at 2. In addition, defendant Barcomb contended that there was one or two people who, at the executive session, "told us that the sheriff probably would need a search warrant and the consensus was to cooperate with the sheriff at that time" by "allow[ing] them to review our computers." Dkt. No. 141-13 at 59-60. Davey affirmed that the Board's "consensus was that we would cooperate with the Sheriff's Department and allow an examination of the identified laptop but that we would not turn over and give possession of the laptop to the Sheriff's Department without a search warrant." Dkt. No. 138-20 at 5; Dkt. No. 141-15 at 181. Davey permitted the Sheriff's Department to perform an examination of Mrs. Rissetto's work-issued laptop on May 16, 2014 and allowed a copy of the laptop to be made, though he was not previously aware that the copy would be made. Dkt. No. 138-20 at 6.

---

[19] Reaser affirmed that Hazelton is now deceased. Dkt. No. 141-27 at 2.

Defendants contend that permitting access to the laptop was not tortious interference with a contract because Mrs. Rissetto had access to other electronic devices to perform her work, and because the individual defendants were never "'expressly forbidden' to provide the laptop to the Sheriff's Department.'" Dkt. No. 142 at 17. Although defendants argue that one Board member (Sue Reaser) cannot speak on the Board's behalf, and that the Board "voted to allow access or at the very least, as it pertinent here, secure the laptop from Mrs. Rissetto," there is a conflict in the evidence of record. Id. at 17.[20] Indeed, there is somewhat of a conflict within defendants' own arguments. Davey affirmed, as noted, that the Board voted to turn over the laptop to the sheriff's office, but that they agreed to decline to turn over possession of the laptop without a search warrant. There is a material question of fact whether the Board voted to permit the Sheriff's Department to search and copy Mrs. Rissetto's work-issued laptop computer or whether the Board confirmed that the laptop could not be searched without a warrant or court order. Further, it is also unclear whether Davey needed the approval of the Board in order to turn over the laptop as Davey testified that he was advised by legal counsel that per the AUP he did not need the Board's approval, but should obtain their guidance. Dkt. No. 141-15 at 199, 226. Thus, the Court cannot decide as a matter of law whether defendants exceeded their authority by providing the laptop to the sheriff's department for examination and copy because there are material questions of fact both as to whether the Board's recommendation was to provide the laptop access or require that the sheriff's department provide a warrant and whether Davey had

---

[20]   The Court notes that the wavering language used by defendants' counsel – that the Board voted to allow access *or at the very least*, as it pertinent here, secure the laptop from Mrs. Rissetto" – concerns the Court as it appears to backtrack from the defendants' statement that the Board voted or there was a consensus to provide the sheriff's department with access to the laptop. Id. at 17.

the authority to act without the Board's approval. If it is the case that the individual defendants provided the work-issued electronic devices to the Sheriff's Department for examination and/or copying in contravention of the Board's orders otherwise, and that Davey required the Board's approval, it may be found that the individual defendants exceeded their authority.

Although the Court finds there is a question of fact whether the individual defendants exceeded their authority by providing the laptop to the Sheriff's Department in contravention of the Board's instruction, plaintiffs have not demonstrated that the individual defendants acted out of malice, fraud, or misrepresentation. The amended complaint, following a discussion of the adverse employment actions engaged in by the individual defendants, states that the individual defendants acted out "in their own interests and contrary to the interests of Defendant BOCES." Dkt. No. 129 at 68 ¶ 446. However, this conclusory allegation, unsupported by evidence in opposition to the motion for summary judgment, is insufficient to defeat the motion. Plaintiffs have provided no personal motive or interests that would explain Davey's act of turning over the electronic devices in contravention of the Board's direction – there is no allegation of fraud or malice in relation to turning over the work-issued electronic devices. Cohen, 926 F. Supp. at 404, ("A supervisor is considered to have acted outside the scope of his employment if there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest.") (citation omitted). Accordingly, summary judgment is granted on plaintiffs' claim that the individual defendants tortiously interfered with Mrs. Rissetto's employment contract by providing the work-issued electronic devices to the Sheriff's Department in opposition of the Board's directive.

34

Plaintiffs next argue that Davey specifically exceeded his authority insofar as he accused her of insubordination, provided "inaccurate evaluations" of her performance to the Board, and urged or persuaded the Board to terminate her human resources duties. The Amended Complaint mentions that Davey falsely accused plaintiff of insubordination as it related to failing to turn over a work-issued iPad. Plaintiffs also allege in their opposition papers that Davey urged CVES to eliminate Mrs. Rissetto's human resources duties in order to "vindicate his personal interest in punishing Rachel Rissetto at an additional expense to CVES, rather than to its benefit, actually undermining his employer's interest in competent provision of those duties and cost-effective management." Dkt. No. 141 at 24. As Davey was in a supervisory role, he can only be said to have acted outside of the scope of his employment where "there is evidence that the supervisor's manner of interference involved independent tortious acts such as fraud or misrepresentations, or that he acted purely from malice or self-interest." Cohen, 926 F. Supp. at 404. Even reading in the light most favorable to plaintiffs, as the Court must, plaintiffs' apparent argument that Davey must have acted in his own self interest insofar as he "undermined" BOCES' best interests by removing Mrs. Rissetto, who was to be replaced with someone who was paid at a higher rate for those duties, is tenuous at best.

First, the record is clear that Mrs. Rissetto was subject to a collaborative agreement that indicated that her human resources duties were temporary. Plaintiffs oppose defendants' contention that the termination of her human resources duties was based on the contract by contending that the collaborative agreement did not require her termination. However, case law demonstrates that to prove a claim of tortious interference, the adverse action taken must have been purely out of self interest. Even if it is the case that Davey

35

acted out of some unspecified personal interest in persuading the Board to eliminate Mrs. Rissetto's human resources duties, the contract to which Mrs. Rissetto was assigned those human resources duties states that those duties are not permanent. Thus, even if the Court concludes that plaintiffs demonstrated the existence a question of fact regarding whether Davey persuaded the Board to terminate Mrs. Rissetto's human resources duties and acted out of self-interest in doing so, plaintiffs have failed to demonstrate that the action was taken purely out of self-interest because the contract permitted such termination.

As plaintiffs must show that Davey acted with fraud, malice, or purely self-interest in making reports that Mrs. Rissetto was insubordinate by protesting turning in her iPad and in persuading BOCES to remove Mrs. Rissetto from her human resources duties, and plaintiffs have failed to demonstrate that these actions were taken solely out of fraud, malice, or self-interest, summary judgment must be granted as to these claims. Accordingly, summary judgment is granted as to this cause of action.


### D.  Retaliation, Civil Service Law § 75-b, Mrs. Rissetto[21]

Defendant CVES BOCES argues that plaintiff Mrs. Rissetto's retaliation claim pursuant to Civil Service Law § 75-b must be dismissed because "there has been no adverse personnel action, there was no disclosure of information to a governmental body and there is no causal connection between the disclosure and adverse personnel action." Dkt. No. 138-33 at 19.  Specifically, defendant contends that plaintiff initially "took on more responsibilities and had an increase in her pay[,]" but that this "change was temporary and

---

[21]  In its September 27, 2017 Decision and Order, the Court permitted plaintiffs to amend their complaint to add a new claim against CVES BOCES for retaliation pursuant to New York Civil Service Law § 75-b on behalf of Rachel Rissetto.  Dkt. No. 127.

36

never intended to be permanent."  Id.  Further, "[a]ny further modification to her pay was

determined based on the original salary agreement she had negotiated and signed which

indicated that on [sic] July 2015, Mrs. Rissetto was not entitled to a raise."  Id. (citing Exh.

20).  Next, defendant contends that Mrs. Rissetto has not demonstrated a "disclosure by her

of information to a governmental body," and that this underlying lawsuit would not suffice

because "the nature of her lawsuit does not establish a violation of a law, rule or regulation

by CVES BOCES that endangers public health or safety."  Id. at 20.

Plaintiffs argue in the amended complaint that plaintiffs "disclosed the . . . improper

and unconstitutional searches of the plaintiffs' work-issued electronic devices" by

"disclosing" it to the "judiciary, by filing the original Civil Complaint with Jury Demand with

Exhibits."  Dkt. No. 129 at 74 ¶¶ 471, 474.  Plaintiff contends that BOCES,

> by and through its agents including without limitation Defendant
> Davey,[22] took adverse personnel actions against Plaintiff
> Rachel Rissetto, including without limitation transferring Plaintiff
> Rachel Rissetto to a significantly smaller office, demanding
> Plaintiff Rachel Rissetto's resignation, discontinuing Plaintiff
> Rachel Rissetto's duties as a Human Resource Directory [sic]
> and reducing her salary by approximately $50,000 per year,
> denying Plaintiff Rachel Rissetto a raise when raises were
> given to similarly-situated employees, transferring Plaintiff
> Rachel Rissetto's labor relation services solely to Capital
> Region BOCES, providing unwarranted negative performance
> evaluations, failing to provide Plaintiff Rachel Rissetto with
> certain employment benefits including expense reimbursement,
> charging Plaintiff Rachel Rissetto for health insurance despite
> Plaintiff Rachel Rissetto having opted out of Defendant BOCES'
> health insurance plan, and failing to compensate Plaintiff
> Rachel Rissetto for approximately $16,000 worth of labor by
> virtue of miscalculating her salary.

Id. at ¶ 478

---

[22]  Claims under the New York Civil Service Law § 75-b cannot be maintained against individual employees.  N.Y. Civil Service Law § 75-b(1)(a).

As set forth above, plaintiffs allege various adverse personnel actions and contend that such adverse personnel actions fall within the Civil Service law whistleblower provisions. Dkt. No.141 at 20. Further, plaintiffs contend that the motivation behind BOCES' adverse employment determinations is a disputed genuine issue of material fact that cannot be determined by summary judgment. Id. Specifically, plaintiffs appear to acknowledge that the collaborative agreement between CVES BOCES and Capital Region BOCES did not contain a raise for plaintiff or dictate that she continue her duties, but she contends that the agreement also "did not by its terms require changes to Rachel Rissetto's duties or salary, and moreover it took effect almost a full year before those actions." Id. at 21. Plaintiffs further contend that BOCES failed to "establish that the decisions to alter Rachel Rissetto's duties and decrease her salary had a genesis prior to the fling of her federal lawsuit." Id. Moreover, plaintiffs contend that BOCES' "purported explanations" for why Mrs. Rissetto was "singled out for the submission of timesheets" and was denied a raise, but argue that they show that "numerous similarly-situated employees . . . were not required to submit timesheets" and that "no director was entitled to a raise," but that other directors received raises. Id. Moreover, plaintiffs contend that the "disclosure" to a governmental body was disclosure to the judiciary – their commencement of this action in federal court. Id.

"'In order to state a retaliation claim under Section 75-b, a plaintiff must allege (1) an adverse personnel action; (2) disclosure of information to a governmental body [regarding an improper governmental action], and (3) a causal connection between the disclosure and the adverse personnel action.'" Verdi v. City of New York, 306 F. Supp. 3d 532, 549 (S.D.N.Y. 2018) (quoting Krzesaj v. New York City Dep't of Educ., No. CIV 2926

(ER), 2017 WL 1031278, at *11 (S.D.N.Y. Mar. 15, 2017). "'Improper governmental action" is conduct "which is in violation of any federal, state or local law, rule or regulation.'" Id. (quoting N.Y. Civ. Serv. Law § 75-b(2)(a)).

As a threshold matter, BOCES contends that if this Court is to dismiss the Fourth Amendment claim, the section 75-b claim should be dismissed as there is no improper governmental action. Dkt. No. 142 at 20 n.1. However, this Court clarifies that dismissal of the dismissal of the Fourth Amendment claim does not necessarily mandate dismissal of the § 75-b claim as courts have held that even where no misconduct actually took place, the employee may still fall under the protections of § 75-b by reporting suspected misconduct if her belief of misconduct could be found reasonable. See, e.g., Cucchi v. New York City Off-Track Betting Corp., 818 F.Supp. 647, 656 (S.D.N.Y. 1993) (noting that Governor Cuomo's Approval Memorandum about the Whistleblower Statue made clear that "the employee need not be right that a violation has in fact occurred but is protected if the employee reasonably believed that a violation had occurred.) (citing McKinney's 1986 Session Laws of New York at 3215) (additional citation omitted). However, the Court need not address whether Mrs. Rissetto's belief in misconduct was reasonable because the Court concludes that plaintiffs have failed to demonstrate that Mrs. Rissetto disclosed the misconduct to a governmental body, as defined by the statute.

Plaintiffs contend that commencement of this action amounts to disclosure of information to a governmental body as Civil Service Law § 75-b(1)(c) includes "the judiciary or any employee of the judiciary." Dkt. No. 141 at 22.[23] However, although the judiciary is

---

[23] Plaintiffs contend that, were the Court to accept BOCES argument that Mrs. Rissetto did not disclose to a government body by commencing this lawsuit, it would "create the absurd result that concrete, written disclosure in the form of papers filed with the judiciary as permanent public records

39

included under the § 75-b definition of "governmental body," it does not follow that commencing a lawsuit about the employer's alleged misconduct amounts to "disclosure" as defined within the statute.  Section 75-b expressly allows an employee to commence a lawsuit to recover from retaliation by the employer for disclosing an adverse personnel action.  See N.Y. Civ. Serv. Law § 75-b(1)(c).  Thus, the statue presupposes that a disclosure to a governmental body has been made and that retaliation has occurred before commencement of a lawsuit pursuant to section 75-b, not that it is the lawsuit itself that spurs the retaliation.  To hold otherwise would potentially mean that any public employee who commences a lawsuit against her employer for any number of perceived wrongs could plead a section 75-b claim once the lawsuit has been commenced.

The Court is further persuaded by the legislative intent for Section 75-b to which defendants cite.  Dkt. No. 142 at 19.  The Governor's Approval Memorandum makes clear that the intention of the statute was to shield employees from retaliation for disclosing wrongful conduct to authorities and providing protection to employees "who wish to act as law-abiding citizens without fear of losing their jobs."  Dkt. No. 142.  There are other means for public employees to protect themselves against employer retaliation for complaining against conduct that they believe is harmful, wrong, or unfair to themselves.  Statutes must be construed in the light of common sense, and courts should attempt to avoid a construction of a statute that is unreasonable or leads to unreasonable results.  McKinney's Cons. Laws of N.Y., Book 1, Statutes § 143.  The Court has not found, despite an exhaustive search, a single case wherein a court has held that the governmental "disclosure" was the commencement of the underlying action against the employer, and

_____

would have less value than a conversation with a court clerk in an elevator."  Dkt. No. 141 at 22.

plaintiffs have failed to provide any case support for such an interpretation.  As the Court

finds that plaintiffs' interpretation of the statute is unreasonable, and that plaintiffs have not

demonstrated disclosure to a governmental body, summary judgment is granted on this

ground.

### E.  First Amendment freedom of association, Mrs. Rissetto

Plaintiff Mrs. Rissetto contends that after the search of the electronic devices,

defendant Davey[24] "began excluding Plaintiff Rachel Rissetto from meetings to which she

would normally be invited," "began making accusations with respect to Plaintiff Rachel

Rissetto's workplace conduct and gave Plaintiff Rachel Rissetto unwarranted negative

employment evaluations," and "pursued a series of investigations against Plaintiff Rachel

Rissetto."  Dkt. No. 129 at 47-48.  Plaintiffs contend that Davey transferred Mrs. Rissetto to

a smaller office, reduced her salary, denied her raises, transferred her labor-relations duties

to Capital Region BOCES,

> disrupted communications between Plaintiff Rachel Rissetto
> and Defendant BOCES' Board of Education and withheld
> certain employment benefits from Plaintiff Rachel Rissetto
> including without limitation expense reimbursements, health
> insurance buyouts, and certain items of salary, as well as
> charging Plaintiff Rachel Rissetto for health insurance despite
> having opted out of Defendant BOCES' health insurance plan.

Id. at 48-49.  Further, plaintiffs allege that Davey and Gray directed BOCES employees "not

to communicate with either of the Plaintiffs."  Id. at 48.  Plaintiffs contend that the adverse

actions began "immediately after" Mrs. Rissetto advised Davey that "the Department was

---

[24]  In reviewing the Motion to Dismiss, the Court noted that plaintiffs "alleged actions and personal involvement only on the part of Davey."  Dkt. No. 59 at 68, n.94.

retaliating against Plaintiff Paul Rissetto for his questioning of misconduct within the Department, and/or immediately after the Plaintiffs filed this action[.]" Id. at 49. Plaintiffs contend that because Mrs. Rissetto "had an acceptable performance record and had not been subjected to complaints from Defendant BOCES or its employees, including Defendant Davey, prior to the above-mentioned events," her "association with Plaintiff Paul Rissetto must have been a motivating factor in Defendant BOCES, Defendant Gray, and Defendant Davey's actions." Id.

Plaintiffs contend that Davey, Clamser, and Gray "violated the provisions of 42 U.S.C. § 1983 in that, acting under color of law, they deprived Plaintiff Rachel Rissetto of her rights, privileges, and/or immunities pursuant to the First, Fourth, Fifth, and Fourteen Amendments to the United States Constitution by subjecting her to an unreasonable seizure and search retaliating against her for associational conduct." Dkt. No. 129 at 49-50. Plaintiffs contend that defendants violated Mrs. Rissetto's First Amendment associational rights as defendant BOCES, a public employer, took adverse action against her due to her spouse's conduct. Dkt. No. 141 at 18-19. Further, she contends that whether the adverse personnel action is motivated by Mr. Rissetto's conduct or an "independent, non-retaliatory reason is a question of fact that cannot be resolved on a motion for summary judgment." Id. at 19. Defendants did not address plaintiffs' First Amendment claim in their Motion for Summary Judgment. See Dkt. No. 138. However, in their reply, defendants contend that the alleged adverse actions relating to Mrs. Rissetto's employment occurred, not due to her association with Mr. Rissetto, but because of the collaborative agreement or other non-retaliatory reasons. Dkt. No. 142 at 21.

This Court has set out in detail the law behind intimate association claims; as such, it

will not be restated here beyond as is necessary to address the claim; thus, reference is made to this Court's August 29, 2016 Decision and Order. See Dkt. No. 59 (citing, inter alia, Pickering v. Board of Education, 391 U.S. 563, 566-68 (1968); Chi Iota Colony of Alpha Pi Fraternity v. City Univ. of N.Y., 502 F.3d 136, 143 (2d Cir. 2007); Alder v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999); Toussie v. Cty of Suffolk, 806 F. Supp. 2d 558, 589 (E.D.N.Y. 2011); Agostino v. Simpson, 08-CV-5760, 2008 WL 4906140, at *9 (S.D.N.Y. Nov. 17, 2008)). In the August 2016 Decision, the Court held that (1) defendants failed to demonstrate that plaintiffs had to articulate a specific level of injury to the intimate relationship; and (2) plaintiffs had sufficiently alleged, to defeat the motion to dismiss, that BOCES subject Mrs. Rissetto was subject to adverse action. Dkt. No. 59 at 71.

The Court, as it did in its August 2016 Decision & Order, acknowledges that the law, including the source, surrounding First Amendment associational rights is somewhat unsettled in this Circuit. See, e.g., Richardson-Holness v. Alexander, 161 F. Supp. 3d 170, 176 (E.D.N.Y. 2015) ("While the Second Circuit has elaborated on these open questions, it has not adopted a preferred approach."). Courts in this Circuit have held that the Pickering public concern requirement does not apply to "claims premised on the freedom of intimate association." Richardson-Holness, 161 F. Supp.3d at 177. Where the plaintiff alleges that he or she was retaliated against due to her spouse's First Amendment activities, that claim is properly analyzed under the First Amendment; however, "'[w]here the intimate association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework of the Fourteenth Amendment right to substantive due process." See Lara-Grimaldi v. County of Putnam, No. 17-CV-622, 2018 WL 1626348 (S.D.N.Y. 2018); see also

Pitzzuto v. County of Nassau, 240 F.Supp. 2d 203, n.2 (E.D.N.Y. 2002) ("[B]ecause the freedom to associate guaranteed by the First Amendment protects associational interests related to speech and petition, and because those associational interests are not implicated in this case, I find that Plaintiffs' claim must be examined under the Fourteenth Amendment, rather than the First Amendment.") (citation omitted)).  Here, the First Amendment analysis appears appropriate as plaintiffs allege that Mr. Rissetto "had taken issue with misconduct within the [Sheriff's] Department," Dkt. No. 129 at 47 ¶313, and that Mrs. Rissetto's employer retaliated against due to her husband's alleged activity withib the Sheriff's Department.

As it relates to plaintiffs' First Amendment claim, there exists material questions of fact as to whether Mrs. Rissetto's alleged adverse employment actions occurred due to the collaborative agreement, or due to Mrs. Rissetto's relationship with Mr. Rissetto and his connection to the undergoing investigation at the Sheriff's Department.  As they argued on the Motion to Dismiss, plaintiffs contend that Mrs. Rissetto faced: removal from her human resources position, lesser responsibility, a pay cut, denial of raise, denial of reimbursements, a move to a smaller office, exclusion from Board meetings, requirement to submit time sheets, and false disciplinary action due to her relationship with Mr. Rissetto. Defendants vociferously deny these claims, and contend that Mrs. Rissetto's "employment status is solely the function of the collaborative agreement between CVES BOCES and Capital Region BOCES."  Dkt. No. 142 at 21.  Further, defendants contend that Mrs. Rissetto's laptop was not searched "simply because Mrs. Rissetto is married to Mr. Rissetto," but because "Mr. Rissetto used the CVES laptop to access the Sheriff Department's computer system."  Id.  Defendants also contend "[t]he request that Mrs.

Rissetto not attend the executive session came as a result of the need to conduct the search of the laptop and the resulting litigation" and that the executive session involved "a discussion of the defendants as to defense strategy."  Id.  Collectively, defendants argue that "[a]ll other 'employment actions' were the result of the collaborative agreement."  Id.[25]

By contrast, plaintiffs argue that because she had "an acceptable performance record and had not been subjected to complaints from Defendant BOCES or its employees including Defendant Davey prior to the above mentioned events . . . Plaintiff's Rachel Rissetto's association with Plaintiff Paul Rissetto must have been a motivating factor in Defendant BOCES, Defendant Gray, and Defendant Davey's actions."  Dkt. No. 129 at 49, ¶329.  Plaintiffs also contend that Mrs. Rissetto was excluded from attending Board meetings beyond just the meetings at which the lawsuit was discussed.  Whether Mrs. Rissetto faced adverse employment actions alleged above due to the nonretaliatory reasons proffered by defendants, or due to her association with Mr. Rissetto are questions of fact for a jury to resolve.  See Everitt v. DeMarco, 704 F. Supp 2d 122, 135 (D. Conn. 2010).  The Court cannot, based on the evidence before it, decide the reasons as for the alleged adverse employment actions.  Accordingly, defendants' motion for summary judgment is denied as to plaintiffs' First Amendment intimate association claim.

### IV.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that defendants' Motion for Summary Judgment, Dkt. No. 138, is

---

[25]  Defendants do not address plaintiffs' allegations that other alleged conduct was motivated by Mrs. Rissetto's association with Mr. Rissetto.

**GRANTED in part**, insofar as plaintiffs' following claims are dismissed: Fourth Amendment, tortious interference with contract, common law defamation, New York Civil Service Law § 75-b, and Mrs. Rissetto's loss of consortium claim, and it is further

       **ORDERED**, that defendants' Motion for Summary Judgement, Dkt. No. 138, is **DENIED in part**, with respect to plaintiff Rachel Rissetto's First Amendment claim, and Mr. Rissetto's loss of consortium claim.

       **IT IS SO ORDERED.**

      Dated: June 25, 2018
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge